TAMARA W. ASHFORD
ACTING ASSISTANT ATTORNEY GENERAL

YONATAN GELBLUM (Cal. State Bar. No. 254297)
CHRISTOPHER W. SANDERS
U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227
Washington, DC 20044
(202) 305-3136 (phone)
(202) 514-6866 (facsimile)
yonatan.gelblum@usdoj.gov

*Counsel for Defendant Internal Revenue Service*

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| PUBLIC.RESOURCE.ORG, ) | |
| ) | Case No. 3:13-cv-02789-WHO |
| Plaintiff, ) | |
| ) | **DEFENDANT'S MOTION FOR** |
| v. ) | **SUMMARY JUDGMENT** |
| ) | |
| UNITED STATES ) | |
| INTERNAL REVENUE SERVICE, ) | Date: January 7, 2015 |
| ) | Time: 2:00 p.m. |
| Defendant. ) | Place: Courtroom 2, 17th Floor |
| ) | |

**NOTICE OF MOTION FOR SUMMARY JUDGMENT**

This motion for summary judgment by Defendant Internal Revenue Service [the "Service"] is set for hearing before Judge Orrick on Wednesday, January 7, 2015 at 2:00 pm in his courtroom in San Francisco. This motion is based on the memorandum of points and authorities incorporated herein, the attached Declarations and Exhibits referenced herein, and other portions of the record cited herein.

# RELIEF SOUGHT

The relief sought herein is entry of the attached proposed order granting the Service summary judgment and dismissing this action with prejudice.

# MEMEMORANDUM OF POINTS AND AUTHORITIES

## Table of Contents

I. OVERVIEW ........................................................................................................................... 4

II. BACKGROUND ..................................................................................................................... 4

III. PROCEDURAL HISTORY ...................................................................................................... 8

IV. ARGUMENT ......................................................................................................................... 8

   A. Standard of Review ................................................................................................... 9

   B. The Service Reasonably Concluded that the Requested Records Are Not Readily Reproducible in MeF Format ................................................................................... 11

      1. *The Service's Systems Are Set up to Process Forms 990 in Image Format* ............... 11

      2. *It Would Cost Significantly More To Process the Requested Forms 990 for Release in MeF Format, Require Diversion of Staff, and Introduce Heightened Risk of Improper Disclosure* ................................................................................................................. 12

      3. *The Forms 990 Are Not "Readily Reproducible" in the Requested Format* .............. 13

   C. The Service Was Not Required to Maintain the Records in a Releasable MeF Format 14

      1. *Plaintiff Cannot Obtain Relief Based on the "Reasonable Efforts" Clause Because the Agency Implemented Its Current System Years Before Form 990 Data Was Requested in MeF Format* ...................................................................................... 14

      2. *The Service Reasonably Concluded that Forms 990 Cannot Be Made "Readily Reproducible" in MeF Format with "Reasonable Efforts"* ........................................ 16

V. CONCLUSION .................................................................................................................... 18

# Table of Authorities

**Cases**

Bowen v. U.S. F.D.A., 925 F.2d 1225 (9th Cir. 1991) .................................................................. 9, 10
Hersh & Hersh v. US HHS, No. C 06-4234 PJH, 2008 U.S. Dist. LEXIS 26237 at *9-*10 (N.D. Cal. March 31, 2008). ........................................................................................................... 10
Jones v. FBI, 41 F.3d 238 (6th Cir. 1994) ........................................................................................ 16
Kim v. United States DOI, 859 F. Supp. 2d 13 (D.D.C. 2012) ....................................................... 15
Kissinger v. Reporters Comm. for Freedom of Press, 445 U.S. 136 (1980) .............................. 15
Lane v. DOI, 523 F.3d 1128 (9th Cir. 2008) ..................................................................................... 9
Laughlin v. Commissioner, 103 F. Supp. 2d 1219 (S.D. Cal. 1999) ............................................. 16
Long v. U.S. I.R.S., 742 F.2d 1173 (9th Cir. 1984) ........................................................................... 9
Miscavige v. IRS, 2 F.3d 366 (11th Cir. 1993) .................................................................................. 9
Nat'l Org. for Marriage, Inc. v. U.S. I.R.S., No. 1:13-cv-01225-JCC-IDD, 2014 U.S. Dist. LEXIS 77263 (E.D. Va. June 3 2014) ......................................................................................... 5
Nat'l Org. for Marriage, Inc. v. U.S. I.R.S., No. 1:13-cv-01225-JCC-IDD (June 23, 2014) ....... 12
Prudential Locations LLC v. United States HUD, 739 F.3d 424, 444 (9th Cir. 2013).............. 9-10
Scudder v. CIA, No. 12-807, 2014 U.S. Dist. LEXIS 31824 (D.D.C. March 12, 2014) .............. 13
TPS, Inc. v. United States DOD, 330 F.3d 1191 (9th Cir. 2008) ........................................... 13, 16
United States DOJ v. Tax Analysts, 492 U.S. 136 (1989) .............................................................. 15
Yonemoto v. VA., 686 F.3d 681 (9th Cir. 2012) .............................................................................. 10

