THOMAS R. BURKE (CA State Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California   94111
Telephone:      (415) 276-6500
Facsimile:      (415) 276-6599
Email:          thomasburke@dwt.com

DAN LAIDMAN (CA State Bar No. 274482)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA  90017-2566
Telephone:      (213) 633-6800
Email:          danlaidman@dwt.com

RONALD G. LONDON (Pro Hac Vice)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
Telephone:      (202) 973-4200
Email:          ronnielondon@dwt.com

DAVID HALPERIN (Pro Hac Vice)
1530 P Street NW
Washington, DC  20005
Telephone:      (202) 905-3434
Email:          davidhalperindc@gmail.com

Attorneys for Plaintiff Public.Resource.Org

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PUBLIC.RESOURCE.ORG., a California non-profit organization, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES INTERNAL REVENUE SERVICE, <br><br> Defendants. | Case No. **3:13-CV-2789** <br> Assigned to the Hon. William H. Orrick <br><br> **PLAINTIFF PUBLIC.RESOURCE.ORG'S CONSOLIDATED CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> Hearing Date: January 7, 2015 <br> Time:          2:00 p.m. <br> Place:         Courtroom 2, 17th Floor |

DAVIS WRIGHT TREMAINE LLP

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 7, 2015, at 2:00 p.m., in Courtroom 2 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102, or as soon thereafter as the matter may be heard, Plaintiff Public.Resource.Org, Inc. ("Public.Resource") will and hereby does move this Court for summary judgment pursuant to Federal Rule of Civil Procedure 56, and will and hereby does oppose the Motion for Summary Judgment of Defendant Internal Revenue Service ("IRS").

As set forth in more detail in the attached Memorandum Of Points And Authorities, the evidence submitted by Public.Resource and the IRS shows, as a matter of law, that the nine IRS Form 990 tax returns requested by Public.Resource are readily reproducible in machine-readable Modernized e-File ("MeF") format, and therefore must be produced to Public.Resource in that format pursuant to 5 U.S.C. § 552(a)(3)(B). Consequently, Public.Resource requests that this Court grant its Cross-Motion for Summary Judgment, deny the IRS' Motion for Summary Judgment, and direct the IRS to make available to Public.Resource machine-readable, MeF-formatted Form 990s for the nine tax-exempt organizations that Public.Resource requested through its FOIA request, within 15 days of the Court's decision in this matter.

This Consolidated Cross-Motion and Opposition is based on this Notice; on the attached Memorandum Of Points And Authorities; on the attached Declarations of Carl Malamud, Beth Simone Noveck, Tim Bray, Ken Berger, Clay Johnson, Kendall Taggart, Scott Klein, and Pete Skomoroch, and the exhibits attached thereto; on all matters of which this Court may take judicial notice; on all pleadings, files, and records in this action; and on such other argument as may be received by this Court at the hearing on the parties' Cross-Motions.

DATED: This 29th day of September, 2014     DAVIS WRIGHT TREMAINE LLP

By: _____/s/ Thomas R. Burke_____
THOMAS R. BURKE
Attorneys for Plaintiff Public.Resource.Org

**TABLE OF CONTENTS**

Page

1. INTRODUCTION AND SUMMARY OF FACTS ...........................................................1

2. FOIA REQUIRES DISCLOSURE OF RECORDS IN ANY REQUESTED FORMAT THAT IS READILY REPRODUCIBLE. ...........................................................3

3. THE REQUESTED NINE FORM 990s ARE READILY REPRODUCIBLE IN MACHINE-READABLE FORMAT. ...........................................................5

    A. The IRS' Own Customs And Practices Do Not Justify Withholding. ....................7

    B. The Cost Of Responding To A FOIA Request Does Not Determine Whether Records Must Be Disclosed In A Particular Format. ...............................9

    C. The Request At Issue Is Limited In Scope To Nine Documents...........................10

    D. Producing The Requested Records In Machine-Readable Format Will Protect Privacy Interests. .......................................................14

    E. There Is A Strong Public Interest In Accessing The Requested Form 990s In Machine-Readable Format. ...........................................................15

4. EVIDENTIARY OBJECTIONS. .......................................................17

5. CONCLUSION. .......................................................18

DAVIS WRIGHT TREMAINE LLP

# TABLE OF AUTHORITIES

Page

**CASES**

*Army Times Pub. Co. v. Dep't of the Army*,
   684 F. Supp. 720 (D.D.C. 1988) ...................................................................10

*DOJ v. Tax Analysts*,
   492 U.S. 136 (1989) .............................................................................9, 10

*In Defense of Animals v. USDA*,
   587 F. Supp. 2d 178 (D.D.C. 2008) ...............................................................17

*Jones v. FBI*,
   41 F.3d 238 (6th Cir. 1994) .........................................................................9

*Kim v. DOI*,
   859 F. Supp. 2d 13 (D.D.C. 2012) ..................................................................9

*Kissinger v. Reporters Committee for Freedom of the Press*,
   445 U.S. 136 (1980) ................................................................................9

*LaRoche v. SEC*,
   2006 WL 2868972 (N.D. Cal. Oct. 6, 2006) ........................................................8

*Laughlin v. CIR*,
   103 F. Supp. 2d 1219 (S.D. Cal. 1999) .............................................................9

*Nat'l Sec. Counselors v. CIA*,
   960 F. Supp. 2d 101 (D.D.C. 2013) .....................................................4, 5, 13, 14

*Public.Resource.org v. IRS*,
   – F. Supp. 2d –, 2014 WL 2810499 (N.D. Cal. June 20, 2014) .................................2, 3, 9

*Sample v. Bureau of Prisons*,
   466 F.3d 1086 (D.C. Cir. 2006) .....................................................................5

*Schladetsch v. HUD*,
   2000 WL 33372125 (D.D.C. Apr. 4, 2000) .........................................................4

*Scudder v. CIA*,
   – F. Supp. 2d –, 2014 WL 954830 (D.D.C. 2014) .........................................*passim*