**Legislative Materials**

Electronic Freedom of Information Act (E-FOIA) Amendments of 1996, (P.L. 104-231) ............ 7
H.R. Rep. 104-795 (1996) ................................................................................................... 10, 13, 16
S. Rep. 104-272 (1996) ........................................................................................................ 10, 13, 16

**Statutes**

Freedom of Information Act, 5 U.S.C. § 552 ......................................................................... passim
5 U.S.C. § 552(a)(3)(B) ............................................................................................................ 13, 14, 15
5 U.S.C. § 552(a)(4)(B) ......................................................................................................................... 10
26 U.S.C. § 6103 ............................................................................................................................ passim
26 U.S.C. § 6104 ............................................................................................................................ passim
26 U.S.C. § 7431 ..................................................................................................................................... 5

Defendant's Motion for Summary Judgment
Case No.3:13-cv-02789-WHO             3

I. OVERVIEW

Plaintiff submitted a request under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") for the Form 990 information returns filed by nine tax-exempt organizations. (Compl. ¶ 2.) The request sought disclosure of the records in the Modernized E-File ("MeF") format in which they were electronically filed. Id. The Service already had an established process for redacting information, the disclosure of which is prohibited, from both electronically-filed and paper-filed returns and producing the redacted documents in an image format. Processing the requested returns for release in MeF format through a separate ad-hoc process would cost several hundred dollars more per return. Therefore, the Service reasonably concluded that the returns were not "readily reproducible" in the Plaintiff's requested format. The Service was not under any prior obligation to make the returns reproducible in this format, since it had not previously received a FOIA request for release of the returns in that format. Alternatively, the Service could reasonably conclude that the severe budgetary and resource constraints that it faces preclude it from making the requested returns – with required redactions – available in the requested format with "reasonable efforts." Accordingly, it was not required to produce the returns in the Plaintiff's requested format.

II. BACKGROUND

Honoring requests for Forms 990 in MeF format would require more resources than producing them in image format using an existing process for redacting non-disclosable information from these returns and preparing them for release. The Service has an established process for disclosing the Form 990 information returns filed by tax-exempt entities because it is subject to a statutory mandate affirmatively requiring their disclosure. See 26 U.S.C. § 6104(b). However, the Service is not authorized to disclose Schedule B donor information contained on

Defendant's Motion for Summary Judgment
Case No.3:13-cv-02789-WHO                4

such returns or filed as an attachment to such returns. Id. §§6103(a), 6104(b); (Archibald Decl. ¶¶ 10, 13). The result of the interplay of these two provisions is that the Service is affirmatively prohibited from disclosing information on the Forms 990 or attachments whose disclosure is not mandated by section 6104. Wrongful disclosure of the section 6103 tax return information can subject the United States to statutory, compensatory, and punitive damages, as well as costs and fees. 26 U.S.C. § 7431; Nat'l Org. for Marriage, Inc. v. U.S. I.R.S., No. 1:13-cv-01225-JCC-IDD, 2014 U.S. Dist. LEXIS 77263 (E.D. Va. June 3 2014).