*Sears v. Gottschalk*,
   502 F.2d 122 (4th Cir. 1974) ......................................................................10

*Tax Analysts v. DOJ*,
   845 F.2d 1060 (D.C. Cir. 1988) ...................................................................10

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ........................................................................................11

*TPS, Inc. v. DOD*,
    330 F.3d 1191 (9th Cir. 2003) ....................................................................*passim*

**STATUTES**

5 U.S.C.
    § 551 ..............................................................................................................3
    § 552 ....................................................................................................*passim*
    § 552(a)(3)(B) ........................................................................................*passim*
    § 552(a)(4)(A) ..............................................................................................10
    § 552(a)(4)(B) ..........................................................................................4, 13

26 U.S.C. § 6104 ....................................................................................................2, 3

IRC § 6103(c) ..............................................................................................................3

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................3

Federal Rule of Evidence
    402 ................................................................................................................17
    602 ................................................................................................................18
    701 ................................................................................................................18
    702 ................................................................................................................18
    703 ................................................................................................................18

Local Rule 7-5(b) ......................................................................................................17

**OTHER AUTHORITIES**

74 Fed. Reg. 4683 (2009) ..........................................................................................4

78 Fed. Reg. 28111 (2013) ........................................................................................4

H.R. Rep. 104–795 (1996)......................................................................................4, 5

S. REP. 104-272 (1996) ............................................................................................6

**1.     INTRODUCTION AND SUMMARY OF FACTS**

"Where we're going, we don't need roads."  Doc Brown, *Back to the Future* (1985).

The central question in this case is how long the Internal Revenue Service ("IRS") can be permitted to defy the will of Congress and the Executive by remaining wedded to decades-old technology in satisfying its duties under the federal Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").  The key facts establishing Public.Resource.Org's ("Public.Resource") entitlement to the records it requested of the IRS are not in dispute.  The IRS does not contest, because it cannot, that: (1) Public.Resource made a narrow FOIA request to receive nine specific IRS Form 990 tax returns in machine-readable Modernized e-File ("MeF") format; (2) the IRS originally received those forms from the non-profit organizations that filed them in the requested MeF format; (3) the IRS has the records available in that format and can readily produce them that way; and (4) the records are not exempt under FOIA.  Disclosure is required in the requested format as a matter of law based on these undisputed facts.  The IRS resists disclosure based entirely on administrative-burden arguments which are not only unavailing and lacking credibility, but irrelevant under governing law.

As amended in 1996, FOIA requires agencies to provide records in any format sought by a requester, as long as they are "readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B).  As the Ninth Circuit has recognized, Congress enacted this provision to "enhance public access to records" in emerging electronic formats.  *TPS, Inc. v. DOD*, 330 F.3d 1191, 1195-96 (9th Cir. 2003).  This case provides a quintessential example of why such access serves a vital public interest.  Public.Resource, a non-profit organization dedicated to governmental transparency, has been working for years to increase public access to information about the IRS' administration of non-profit tax exemptions.  *See* Declaration of Carl Malamud ¶¶ 7, 12-20.  Public.Resource relies on IRS Form 990s for essential information about non-profit groups, as do other watchdog groups, journalists, and even the Government itself.[1]  Form 990s are

---

[1] *Id.*; Declarations of Beth Simone Noveck; Ken Berger; Clay Johnson; Kendall Taggart; Scott Klein; Pete Skomoroch.  Among other information, Form 990 details revenues and expenses, assets and liabilities, and additional information including compensation paid to

DAVIS WRIGHT TREMAINE LLP

indisputably subject to disclosure (*see* 26 U.S.C. § 6104; *Public.Resource.org v. IRS*, – F. Supp. 2d –, 2014 WL 2810499 (N.D. Cal. June 20, 2014)), but the IRS produces them only in an image format that must be manually processed and is not machine-readable, even where the forms themselves originally were electronically filed with the IRS as MeFs.  The image-only format makes the data that appears in the Form 990s extremely difficult to access, and introduces a substantial risk of error into vital investigative and research work based on the data the Forms contain.  *See, e.g.*, Noveck Decl. ¶¶ 7-11; Johnson Decl. ¶¶ 7-11; Berger Decl. ¶¶ 7-9.

While this case exemplifies the public benefit in producing records like Form 990s in modern electronic formats, it also demonstrates why Congress found it necessary to *mandate* such access – because it "anticipated that recalcitrant agencies would resist being responsive to requesters' format choices."  *Scudder v. CIA*, – F. Supp. 2d –, 2014 WL 954830, at *20 (D.D.C. 2014).  To wit, on March 11, 2013, Public.Resource submitted a FOIA request with the IRS for electronically filed Form 990s for nine tax-exempt organizations in MeF format, Cmplt. ¶ 45, Ex. F, only to have the IRS deny the request just nine days later, claiming that Form 990s are exempt from FOIA and must be requested through a separate procedure,  *see id*. ¶ 46, Ex. G.

Public.Resource sought reconsideration, explaining that the separate procedure – use of IRS Form 4506-A "Request for Public Inspection or Copy of Exempt or Political Organization IRS Form" – is inadequate because it provides for the release of Form 990 data only in "raw" or "alchemy" format.  The "raw" or "alchemy" format converts the original Form 990 from MeF into an image file, which makes the data extremely difficult to analyze. *See id*. ¶ 47, Ex. H.  But the IRS declined to reconsider its denial of Public.Resource's FOIA request, stating that "Form 990 data in the MeF format do not constitute a recognizable record, but rather a continuous string of numbers that includes confidential return information.  Our existing process for providing releasable copies of Form 990 is to convert the MeF data into a PDF format and withhold confidential return information from the resulting form."  *See id*. ¶ 49, Ex. I.  The IRS added that it "does not have an existing process to convert the releasable portion of Form 990 back into

_____

executives, unrelated business income, whether the organization engages in lobbying activities, and the stated accomplishments of the organization.