Section 6104's disclosure mandate applies to approximately 783,232 returns filed annually. (Rosenmerkel Decl. ¶ 7.) In order to efficiently deal with this volume, the Service developed the SEIN system in 1998 that allowed employees, guided by carefully-developed protocols and computer prompts, to review the Forms 990 to make appropriate redactions and prepare the forms for release. (Archibald Decl. ¶¶ 1,3; Rosenmerkel Decl. ¶ 5.) At the time, all such forms were filed on paper; it was not until 2004 that e-filing was mandated for those organizations filing over 250 returns of any type.[1] (Archibald Decl. ¶¶ 3, 7.) In 2013, 54% of Forms 990 were filed on paper, and 45% were filed electronically. Id. ¶ 7. Since its inception, SEIN has allowed employees to process paper-filed returns that have been scanned to create a TIF image file. (Archibald Decl. ¶ 4; Rosenmerkel Decl. ¶¶ 3-5; Hook Decl. ¶ 3.) After e-filing was introduced, a process was developed to allow the existing SEIN system to be used to process Forms 990 for disclosure by converting them to the same format already used by SEIN.

---

[1] The 250-return figure can include information returns, such as forms W-2. 2004 was also when the MeF format was first adopted, allowing Form 990 filers to file their returns electronically. See Internal Revenue Service, "IRS E-file, a History," at http://www.irs.gov/uac/IRS-E-File:-A-History (accessed August 13, 2014).

Defendant's Motion for Summary Judgment
Case No.3:13-cv-02789-WHO                    5

(Archibald Decl. ¶¶ 5, 12.)   Consequently, the Service is able to process both types of returns for release using a single computer platform, a single protocol, and employees trained in a single process. Id. ¶ 12.  The estimated annual cost of running SEIN system for disclosure purposes is $828,603, (Rosenmerkel Decl. ¶ 6,) while the estimated costs of staffing associated with processing the returns for disclosure is $447,596. (Hooke Decl. ¶ 6)   Spread over 783,232 returns released in a year, the cost of processing each return for disclosure under the existing system averages $1.63 per return.

Because this procedure is based on the processing of the Forms 990 in an image format – including the application of any redactions – honoring requests for Forms 990 in MeF format would require the use of a separate manual process for making the necessary redactions. (Rosenmerkel Decl. ¶¶ 8, 10.; Hooke Decl. ¶ 10.)  The Service estimates that the one-time cost of efficiently redacting and processing the nine requested Form 990 returns at issue here for release in MeF format would be $6,200, or $690 per return. Id. ¶ 9. The high costs are largely due to the need to use higher-level staff that could be tasked with developing the necessary protocols and executing the process without the need for extensive training. Id. ¶ 10, 13-14. Such an ad-hoc process is inherently riskier than the regular process used to process returns in image format. Id. ¶ 11.  The Service has also concluded that the need to divert skilled staff for this purpose would make such a parallel process unsustainable if done on a regular basis, and the most efficient way to do so would be the use of an automated system for redacting the exempt information from the returns. Id. ¶¶ 10-12, 15.  In providing estimates for an Administration budget proposal that would mandate e-filing of all Forms 990 as well as their public release in

machine-readable format,[2] the Service has concluded that it would have to invest millions of dollars to reliably redact and release all electronically-filed Forms 990 through such an automated process. (Ross Decl. ¶¶ 9, 9(c)).) Since the estimate is for the release of data from electronically-filed Forms 990, if the legislative proposal is not adopted, and a significant number of Forms 990 thus continue to be filed on paper, the Service would also need to continue paying to maintain the current (or another) process for redacting and releasing the paper-filed returns.[3]

Plaintiff submitted a novel request, in March 2013, for the release of nine electronically-filed Forms 990 in MeF format under FOIA, and specifically the Electronic Freedom of Information Act (E-FOIA) Amendments of 1996 (P.L. 104-231). Plaintiff's request was the first such request received by the Service; subsequently, the Service has received two additional requests for Form 990 data in MeF format, one of which was filed on behalf of Plaintiff's President. (Higley Decl. ¶¶ 3, 9.) In contrast, in 2013, the Service received 3,100 requests for release of specified Forms 990, as well as 14 requests for a full set of all Forms 990, through the existing disclosure process. (Archibald Decl. ¶ 8.)