DAVIS WRIGHT TREMAINE LLP

MeF (or other machine readable) format.  For these reasons, we are unable to provide the requested records in MeF format because they are not readily reproducible in a form that also complies with IRC section 6103(c)."  *Id.*

Public.Resource sent two follow-up letters to clarify the matter, *see id*. ¶¶ 51-52, Exs. J-K, but was compelled to file this lawsuit seeking declaratory and injunctive relief under FOIA and the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.* ("APA").  The IRS moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that FOIA did not apply to Public.Resource's request because it was superseded by section 6104 of the Internal Revenue Code.  *See* Dkt. # 14.  This Court denied the IRS' Motion, concluding "there is no basis to conclude that FOIA is superseded by section 6104."  *See* Dkt. # 42; *Public.Resource.Org*, 2014 WL 2810499, at *1.  The IRS now moves for Summary Judgment.  *See* Dkt. # 46 ("MSJ"). It no longer maintains that the requested documents are beyond the scope of FOIA,[2] but now argues that "under FOIA, disclosure of the records is not required because they are not 'readily reproducible' in Plaintiff's requested format once the need for redaction is taken into consideration."  MSJ at 8 (original emphasis).  However, as shown below, that position, which is based on antiquated technology and aversion to modern practice, is legally indefensible.

**2.  FOIA REQUIRES DISCLOSURE OF RECORDS IN ANY REQUESTED FORMAT THAT IS READILY REPRODUCIBLE.**

Congress enacted the Electronic Freedom of Information Act Amendments of 1996 to require that, in responding to FOIA requests, "an agency shall provide [records] in any form or format requested by the person if the record is readily reproducible by the agency in that form or format."  5 U.S.C. § 552(a)(3)(B) ("E-FOIA").  The statute "reflect[s] a Congressional choice to expand, rather than narrow, the agencies' obligations under FOIA and to encourage government agencies to use advancing computer technology … not only to conduct agency business and store data but also 'to enhance public access' to records."  *TPS*, 330 F.3d at 1195-96 (quoting PL 104-

---

[2] This Court's Order denying the Motion to Dismiss permitted both Public.Resource's FOIA claim and its claim under the APA to proceed, while noting that "[w]hile Public.Resource will eventually have to elect its remedy, it need not do so now."  2014 WL 2810499, at *7.  By this Cross Motion, Public.Resource seeks relief only through FOIA.

DAVIS WRIGHT TREMAINE LLP

231, Congress' Statement of Findings and Purposes).  *See also Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 202 (D.D.C. 2013) (statute aimed at "promoting greater efficiency in respond-ing to FOIA requests ... includ[ing] using technology to let requesters obtain information in the form most useful to them") (quoting H.R. Rep. 104–795, at 11 (1996)).  *Cf. Schladetsch v. HUD*, 2000 WL 33372125, at *4 (D.D.C. Apr. 4, 2000) ("subsection (a)(3)(C) 'promotes electronic data searches and encourages agencies to expend new efforts in order to comply with … parti-cular FOIA requests'").  Notably, almost immediately after taking office, President Obama declared that FOIA "should be administered with a clear presumption [that i]n the face of doubt, openness prevails," *Freedom of Information Act*, 74 Fed. Reg. 4683 (2009), and recently issued Executive Order 13642, *Making Open and Machine Readable the New Default for Government Information* which, among other things, sought to "ensure that data are released to the public in ways that make the data easy to find, accessible, and usable."  78 Fed. Reg. 28111 (2013).

In applying Section 552(a)(3)(B), the Ninth Circuit has held that "Congress' intent is best realized by interpretations of FOIA that favor disclosure over secrecy."  *TPS*, 330 F.3d at 1196. While the court recognized that most cases "speak in terms of *whether* to disclose rather than the *format* in which to disclose, their presumption in favor of public access to information suggests that we should invoke the same presumption in requiring disclosure in the requested format so as to 'enhance public access to agency records.'"  *Id.* (original emphasis).  Accordingly, the court in *TPS* reversed a grant of summary judgment for the government in a suit seeking access to files in a particular electronic format, rejecting the government's improperly "narrow reading" of the statute.  *Id.* at 1195.

Despite this precedent, the IRS proceeds down the same doomed path as did DOD in *TPS*, reading far too much into FOIA's direction that courts should "accord substantial weight to an affidavit of an agency concerning the agency's determination as to … reproducibility under paragraph (3)(B)."  5 U.S.C. § 552(a)(4)(B).  Contrary to the IRS' assertions, this provision does not require broad "deference to the agency's position" (MSJ at 9), or "deference to the findings and determinations in the Service's declarations" (*id.* at 11).  Rather, as the legislative history

DAVIS WRIGHT TREMAINE LLP

makes clear, this "section does not affect the extent of judicial deference that a court may or may not extend to an agency on any other matter."  H.R. Rep. 104–795, at 22.

Consequently, courts have routinely rejected agencies' efforts to expand this provision, and have declined to defer to the sort of non-technical, policy-based determinations on which the IRS relies here.  *See Scudder*, 2014 WL 954830, at \*14 ("such deference does not amount to a blanket exemption from judicial review of the agency's justification for declining to comply with a specific format request or failing to maintain records in readily reproducible formats"); *Nat'l Sec. Counselors*, 960 F. Supp. 2d at 206 ("even considering the 'substantial weight' owed to the [agency's] declaration on the issue … [it] has not carried its burden of establishing that the records requested by the plaintiff are not 'readily reproducible' in an electronic format").  Moreover, even giving "substantial weight" to agency determinations of whether records are reasonably reproducible, where there is no dispute as to the agency's *ability* to reproduce records electronically – and there is none here – the agency must honor the "clear statutory obligation to produce the records in electronic format when that format is requested."  *Sample v. Bureau of Prisons*, 466 F.3d 1086, 1088 (D.C. Cir. 2006).  As discussed below, the IRS does not dispute that it can produce the records in the requested format, thus its deference argument should be rejected.