---

[2] See Department of the Treasury, General Explanation of the Administration's Fiscal Year 2015 Revenue Proposals (March 2014) at 231. At http://www.treasury.gov/resource-center/tax-policy/Documents/General-Explanations-FY2015.pdf.

[3] Such demands on staff and resources would be coming at an especially inopportune time. The Service's budget has been subject to significant cuts since 2010. (Leach Decl ¶ 3, Ex. 106.) Unlike other agencies, whose funding was restored to pre-sequestration levels in the last year, the Service continues to operate at close to sequestration levels. (Leach Decl. ¶ 6.) It has had to impose a hiring freeze since 2010, has seen a significant reduction in staffing and in its training budget, and had to furlough employees three times in 2013. Id. ¶¶ 5(a)-(b), 6; (Ex. 106.)

III. PROCEDURAL HISTORY

Plaintiff brought suit after the Service declined to release the Forms 990 in MeF format. The Service initially moved to dismiss on the grounds that section 6104 provided a comprehensive disclosure regime for the release of Forms 990, and therefore FOIA did not govern their disclosure.[4] At the time, the Service reserved its right to argue, if its motion were denied, that even under FOIA, disclosure of the records in the requested format is not required due to the limitations of E-FOIA's reach to records that are "readily reproducible" in the requested format. On June 20, 2014, the Court denied the Service's motion to dismiss, finding that FOIA applied to the records at issue. (Docket No. 20.)

The present motion asserts that under FOIA, disclosure of the records is not required because they are not "readily reproducible" in Plaintiff's requested format once the need for redaction is taken into consideration. Further, the E-FOIA provision requiring agencies to make "reasonable efforts" to maintain records in a form that is "readily reproducible" does not entitle Plaintiff to relief on the present record.

IV. ARGUMENT

Under E-FOIA, the records sought were not readily reproducible in the MeF format, and the Service was not required to maintain them in a redacted, releasable MeF format. The record demonstrates that the Service reasonably concluded that the Form 990 records at issue were not "readily reproducible," with redactions, in the MeF format requested by Plaintiff. This

---

[4] At oral argument, the Service also asserted that its act of disclosure under section 6104(b) is what places the returns at issue outside the scope of section 6103's prohibition on disclosure and makes them available for disclosure under FOIA, to the extent it applies to these records. Thus, the Service asserted that the act of disclosure of the records in a paper or image format under section 6104 first places them within the scope of FOIA.

Defendant's Motion for Summary Judgment
Case No.3:13-cv-02789-WHO            8

determination is supported by the additional expenses and disruptions involved in processing these records for release, including making redactions in that format – or adopting a procedure that would allow the agency to process and retain redacted Forms 990 in that format – instead of the image format that the Service currently utilizes. (Rosenmerkel Decl. ¶ 9; Ross Decl. ¶¶ 9, 9(c).) Further, the agency's determination was made at a time when the Plaintiff's request was the first such request for Forms 990 in MeF format, and the agency has subsequently received only two other requests; and the agency continues to receive many requests for the returns in the current image or paper formats. (Higley Decl. ¶¶ 3, 9; Archibald Decl. ¶ 8.) As explained below, the E-FOIA amendments mandate a degree of deference to the agency's position on this matter, and the record here shows that the Service had a reasonable basis for declining to establish a parallel process to its current image-based procedures in order to make the records available in the requested format. The Court should therefore grant summary judgment to the Service.