**3.     THE REQUESTED NINE FORM 990s ARE READILY REPRODUCIBLE IN MACHINE-READABLE FORMAT.**

Section 552(a)(3)(B), "on its face, requires that the agency satisfy a FOIA request when it has the capability to readily reproduce documents in the requested format."  *TPS*, 330 F.3d at 1195.  Therefore, courts have made clear that where, as here, it is undisputed that an agency actually has the records available in the requested format, the "readily reproducible" standard is satisfied.  As the Ninth Circuit explained in *TPS*, "[w]hen an agency already creates or converts documents in a certain format – be it for FOIA requestors, under a contract, or in the ordinary course of business – requiring that it provide documents in that format to others does not impose an unnecessarily harsh burden, absent specific, compelling evidence as to significant interference or burden."  *Id.* at 1195.  *See also Scudder*, 2014 WL 954830 at \*13 ("if an agency maintained

DAVIS WRIGHT TREMAINE LLP

records in an electronic form, even if such records were only for internal agency use, they must

be produced in an electronic form pursuant to a FOIA request"); S. REP. 104-272 at *14 (1996)

(while statute considers whether records are reproducible with "reasonable efforts … [t]o clarify

the meaning of 'reasonable,' the bill makes clear that requests for an electronic version of

records should be honored, even for records that are not normally maintained or stored in

electronic form, if they are, nevertheless, available in the requested electronic version.").

     Here, Public.Resource requested nine specific Form 990s that were "filed electronically

in MeF format," in the "machine-readable" form in which they were received by the agency.

Cmplt. ¶ 45, Ex. F.  Undisputed evidence shows that the IRS receives these e-filed forms in

a machine-readable format.  *E.g.*, Malamud Decl. ¶ 24 (describing structure of e-file sub-

mission); Noveck Decl. ¶¶ 7-8 (describing how IRS receives data in MeF format).  The IRS does

not contest this, and in fact acknowledges in its own submissions that the records at issue were

electronically filed with the IRS, and continue to be maintained by it, in machine-readable

format.  *E.g.*, MSJ at 4-6, 11; Ross Decl. ¶ 6 (generally describing e-filing of Form 990s);

Archibald Decl. ¶ 5 (describing IRS' receipt of electronically filed Form 990s); Rosenmerkel

Decl. ¶¶ 8-9 (recognizing that IRS maintains and can retrieve the nine Form 990s requested by

Public.Resource in machine-readable format).  As one of the IRS's own declarants plainly

acknowledges, the agency "has access to the native electronic format of the returns…."

Rosenmerkel Decl. ¶ 8.  Based on this record, there is simply no dispute that the IRS has the

records at issue "available in the requested electronic version."  S. REP. 104-272, at *14.

     This is where the inquiry should end.  *See TPS*, 330 F.3d at 1195 (agency required to

produce records where it "already creates or converts [them] in a certain format").  The IRS'

entire argument in favor of withholding rests on its own byzantine, outdated process for taking

this information that the agency indisputably receives in machine-readable format, and then

converting it into a far less useful, non-readable format for production.  *E.g.*, MSJ at 5-7.  The

IRS claims this is necessary to accommodate redactions to the Form 990s,[3] but a "FOIA request

---

[3]   Public.Resource does not dispute that the material that the IRS removes from the Form
990s can be redacted, only that the IRS need not use the archaic process it has detailed in its

DAVIS WRIGHT TREMAINE LLP

for records in an existing format should not be frustrated due to the agency's decision to adopt a production process that nonetheless renders release in that format highly burdensome." *Scudder*, 2014 WL 954830 at *13.  And indeed, as shown below, all of the IRS' attempts to justify withholding on this basis are either legally irrelevant, or plainly contradicted by Public.Resource's evidence.

### A.   The IRS' Own Customs And Practices Do Not Justify Withholding.

The IRS admits that it has never contemplated actually making Form 990s available in MeF format, apparently in the mistaken belief that its own customs for responding to FOIA requests justify withholding.  *E.g.*, MSJ at 14-15.  The IRS concedes its current processes were developed nearly 20 years ago when <u>all</u> Form 990s were filed in paper format rather than electronically, and have not been revisited even though it has been a decade since the advent of e-filing.  *See* MSJ at 5 (IRS "developed the SEIN system in 1998 … [a]t the time[] all such forms were filed on paper; it was not until 2004 that e-filing was mandated"); *id.* 11 ("Thus [sic] system was set up six years prior the introduction of e-filing …").  From this springboard, the agency argues it "was not under any prior obligation to make the returns reproducible in this format, since it had not previously received a FOIA request for release of the returns in that format."  *Id.* at 4.  But whether a plaintiff has submitted "a novel request" (*id.* at 7), or even the "first such request" (*id.* at 9), is not the barometer for an agency's E-FOIA compliance.

To the contrary, the statute mandates that "[e]ach agency shall make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section."  5 U.S.C. § 552(a)(3)(B).  This part of the "statute must be read as requiring an agency to take affirmative steps toward maintaining records in 'reproducible' formats such that they are 'readily reproducible' when sought out by FOIA requesters"; it thus "imposes an over-arching obligation on federal agencies to be proactive in satisfying format requests."  *Scudder*, 2014 WL 954830 at *11.  The provision is an "exception to the general rule" that courts "should not second guess an

submission here, and that it certainly may not rely on such backward-thinking machinations to deny access to MeF versions of the nine Form 990s entirely.

DAVIS WRIGHT TREMAINE LLP

agency's method by which it chooses to release responsive documents," because "[c]learly, Congress anticipated that recalcitrant agencies would resist being responsive to requesters' format choices, and therefore required … 'reasonable efforts' to maintain those records in formats that are 'reproducible for the purposes of [the sub]section.'" *Id.* at *20.