### A. Standard of Review

Judicial review under FOIA follows somewhat different procedures than in other suits. Trials and discovery are disfavored, and a district court should first attempt to resolve the matter based on detailed affidavits or oral testimony. Lane v. DOI 523 F.3d 1128, 1134 (9th Cir. 2008); Long v. U.S. I.R.S., 742 F.2d 1173, 1182 (9th Cir. 1984). Consequently, FOIA cases are typically decided on summary judgment. Miscavige v. IRS, 2 F.3d 366, 369 (11th Cir. 1993) ("Generally, FOIA cases should be handled on motions for summary judgment."), quoted by Lane, 523 F.3d at 1134. Although an agency has the burden of establishing that it is not improperly withholding records, as long as it submits "reasonably detailed" affidavits alleging "sufficient" facts to justify the nondisclosure, it meets this burden and "the district court need look no further." Bowen v. U.S. F.D.A., 925 F.2d 1225, 1227 (9th Cir. 1991)). See also Prudential Locations LLC v. United States HUD, 739 F.3d 424, 444 (9th Cir. 2013) (Berzon,

C.J., Dissenting) (noting that reasonably detailed affidavits, rather than "elaborate, costly procedures" are ordinarily sufficient to sustain an agency's burden under FOIA) (citing Bowen). Such affidavits are given a presumption of good faith. Hersh & Hersh v. US HHS, No. C 06-4234 PJH, 2008 U.S. Dist. LEXIS 26237 at *9-*10 (N.D. Cal. March 31, 2008).[5]

In the E-FOIA context, the agency's conclusions concerning reproducibility are also entitled to deference. While FOIA generally mandates a "de novo" standard of review, the E-FOIA amendments specifically require that the Court "accord substantial weight to an affidavit of an agency concerning the agency's determination as to . . . reproducibility under paragraph (3)(B)." 5 U.S.C. § 552(a)(4)(B). This reference cannot properly implicate mere evidentiary weight, since FOIA suits are ordinarily decided on motion rather than at trial, as noted above, and the "affidavits" referenced in the statute are used on summary judgment rather than at a trial where the Court would weigh the evidence. That the E-FOIA provision requires a degree of deference to the agency's findings about whether records are "readily reproducible" or can be made so with "reasonable efforts" is confirmed by the legislative history. See, e.g. H.R. Rep. 104-795 at 22 (1996) ("This deference is warranted because agencies are the most familiar with the availability of their own technical resources to process, redact, and reproduce records"); S. Rep. 104-272 at 14-15 (1996) ("As a general rule, the decision whether to disclose requested records or information in a new requested form, whether electronic or other form, is a matter of administrative discretion. In exercising that discretion, agencies should consider administrative

---

[5] On appeal, the district court's factual basis for granting summary judgment is reviewed for "clear error." Yonemoto v. VA, 686 F.3d 681, 688 (9th Cir. 2012) ("Review of a grant of summary judgment in a FOIA case, however, is slightly different than for other types of cases; in essence, we treat the judgment as if it were a bench trial.").

Defendant's Motion for Summary Judgment
Case No.3:13-cv-02789-WHO                 10

efficiency and the existence of identified public demands for the information."). Accordingly, the Court should grant deference to the findings and determinations in the Service's declarations here, which are reasonably supported by the record.

### B. The Service Reasonably Concluded that the Requested Records Are Not Readily Reproducible in MeF Format

The Service reasonably concluded that the requested records are not readily reproducible in MeF format. The Service's current systems and processes are geared to redact and prepare both e-filed and paper-filed Forms 990 for release in an image format. Consequently, processing the requested returns for release outside of this process would cost several hundred times more than processing them under the existing system, impose heightened risks of disclosure, and require diversion of limited staff resources. Because E-FOIA was not meant to impose such significant burdens on the agency, the Service reasonably concluded that the records were not "readily reproducible" in the requested format.

*1. The Service's Systems Are Set up to Process Forms 990 in Image Format*

Because of its duty under 26 U.S.C. § 6104 to release the hundreds of thousands of Forms 990 filed each year, the Service has an existing system set up to redact and otherwise process the forms for release. Thus system was set up six years prior to the introduction of e-filing and is designed to allow redactions to be made in an image format other than the MeF format that was subsequently introduced for e-filed returns. The Forms 990 that are filed on paper are scanned to create an image file, which is then processed for release by having trained employees redact personally identifying information, including contributor information that is protected from release by section 6103. The forms that are filed electronically are processed through the same system used to process the paper-filed returns, and are thus also converted to the image format that the system was built to process, by employees who have been trained to

redact the files in image format. The redacted version produced by the current system – which can be disclosed to the public – is consequently an image file, rather than an MeF file.