The Ninth Circuit's decision in *TPS* is instructive. There, the plaintiff filed suit to force the Department of Defense to produce files electronically in "zipped" format. 330 F.3d at 1193. The agency resisted, claiming, just as the IRS does here, that the FOIA "request was 'unique,'" and that production in the requested format would require "significant time and expense" because it was "not 'business as usual'" for responding to such requests. *Id.* The Ninth Circuit disagreed, holding that the "language of FOIA does not support a reading that distinguishes between 'business as usual' for FOIA requests and 'business as usual' for activities that are part of the agency's business." *Id.* at 1195. The Court concluded that "FOIA does not restrict the 'business as usual' inquiry to whether a government agency regularly reproduces documents in a specified format solely for FOIA requests," and "[i]nstead, the relevant inquiry is whether, in general, the format is one that is 'readily reproducible' by the agency." *Id.* at 1197.

Similarly, in *Scudder*, the court followed *TPS* and held the CIA could not evade its disclosure responsibilities because of its own particular process for responding to FOIA requests where, as here, "the plaintiff alleges that the requested records already exist and are maintained in the exact format requested by the plaintiff." 2014 WL 954830, at *9. The court explained that "when the requested format is an existing format for responsive records within the agency, it would be a highly unusual case where the records would not thereby be readily reproducible." *Id.* at *14 (quotations omitted). Moreover, even "[w]hen the requester seeks … responsive records in a format … different from that in which the records are maintained, the 'readily reproducible' requirement *still* applies and is informed by the second sentence of the subsection, directing the agency to engage in 'reasonable efforts' to comply." *Id.* (emphasis added). Here, it is beyond dispute that MeF is an "existing format" in which the nine Form 990s are maintained. *See supra* § 3. *Compare*, *e.g.*, *LaRoche v. SEC*, 2006 WL 2868972, at *3 (N.D. Cal. Oct. 6, 2006) ("Plaintiff has not demonstrated that the SEC has ever gathered the requested information

in his desired format.").  And given that it is undisputed that this is the format *in which the IRS receives the records*, the IRS cannot come close to showing this is a "highly unusual" case where records are not readily reproducible.  *Id.*

For this reason, the IRS's reliance on language in *TPS* about "unreasonable" requests is misplaced.  MSJ at 13.  The Ninth Circuit recognized that an agency may not have to respond to "unusual requests" that would cause "significant interference with the operation of the agency's information system," while distinguishing such scenarios from those, like this one, where "an agency already creates or converts documents in [the requested] format."  *TPS*, 330 F.3d at 1195.  The other cases that the IRS discusses are non sequiturs.  MSJ at 15-16.  Not only does this authority not address an agency's obligations under Section 552(a)(3)(B) or the format in which records must be produced, each case involves a situation where the agency did not *possess* the records at issue.  *E.g.*, *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 154-55 (1980) (records deeded to different branch of government); *Jones v. FBI*, 41 F.3d 238, 249 (6th Cir. 1994) (records were destroyed); *Kim v. DOI*, 859 F. Supp. 2d 13, 18 (D.D.C. 2012) (same); *Laughlin v. CIR*, 103 F. Supp. 2d 1219, 1222 (S.D. Cal. 1999) (same).  *DOJ v. Tax Analysts*, 492 U.S. 136 (1989), supports Public.Resource's position, because the Court ordered disclosure where, as here, the agency possessed the records at issue.  *Id.* at 146-47.

This Court has already rejected a similar argument from the IRS in denying its Motion to Dismiss, in which the IRS attempted to rely on its own regulations as a justification for treating these records as entirely outside the scope of FOIA.  *Public.Resource.Org v. IRS*, 2014 WL 2810499, at *7 (N.D. Cal. 2014) ("The IRS cannot achieve through rulemaking what it was not permitted to do by Congress.").  The IRS' own customs and practices are not determinative and fail to satisfy the agency's affirmative obligations under the E-FOIA Amendments.

### B. The Cost Of Responding To A FOIA Request Does Not Determine Whether Records Must Be Disclosed In A Particular Format.

The IRS' Motion should be denied, and summary judgment granted in favor of Public.Resource, for the separate and additional reason that the IRS' entire basis for refusing to produce these records in the requested format is its claim that doing so would be costly.  *E.g.*,

DAVIS WRIGHT TREMAINE LLP

MSJ at 1, 11. But as a matter of law, this is not a permissible basis for withholding responsive records. If, as is the case here, records are "otherwise locatable," then "equitable considerations of the costs, in time and money, of making records available for examination do not supply an excuse for non-production." *Sears v. Gottschalk*, 502 F.2d 122, 126 (4th Cir. 1974). FOIA "does not confer judicial discretion to balance its dictates against the administrative burdens of disclosure." *Tax Analysts v. DOJ*, 845 F.2d 1060, 1067 (D.C. Cir. 1988). *See also Army Times Pub. Co. v. Dep't of the Army*, 684 F. Supp. 720, 723 (D.D.C. 1988) ("administrative inconvenience and burden are not criteria by which Congress allowed FOIA requests be judged").

Contrary to the IRS' view that such burdens can justify withholding, "Congress explicitly dealt with … administrative expense by providing for the payment of search and duplication costs by FOIA claimants." *Tax Analysts*, 845 F.2d at 1067. While the agency "may well find the fulfillment of its duties under FOIA … administratively burdensome … the government is recompensed for expenses from fees charged to FOIA requesters" pursuant to 5 U.S.C. § 552(a)(4)(A). *Army Times*, 684 F. Supp. at 723. *See also DOJ v. Tax Analysts*, 492 U.S. 136, 145 n.5 (1989) ( "the fact that the FOIA allows agencies to recoup the costs of processing requests" is how the statute deals with burdensome requests). Consequently, once the IRS sufficiently demonstrates that responding to Public.Resource's request for nine Form 990s in machine-readable format would really cost $6,200, the proper recourse is for the agency to agree to produce the documents and send Public.Resource a bill,[4] *not* to withhold these otherwise responsive records.

## C. The Request At Issue Is Limited In Scope To Nine Documents.

There is no dispute that this case involves Public.Resource's narrow request for *nine* specific Form 990s in machine-readable format. *E.g.*, Cmplt. ¶ 45, Ex. F. Yet the IRS' central argument about the purported cost and burdens of production inappropriately looks beyond the nine documents actually at issue, and focuses on large-scale expenditures that the IRS claims

---

[4] The parties could then focus their dispute solely on the IRS' cost estimate, which, as discussed in the ensuing section, is grossly inflated.