    2. *It Would Cost Significantly More To Process the Requested Forms 990 for Release in MeF Format, Require Diversion of Staff, and Introduce Heightened Risk of Improper Disclosure*

Because the Service's existing system and regular procedures for redacting and releasing Forms 990 were designed around the use of an image format, the Service would need to set up a separate procedure to process the returns for release to Plaintiff in MeF format. Consequently, the Service would require significantly more resources – on a per-return basis - to process the Forms 990 requested by Plaintiff for release in MeF format. As detailed in Part II, supra, the Service would need to develop appropriate guidelines and quality-assurance measures, and would need to utilize higher-level staff – who can adapt more readily to a different process without significant time in training – to prepare the returns for release. Such controls are especially important since the Service may be subject to monetary penalties if it improperly discloses information protected from disclosure under 26 U.S.C. § 6103. See, e.g., Nat'l Org. for Marriage, Inc. v. U.S. I.R.S., No. 1:13-cv-01225-JCC-IDD (June 23, 2014) (consent judgment awarding $50,000 to plaintiff who sued over erroneous disclosure of donor information on a Form 990). Consequently, while the current cost of processing Forms 990 for release averages $1.63 per return, the Service has concluded that reliably processing the nine returns requested by Plaintiff in MeF format for release would cost $6,200 or $690 per return, i.e. a factor of several hundred times the cost of releasing them in image format, at a time when the Service is struggling to maintain its basic functions due to repeated budget cuts. In addition, the process would require the Service – which is understaffed due to a four-year hiring freeze – to divert

limited subject matter experts from their regular duties, thus interfering with agency operations. It would also impose increased risks of disclosures due to the ad-hoc nature of the process.

### 3. The Forms 990 Are Not "Readily Reproducible" in the Requested Format

Under these circumstances, the returns are not "readily reproducible" in MeF format as a matter of law. FOIA only requires disclosure of records in formats that are "readily" reproducible by the agency. 5 U.S.C. § 552(a)(3)(B). The use of the qualifier "readily" reflects that E-FOIA's requirements were not meant to require disclosure if records were reproducible only with substantial costs or disruptions to agency operations. Cf. TPS, Inc. v. United States DOD, 330 F.3d 1191, 1195 (9th Cir. 2008) (E-FOIA does not "impose unreasonable or additional burdens on an agency's data system, personnel, or resources); Scudder v. CIA, No. 12-807, 2014 U.S. Dist. LEXIS 31824 at *38-*39 (D.D.C. March 12, 2014) ("readily reproducible" requires more than mere technical feasibility); H.R. Rep. 104-795 at 22 ("reasonable effort" is one that "would not significantly interfere with the operations of the agency or the agency's use of its computers."), id. (requiring deference to agency's affidavits due to agencies' familiarity "with the availability of their own technical resources). Further, Congress, in enacting E-FOIA, specifically considered the costs of redaction as a factor relevant to the "readily reproducible" determination. H.R. Rep. 104-795 at 22; S. Rep. 104-272 at 15 (E-FOIA does not require "releasing the original form of partially exempt records in circumstances where agencies need to handle the records in a certain form for purposes of redaction and, therefore, cannot readily disclose them, as redacted, in a previously existing form."). Here, largely because of section 6103's mandate prohibiting disclosure of portions of the returns at issue, producing the returns in the requested format would cost the Service thousands of dollars more than producing them in image format under the Service's existing procedure. This determination is reasonable and should therefore be given deference.

Accordingly, Plaintiff is not entitled to relief because the records it seeks are not readily reproducible in the requested MeF format.