DAVIS WRIGHT TREMAINE LLP

would be necessitated by other purely hypothetical, far broader FOIA requests. *E.g.*, MSJ at 5-6, 16-17. This attempt to avoid its obligation to respond to Public.Resource's limited request for nine records by invoking a parade of horribles related to hypothetical requests not before the Court ignores the well-established principle that each FOIA case is to be decided on its own merits. *See generally Taylor v. Sturgell*, 553 U.S. 880, 884-85 (2008) (FOIA plaintiff not precluded from litigating access to records despite adverse judgment against prior requester seeking same files).

In any event, even if the Court were to consider the costs of large-scale disclosure of Form 990s in MeF format, Public.Resource's evidence shows the IRS' assertions about the cost and burdens are grossly exaggerated. The IRS' resistance to producing Form 990s in machine-readable format is based entirely on the agency's need to redact protected information from these records before they are disclosed. *E.g.*, MSJ at 4-6. But Public.Resource's affidavits, by several individuals with considerable expertise in the relevant technology and insight into how the federal government operates, explain in detail how information such as that contained in Schedule B of Form 990 can be redacted quickly and easily – and in the same machine-readable format in which the IRS receives these records through e-filing. *See* Malamud Decl. ¶¶ 23-34; Bray Decl. ¶¶ 12-20; Johnson Decl. ¶¶ 7-23.[5]

Public.Resource's declarant Tim Bray has 33 years of experience as a computer program-mer, and helped developed the standards for the XML programming language that is partly the basis for the IRS' MeF submission format. *See* Bray Decl. ¶¶ 1-10. Mr. Bray declares that he personally was able to redact a representative machine-readable file to remove Schedule B-type information in one minute and four seconds. *Id.* at ¶¶ 12-16. Moreover, he declares that as a computer programmer he "could write a very simple program" using existing, widely available

---

[5] In analogous FOIA cases, courts have deemed relevant and relied upon similar declara-tions from individuals with technical expertise and familiarity with agency operations in counter-ing official affidavits. *E.g.*, *TPS*, 330 F.3d at 1197 (declaration of TPS's president about DOD's "business as usual" practices regarding processing of computer files should have been credited); *Scudder*, 2014 WL 954830, at *2-3, 14-17 (crediting declaration of plaintiff, a former employee of the agency, regarding "the technical capabilities of the defendant's systems").

DAVIS WRIGHT TREMAINE LLP

resources, through which "one could easily and systematically remove a specific schedule from a large number of" files. *Id.* at ¶ 18. Mr. Bray estimates that it would take "less than half a day to write such a program," which would be "a very simple task and could be based on the existing tools that the IRS has already developed." *Id.* at ¶¶ 19-20.

Likewise, Public.Resource's President, Carl Malamud, declares that he used "a common programmers tool" accessible to "[a]ny professional programmer" to redact Schedule B-type information from a record comparable to a Form 990 in 57 seconds. *See* Malamud Decl. ¶ 28. Mr. Malamud further states that he was quickly and easily able to write programs that would automate this redaction process – all in machine-readable form – using a "free open source program." *Id.* at ¶ 31, Exhibit A. Mr. Malamud has over 30 years of experience as a computer professional, including with the XML standard, and is intimately familiar with the IRS Exempt Organization database and Form 990, having analyzed and processed these records in connection with his work for Public.Resource for six years. *Id.* at ¶¶ 1-12. Based on extensive experience in these fields, Mr. Malamud has concluded "it is technically very easy to make the MeF version of these public filings available." *Id.* at ¶ 34.

Like Mr. Malamud, Public.Resource's declarant Clay Johnson also has both technical expertise and first-hand knowledge of federal agency operations: Mr. Johnson is an experienced computer programmer and former government appointee with expertise in administrative practice and procurement and the use of information technology by federal agencies. Johnson Decl. ¶¶ 1-7. Mr. Johnson explains why the IRS' cost estimates are grossly misleading. *Id.* at ¶¶ 12-23. In particular, the IRS claims that an automated system for producing Form 990s in machine-readable format could cost more than $19 million. *See* MSJ at 17; Ross Decl. ¶ 9. However, Mr. Johnson carefully examined the document that is the basis for this estimate, IRS Exhibit 105, and explains that "the projects detailed in this estimate cover a wide range of new activities, including creating … a new IRS web site and support for e-filing of the new Form 990-T … This cost estimate is therefore not the appropriate one to determine the cost to the IRS of preparing the currently filed XML files for public release as XML files with the proper redaction." Johnson Decl. ¶ 22. Instead, consistent with the declarations of Mr. Bray and Mr.

DAVIS WRIGHT TREMAINE LLP

Malamud, Mr. Johnson concludes that "this particular and very specific task is fairly simple and it would cost the IRS far less than $19 million to support the systematic process and release of all Form 990s in XML that are electronically filed." *Id.*

Mr. Johnson also carefully examined IRS Exhibit 107, which is the sole piece of evidence it relies on to claim that producing the nine Form 990s would cost $6,200. *See* MSJ at 6, 12; Rosenmerkel Decl. ¶ 9, IRS Ex. 107. Mr. Johnson explains in detail the type of XML editing software used by the IRS, how much it costs, and how it is used. *See* Johnson Decl. ¶¶ 12-15. He does "not find the estimates [in IRS Exhibit 107] to be credible," noting by way of example that "the estimate includes 4.5 hours for manual redaction of XML … and then 2.25 hours for saving those files," when "[r]emoving one or several elements from an XML file is a trivial task that will only take a few minutes," as is saving the resulting file. *Id.* at ¶ 16. Mr. Johnson finds the IRS' overall estimate for the amount of time needed to process these nine files to be similarly "not credible," explaining that "[g]iven my familiarity with the workings of government and my realistic understanding that sometimes [things] take a bit longer in government than in the private sector, it is still inconceivable to me that the process of redacting these 9 XML files would take 64.1 hours." *Id.* at ¶ 20.