### C. The Service Was Not Required to Maintain the Records in a Releasable MeF Format

In addition to requiring agencies to produce records "in any form or format requested . . . if the record is readily reproducible by the agency in that form or format," FOIA states that "[e]ach agency shall make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section." 5 U.S.C. § 552(a)(3)(B). The Service contends that this additional requirement does not entitle Plaintiff to relief, for two alternate reasons. First, the request at issue was the first FOIA request that the Service had received for form 990 data in MeF format and came years after the Service had set up its existing system for disclosure of the Forms 990; consequently, a redacted MeF file was not a "requested" format in which it had to maintain the Forms 990 at the time Plaintiff made its request. Second, the Service reasonably exercised its discretion in not establishing a regular process for maintaining the MeF records in a redacted form that could be released. The record shows that significant resources would be involved in setting up a separate process for redacting e-filed Forms 990 in MeF format, that the Services faces enormous resource constraints, and that the overwhelming majority of requesters for Form 990 information continue to seek the information in paper or image format. Accordingly, Plaintiff is not entitled to relief under the "reasonable efforts" prong of E-FOIA.

> 1. *Plaintiff Cannot Obtain Relief Based on the "Reasonable Efforts" Clause Because the Agency Implemented Its Current System Years Before Form 990 Data Was Requested in MeF Format*

The Service was not required to maintain its Form 990 records in a releasable MeF format at the time it received Plaintiff's request because Plaintiff's request for MeF-formatted Forms 990 was the first such FOIA request, and came years after the Service had set up its

existing system for disclosure of Form 990.  Therefore the second sentence of section 552(a)(3)(B) -- "[e]ach agency shall make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section." --  does not entitle Plaintiff to relief. E-FOIA requires agencies to maintain their records in a format that is "reproducible <u>for purposes of this section.</u>" 5 U.S.C. § 552(a)(3)(B) (emphasis added).  The reference to reproducibility in "this section" is to the immediately preceding sentence, which requires agencies to produce records "in any form or format" <u>in response to a FOIA request</u> for that format, as long as the agency can "readily" reproduce the record in the requested format. <u>Id.</u>

Consequently, the requirement for agencies to make efforts to maintain records in a readily reproducible format should not be implicated to condemn an agency's choice – years before it received a FOIA request seeking documents in a particular format – to invest in dedicated process for maintaining the requested records in another format.  Any other interpretation would impose on an agency the burden of anticipating future requests that might or might not be made, a burden that FOIA has been held not to require. <u>See</u> <u>Kim v. United States DOI</u>, 859 F. Supp. 2d 13, 18 (D.D.C. 2012) (agency not required to preserve records because of the possibility that they might be requested in the future under FOIA). <u>See also</u> <u>United States DOJ v. Tax Analysts</u>, 492 U.S. 136, 145 (1989) (agency records subject to FOIA are those in the agency's control "at the time the FOIA request is made."); <u>Kissinger v. Reporters Comm. for Freedom of Press</u>, 445 U.S. 136, 155 n. 9 (1980) ("withholding" under FOIA gauged as of "the time at which the request is made," hence no prior retention obligation).

Because the Service did not need to maintain the records at issue in a releasable MeF format as of the date of Plaintiff's request, Plaintiff is not entitled to any relief based on the fact that the records were not "readily reproducible" in that format at the time it made the request at

Defendant's Motion for Summary Judgment
Case No.3:13-cv-02789-WHO                    15

issue. See Jones v. FBI, 41 F.3d 238, 249 (6th Cir. 1994) ("a FOIA request pertains only to material in the possession of the agency at the time of the request."); Laughlin v. Commissioner, 103 F. Supp. 2d 1219, 1224 (S.D. Cal. 1999) (same).

### 2. *The Service Reasonably Concluded that Forms 990 Cannot Be Made "Readily Reproducible" in MeF Format with "Reasonable Efforts"*

Alternatively, the record shows that the Service reasonably concluded that Forms 990 cannot be made "readily reproducible" in MeF Format with reasonable efforts. As explained above, "readily reproducible" takes into account the need to redact information protected from disclosure. H.R. Rep. 104-795 at 22; S. Rep. 104-272 at 15. Further, compliance with E-FOIA's mandates is not required where it would require significant costs or disrupt agency operations. Id.; TPS, Inc. 330 F.3d at 1195. Significantly, in discussing another "reasonable efforts" clause in E-FOIA, Congress noted that "reasonable efforts" are those that do not impose a greater cost on the agency than the costs associated with existing formats. H.R. Rep. 104-795 at 22 (requirement that agencies make "reasonable efforts" to search for records in electronic format "should not result in any greater expenditure of agency resources than would have occurred with a conventional paper-based search"). In addition, the agency can evaluate the relative demand for the information in considering the scope of a "reasonable effort." S. Rep. 104-272 at 15. Under this standard, the record demonstrates that the Service reasonably concluded that given the costs of setting up a separate process to redact Forms 990 in MeF format so that they can be released in that format, given the associated costs, the severe resource constraints faced by the Service, and the overwhelming number of requests for the Forms 990 in the existing image format, the records could not be made "readily reproducible" with "reasonable efforts."