The IRS does not present any detailed, credible evidence to contradict this testimony. Importantly, nearly all of the IRS' declarations come from officials whose primary areas of expertise and responsibility are in budgetary matters, not computer programming.[6] And where the IRS has submitted technical declarations, they merely confirm the workings and limitations of the IRS' current, antiquated production process, by which *all* Form 990s are converted to a non-machine-readable image format before they are redacted and produced. *E.g.*, Archibald Decl. ¶¶ 3-17; Rosenmerkel Decl. ¶¶ 4-15. Courts have rejected virtually identical arguments that an agency's adoption of a needlessly laborious production process can somehow immunize it from the mandate of Section 552(a)(3)(B). *See Nat'l Sec. Counselors*, 960 F. Supp. 2d at 205

---

[6] Such declarations on policy matters, not technical issues, are not entitled to deference under 5 U.S.C. § 552(a)(4)(B). *See* Section 2, *supra*.

DAVIS WRIGHT TREMAINE LLP

(refusing to defer to agency's "explanation of the labyrinthine steps that are necessary to move a document from the classified system to an unclassified piece of electronic media"); *Scudder*, 2014 WL 954830, at *17 (characterizing agency's disclosure process as "Rube–Goldbergian" where it involved printing out and then re-scanning electronic records).

Here, none of the IRS' declarations rebuts Public.Resource's evidence establishing the ease with which a computer programmer could redact protected information from Form 990s at issue in their original machine-readable format and create an automated process for doing so on a large scale. There is accordingly more than ample evidence before the Court for it to be "somewhat skeptical regarding … the labyrinthine steps" that the IRS claims are necessary to satisfy Public.Resource's FOIA request. *See Nat'l Sec. Counselors*, 960 F. Supp. 2d at 205.

### D. Producing The Requested Records In Machine-Readable Format Will Protect Privacy Interests.

The IRS' claimed need to redact the Form 990s to remove protected information that implicates individual privacy does not favor withholding (or production only in "alchemy" format), as the agency argues, but rather disclosure in the format Public.Resource requested. *E.g.*, MSJ at 4-5, 11-12. As a threshold matter, the IRS does not, because it cannot, claim there is any privacy risk posed by the disclosure of these nine particular records in MeF format. Rather, its argument hinges on the agency's speculation that it would somehow be more difficult to redact protected information when processing Form 990s for production in machine-readable format on a large scale. *E.g.*, MSJ at 12. This argument overlooks the reality that there have been egregious privacy breaches under the current system, in which the IRS produces redacted Form 990s in a non-readable image format.

As described in Mr. Malamud's declaration, part of his work for Public.Resource involves conducting privacy audits of the IRS' Exempt Organizations database and taking action to redact protected information such as social security numbers. *See* Malamud Decl. ¶¶ 12-22. In the past two years, Mr. Malamud has found extensive evidence of privacy breaches under the current system. *Id.* at ¶¶ 13-20. Because the IRS currently produces Form 990s in a non-machine-readable image format, Mr. Malamud must search for privacy breaches using an

DAVIS WRIGHT TREMAINE LLP

automated Optical Character Recognition ("OCR") program that attempts to recognize written characters, a system that is both time-consuming and "inherently inaccurate." *Id.* at ¶¶ 21-22. *See also* Berger Decl. ¶ 7 (explaining that "the image format of the Form 990 … has substantial disadvantages," including "low-resolution and small font size," making them difficult to read and prone to errors when manually processed).

Accessing the requested Form 990s in the machine-readable format in which they are filed with the agency would actually increase the accuracy and efficiency of these efforts, thus promoting privacy interests that are poorly served by the current system. *See* Malamud Decl. ¶ 34. *See also* Skomoroch Decl. ¶ 11 ("low-resolution TIFF images" currently produced by IRS are "difficult to parse" and require OCR software that is "subject to recognition errors" while the "MeF format is not subject to these limitations.").  Therefore, to the extent concerns about redacting protected information are relevant, they strongly support production of the requested Form 990s in machine-readable format.  *See Scudder*, 2014 WL 954830, at *19 (rejecting CIA's argument that producing electronically stored records in paper format would avoid disclosure of confidential information because "common sense would indicate it would be just as possible, if not easier, to slip classified information into a 19,000 page printout as it would be to hide classified information in metadata associated with electronic []copies of the same records").

**E.      There Is A Strong Public Interest In Accessing The Requested Form 990s In Machine-Readable Format.**

Public.Resource has provided ample evidence showing the strong public interest in accessing Form 990s in machine-readable format, while the IRS is tellingly silent on these benefits.  Evidence presented by Public.Resource shows how producing machine-readable Form 990s would enable journalists, watchdog groups, and even the Government itself to better understand and monitor the granting and administration of tax-exempt status to non-profits.

Public.Resource's declarant Beth Simone Noveck, formerly the United States Deputy Chief Technology Officer in the Executive Office of the President and the co-author and principal investigator of an Aspen Institute report about non-profit sector data, states that "[m]aking data [available] in MeF format could enable researchers and law enforcement to recognize fraud

DAVIS WRIGHT TREMAINE LLP

early, anticipate abuses, and target enforcement more efficiently and effectively."  Noveck Decl.