The record shows that to perform the necessary redaction of section 6103 information, the Service would have to set up duplicate procedures for processing the approximately 50% of Forms 990 that are electronically filed and the 50% that are filed on paper, instead of the single process and single system currently used to process both paper-filed and e-filed Forms 990. The record also shows that the Service has faced budgetary constraints in recent years, and continues to face such constraints. These constraints have caused it to lose staff that it could not replace, and have led it to reasonably conclude that it cannot start any new IT projects that are not deemed critical to its mission. Thus, the record demonstrates that the Service reasonably concluded that using the manual process that it would utilize to process a small number of returns for release in MeF format would not be effective as a regular procedure for maintaining all electronically-filed Forms 990 in a releasable, redacted MeF-format. Specifically, doing so would require the Service to divert subject-matter experts from their regular responsibilities and thus would significantly interfere with the agency's regular operations; consequently, the Service reasonably concluded that an automated process would be necessary to perform the necessary redactions on a large-scale, regular basis.

Moreover, the record also shows that such an automated system would itself impose a significant drain on agency resources. A study prepared by the Service in response to the Administration's recent budget proposal found that creating an automated system for accepting all Form 990 filings electronically (which eliminates the need to have duplicate processes for paper and MeF format filings), and then redacting them for release in machine-readable format, would be expected to cost in excess of $19 million, of which at least $ 2 million is attributable to development of software for automated redaction and web publication of the Forms 990 in a machine-readable format. (Ross Decl. ¶ 9, 9(a)-(c).) Given the presumption against imposing

Defendant's Motion for Summary Judgment
Case No.3:13-cv-02789-WHO                17

significant costs on agencies in connection with E-FOIA, the Service reasonably declined to make the records available in MeF format, because they are not "readily reproducible" in that format, nor can they be regularly maintained in such format with "reasonable efforts," and its decision is entitled to deference.

Accordingly, Plaintiff cannot obtain relief under the "reasonable efforts" clause of FOIA.

## V. CONCLUSION

Due to the resources required to release Forms 990 in MeF format redacted to protect information whose disclosure is prohibited under section 6103, the Service reasonably concluded that the Forms 990 are not "reasonably reproducible" in MeF format. Further, the Service did not improperly fail to make "reasonable efforts" to make the record available in a requested format, because at the time it established its present disclosure system, the records at issue had not previously been requested in MeF format. Even if it had to make such efforts in response to Plaintiff's request, the Service reasonably concluded that that it could not, with reasonable efforts, regularly maintain Forms 990 in a redacted, releasable MeF format. As the Service's conclusions were reasonable, they are entitled to deference. Accordingly, the Court should grant the Service summary judgment and dismiss this action with prejudice.

/ /

/ /

/ /

/ /

/ /

/ /

Defendant's Motion for Summary Judgment
Case No.3:13-cv-02789-WHO             18

DATED: August 13, 2014

        Respectfully Submitted,

        TAMARA W. ASHFORD
        ACTING ASSISTANT ATTORNEY GENERAL

        /s/ Yonatan Gelblum
        YONATAN GELBLUM
        CHRISTOPHER W. SANDERS
        U.S. DEPARTMENT OF JUSTICE, TAX DIVISION
        P.O. Box 227
        Washington, DC 20044
        (202) 305-3136 (phone)
        (202) 514-6866 (facsimile)
        Yonatan.gelblum@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that I served a true and correct copy of the foregoing motion, with attachments, on Plaintiff's counsel via the Court's Electronic Case Filing System this 13th day of August, 2014.

        /s/ Yonatan Gelblum
        Yonatan Gelblum