¶ 9.  Producing the records in this format would allow non-profit records to "be more easily

combined with other datasets, such as those on government spending, to better understand the

relationship between public and private dollars in providing social services," enabling "exten-

sive, in-depth, empirical research on the sector as a whole."  *Id.* at ¶¶ 10-11.  Unfortunately, such

enforcement efforts and research are stymied by the IRS' current production method, which

"makes the information significantly harder to use."  *Id.* at ¶ 8.  This is because the non-

searchable image files currently disclosed by the IRS must be manually analyzed or scanned with

optical text recognition software, techniques which "are prone to considerable numbers of errors

and are significantly more difficult than working with the data in the original MeF format."  *Id.*

Ms. Noveck's conclusions are echoed by Ken Berger, the President and CEO of Charity

Navigator, a 501(c)(3) non-profit that provides information to donors and social investors, which

uses Form 990s to evaluate charities' performance.  *See* Berger Decl. ¶¶ 1-5.  Mr. Berger agrees

that the "low-resolution," non-searchable forms currently produced by the IRS are "tedious"

to process and susceptible to errors.  *Id.* at ¶¶ 7-8.  Production of Form 990s in their original

machine-readable format would enable Mr. Berger's organization "to perform a much broader

comparative analysis," aiding not only his non-profit but the donors and investors who rely on it,

the causes that they fund, and the taxpayers who support charities' tax-exempt status.  *Id.* at ¶ 8.

*See also* Johnson Decl. ¶ 9 (describing how it "is exceedingly difficult" to process a "complex

return" in the current image format).

Journalists have also increasingly come to rely on Form 990s for their reporting about the

non-profit sector and the government's related tax policies, but they, too, have been frustrated by

the obstacles posed by the IRS' current format for disclosure.  Kendall Taggart, a reporter for the

Center for Investigative Reporting, explains that it took her and fellow journalists weeks to

manually analyze hundreds of returns produced by the IRS in image format and enter them into a

database for a series of articles about non-profit performance which is now being used by state

regulators.  *See* Taggart Decl. ¶¶ 2-8.  Ms. Taggart declares that "[i]f data were available in MeF

format, a simple script in the Python programming language could be used to quickly load …

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

data into a database management system," facilitating projects such as the one she and her colleagues carried out manually, only more comprehensive in scope. *Id.* at ¶ 9.

Similarly, Scott Klein of the non-profit investigative news agency ProPublica, makes "extensive use of the Form 990 in researching stories," and has created an interactive database called "Nonprofit Explorer." *See* Klein Decl. ¶ 5. Under the current system, reporters "must leaf through the Form 990s by hand and then re-enter data into analysis tools," while relying on "slow and cumbersome" optical text recognition software which is "subject to errors." *Id.* at ¶¶ 6-7. Availability of returns in MeF format would permit ProPublica's programmers and journalists to "easily, accurately, and systematically put information from the Form 990 into analysis tools," enhancing the organization's reporting on the non-profit sector and the IRS's performance. *Id.* at ¶ 8. Public.Resource's evidence conclusively establishes the strong public interest in production of Form 990s in machine-readable format, which the IRS does not dispute. And, obviously, improved protection for the privacy interests in the material that must be redacted, *see supra* § 3.D, also provides significant public interest benefits.

## 4.   EVIDENTIARY OBJECTIONS.

Based on the FRE and Local Rule 7-5(b), Public.Resource submits the following evidentiary objections:

**Relevance [FRE 402].**   The IRS' evidence is largely inadmissible for the threshold reason that it is irrelevant to determining whether the nine records at issue are subject to disclosure in the requested format, which is the only issue in the pending Cross Motions. *See In Defense of Animals v. USDA*, 587 F. Supp. 2d 178, 183 (D.D.C. 2008) (excluding government evidence in FOIA case under Rule 402 because it was not relevant to legal question at issue). The IRS' evidence pertains to issues that are irrelevant as a matter of law, including: the IRS' own customs and practices in responding to FOIA requests (*see* Section 3.A, *supra*); the purported costs and administrative burdens of production (*see* Section 3.B, *supra*); and other FOIA requests, actual and hypothetical, that are not at issue in this litigation, which involves a single request for nine specific Form 990 tax returns (*see* Section 3.C, *supra*). Therefore, Public.Resource objects to the following as irrelevant under FRE 402:  Leach Decl. ¶¶ 2-8;

DAVIS WRIGHT TREMAINE LLP

1  Higley Decl. ¶¶ 3-9; Ross Decl. ¶¶ 4-10; Archibald Decl. ¶¶ 2-17; Rosenmerkel Decl. ¶¶ 3-15;

2  Hooke Decl. ¶¶ 4-10; Gillis Decl. ¶¶ 4-8; IRS Exhibit 101; IRS Exhibit 102; IRS Exhibit 103;

3  IRS Exhibit 104; IRS Exhibit 105; IRS Exhibit 106; IRS Exhibit 107.

4       **Improper opinion [FRE 701, 702, and 703]**.  Public.Resource objects to the following

5  as improper opinion testimony:  Leach Decl. ¶¶ 7-8; Ross Decl. ¶¶ 5, 8; Rosenmerkel Decl. ¶¶ 9-

6  15; Hooke Decl. ¶¶ 6, 9; Gillis Decl. ¶¶ 5-8.

7       **Lack of personal knowledge/lack of foundation/speculative [FRE 602, 702, and 703]**.

8  Public.Resource objects to the following as lacking a basis in personal knowledge and/or founda-

9  tion and/or being improperly speculative:  Leach Decl. ¶¶ 7-8; Ross Decl. ¶ 5, 8-9; Rosenmerkel

10  Decl. ¶¶ 4-6, 9-15; Hooke Decl. ¶¶ 6, 9; Gillis Decl. ¶¶ 5-8.

11  **5.    CONCLUSION.**

12       For all these reasons, Public.Resource respectfully requests that the Court grant this

13  Cross-Motion for Summary Judgment, deny the IRS' Motion for Summary Judgment, and direct

14  the IRS to make available to Public.Resource machine-readable, MeF-formatted Form 990s for

15  the nine tax-exempt organizations that Public.Resource requested through its FOIA request,

16  within 15 days of the Court's decision in this matter.

17  DATED:  This 29th day of September, 2014     DAVIS  WRIGHT  TREMAINE  LLP

18

19

                 By:         */s/ Thomas R. Burke*

20                     THOMAS R. BURKE
                     Attorneys for Plaintiff Public.Resource.Org

21

22

23

24

25

26

27

28