TAMARA W. ASHFORD
ACTING ASSISTANT ATTORNEY GENERAL

YONATAN GELBLUM (Cal. State Bar. No. 254297)
CHRISTOPHER W. SANDERS
U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
P.O. Box 227
Washington, DC 20044
(202) 305-3136 (phone)
(202) 514-6866 (facsimile)
yonatan.gelblum@usdoj.gov

*Counsel for Defendant Internal Revenue Service*

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| PUBLIC.RESOURCE.ORG, | ) | |
| | ) | Case No. 3:13-cv-02789-WHO |
| Plaintiff, | ) | |
| | ) | **REPLY TO OPPOSITION TO** |
| v. | ) | **DEFENDANT'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT AND** |
| UNITED STATES | ) | **OPPOSITION TO CROSS-MOTION** |
| INTERNAL REVENUE SERVICE, | ) | **FOR SUMMARY JUDGMENT** |
| | ) | |
| Defendant. | ) | Date: January 7, 2015 |
| | ) | Time: 2:00 p.m. |
| _____ | ) | Place: Courtroom 2, 17th Floor |

**Statement of the Issues**

1. Did the Internal Revenue Service correctly determine that the requested records were not readily reproducible in the requested format?

2. Did Internal Revenue Service correctly determine that the requested records could not be made readily reproducible in the requested format with reasonable efforts?

## Table of Contents

I.     OVERVIEW ........................................................................................................... 1

II.    ARGUMENT ......................................................................................................... 4

   A.    The Burden of Redaction Is a Highly Relevant Consideration.................................. 4

      1.    Burdens Are Relevant in FOIA Jurisprudence and to E-FOIA in Particular.............. 5

      2.    The Burden of Redacting Documents in a Preexisting Format Is Relevant ................. 8

      3.    FOIA's Limited Fee Provisions Do Not Make Burden Irrelevant................................ 9

   B.    The Service Was Not Required To Make The Forms 990 Readily Reproducible in
   MeF Format in Anticipation of Plaintiff's Request ................................................... 11

   C.    The Record Here Demonstrates, As a Matter of Law, that the Records Need Not Be
   Produced in MeF Format .......................................................................................... 14

      1.    Plaintiff's Declarations Do Not Demonstrate that the Records Are Readily
      Reproducible ........................................................................................................ 16

      2.    The Service's Declarations Establish a Reasonable Basis for Its Reproducibility
      Determination ...................................................................................................... 19

      3.    The Service's Declarations Are Entitled to Deference ............................................. 20

   D.    Plaintiff's Requested Compliance Period Is Improperly Short.................................. 22

   E.    Evidentiary Objections.......................................................................................... 23

III.   CONCLUSION....................................................................................................... 24

## Table of Authorities

**Statutes**

Freedom of Information Act ["FOIA"], 5 U.S.C. § 552...................................................... passim

5 U.S.C. § 552(a)(2)......................................................................................................... 12

5 U.S.C. § 552(a)(3)......................................................................................................... 12

5 U.S.C. § 552(a)(3)(A).................................................................................................... 12

5 U.S.C. § 552(a)(3)(B).................................................................................................... passim

5 U.S.C. § 552(a)(4)(B).................................................................................................... 20

5 U.S.C. § 552(b) .............................................................................................................. 8

26 U.S.C. § 6103 ......................................................................................................... 8, 15

26 U.S.C. § 6104(b) ........................................................................................................... 8

31 U.S.C. § 3302(b) ........................................................................................................ 10

**Legislative Materials**

Electronic Freedom of Information Act (E-FOIA) Amendments of 1996, (P.L. 104-231)... passim

H.R. Rep. 104-795 (1996).............................................................................................. passim

S. Rep. 104-272 (1996).................................................................................................. passim

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to
Plaintiff's Cross-Motion for Summary Judgment
Case No.3:13-cv-02789-WHO                    ii

**Rules**

F.R.E. 401 ................................................................................................................... 23
F.R.E. 402 ................................................................................................................... 23
F.R.E. 403 ................................................................................................................... 23
F.R.E. 602 ................................................................................................................... 23
F.R.E. 701 ................................................................................................................... 23
F.R.E. 702 ................................................................................................... 19, 20, 23
F.R.E. 703 ............................................................................................................ 20, 23
F.R.E. 802 ................................................................................................................... 23
F.R.E. 1101(e) ............................................................................................................ 20
Fed. R. App. P. 4(a)(1)(B) ........................................................................................ 22
N.D. Cal. L.R. 7.5 ............................................................................................... 23, 24

**Cases**

American Fed'n of Gov't Employees, Local 2782 v. U.S. Dep't of Commerce, 907 F.2d 203
    (D.C. Cir. 1990) ................................................................................................ 9, 10
Bd. of County Comm'rs v. United States EEOC, 405 F.3d 840 (9th Cir. 2005) ......................... 12
Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311 (9th Cir. 1995) ................... 17, 19
Dura Automotive Sys. of Ind., Inc. v. CTS Corp., 285 F.3d 609 (7th Cir. 2002) ....................... 20
Kissinger v. Reporters Comm. for Freedom of Press, 445 U.S. 136 (1980) ............................... 12
Marks v. United States (Dep't of Justice), 578 F.2d 261 (9th Cir. 1978) ........................................ 5
Monsanto Co. v. David, 516 F.3d 1009 (Fed. Cir. 2008) ...................................................... 20, 21
Nation Mag. v. U.S. Customs Serv., 71 F.3d 885 (D.C. Cir. 1995) ................................................ 6
People for the Am. Way Found. v. U.S. Dep't of Education, 518 F. Supp. 2d 174 (D.D.C. 2007)
    .................................................................................................................................. 22
Sample v. U.S. Bureau of Prisons, 466 F.3d 1086 (D.C. Cir. 2006) ............................................... 7
Scudder v. CIA, No. 12-807, 2014 U.S. Dist. LEXIS 31824 (D.D.C. March 12, 2014) ............. 7
TPS, Inc. v. United States DOD, 330 F.3d 1191 (9th Cir. 2008) .......................................... 6, 7, 8
Trentadue v. FBI, 572 F.3d 794 (10th Cir. 2009) ......................................................................... 5
U.S. DOJ v. Reporters Comm. For Freedom of Press, 489 U.S. 749 (1989) .............................. 13
U.S. ex rel. Eisenstein v. City of New York, 540 F.3d 94 (2d Cir. 2008), ................................... 22
United States DOJ v. Tax Analysts, 492 U.S. 136 (1989) ........................................................... 12
United States v. Mendoza, 464 U.S. 154 (1984) ......................................................................... 22
United States v. Scholl, 166 F.3d 964 (9th Cir. 1999) ................................................................ 17
Zemansky v. U.S. EPA, 767 F.2d 569 (9th Cir. 1985) .................................................................. 5

**Other Authorities**

28 C.F.R. § 0.20(b) ..................................................................................................... 22
In re Office of Fed. Housing Enterprise Oversight, No. B-302825, 2004 U.S. Comp. Gen. LEXIS
    267 at *5-*6 (Dec. 22, 2004) ......................................................................................... 10
U.S. Const. Art. I, § 9, Cl. 7 (Appropriations Clause) ................................................................. 10

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to
Plaintiff's Cross-Motion for Summary Judgment
Case No.3:13-cv-02789-WHO                    iii

I.      OVERVIEW

Plaintiff submitted a request under the Freedom of Information Act, 5 U.S.C. § 552

("FOIA") to Defendant, the Internal Revenue Service [the "Service"] for the Form 990

information returns filed by nine tax-exempt organizations. (Compl. ¶ 2.)  The request sought

disclosure of the records in the Modernized E-File ("MeF") format in which they were

electronically filed. *Id.*  The Court denied the Service's threshold motion to dismiss, holding that

FOIA applied to the records at issue.

Consequently, the current motion addresses whether the criteria established by the 1996

E-FOIA amendments, P.L. 104-231, require disclosure of the records in MeF format.[1]  These

amendments require production in a requested format, but only if the requested records are

"readily reproducible" in that format. 5 U.S.C. § 552(a)(3)(B).  The amendments also require

agencies to make a "reasonable effort" to maintain records in reproducible forms or formats for

purposes of section 552(a)(3)(B). *Id.* In its motion, the Service argued that it reasonably

concluded that the significant additional demand on limited agency resources associated with

redacting the returns in MeF format, as opposed to producing them in image format under its

existing process for redaction, means that these records are not "readily reproducible" in MeF

format.  It further argued that it was not under a prior obligation to make the returns reproducible

in this format, since it had not previously received a similar FOIA request.  Alternatively, the

Service argued that it reasonably concluded that the severe budgetary and resource constraints

that it faces preclude it from making the requested returns – with required redactions – available

_____

[1] Contrary to Plaintiff's assertion, the Service has not abandoned its alternative contention that
FOIA does not apply to the records at issue here, but that issue has already been adjudicated in
this action, and therefore the Service's pending motion has focused on its alternative defense.

1   in the requested format with "reasonable efforts."  Accordingly, it was not required to produce

2   the returns in the MeF format.

3           In its opposition and cross-motion, Plaintiff does not contest that the Service is under

4   exceptional financial constraints as the only agency still operating under a Sequester-era budget

5   that has adversely impacted on its core mission of tax administration.  Nor does it contest that a

6   hiring freeze and cuts to its IT budget have caused it to cease work on any new IT project not

7   considered essential to its tax administration mission.  It also does not contest that the current

8   process for redacting Forms 990 in image format has an average processing cost of less $2.00 per

9   return, and was developed years before the Service received Plaintiff's request, which was the

10  first FOIA request for MeF-format returns.

11          But Plaintiff contends that these burdens are irrelevant, because FOIA in general does not

12  consider the burdens on agency resources, because the Service has the requested records (albeit

13  in unredacted form) available in MeF format, and because it contends that FOIA's fee provisions

14  allow the Service to bill Plaintiff for the costs of responding.  In addition, Plaintiff faults the

15  Service for failing to invest agency resources to develop a system to allow it to more easily

16  redact the records at issue in the requested format years before it ever received the request at

17  issue or any similar FOIA request.  Lastly, Plaintiff attacks the Service's affidavits concerning

18  burden.  It contends that these affidavits overestimate the burdens on the agency, and introduces

19  affidavits that assert it is a simple task to redact a discrete field from the MeF file that contains

20  information protected from disclosure.  Plaintiff also questions the admissibility of affidavits by

21  agency officials with a background in budget-related cost estimates rather than in computer

22  programming.  It also questions the Service's assertion that the FOIA provision requiring courts

23  to give "substantial weight" to an agency's affidavits concerning reproducibility entitles these

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to
Plaintiff's Cross-Motion for Summary Judgment
Case No.3:13-cv-02789-WHO          2

1   affidavits to a degree of deference.  Plaintiff claims it is entitled to it summary judgment and that

2   the Court should require production of the records within 15 days of a ruling.

3          These contentions do not demonstrate that the Service is not entitled to summary

4   judgment.  Plaintiff ignores caselaw indicating that the burden of responding can be relevant

5   under FOIA in general, and under E-FOIA in particular. Plaintiff also ignores language in the

6   authorities it cites indicating that where unique circumstances create exceptional burdens relating

7   to disclosure – as is the case here – an agency need not honor format requests even if it maintains

8   the files in the requested format in unredacted form for internal use.  Plaintiff's contention that

9   fees would cover the costs involved ignores the jurisprudence on agencies' burdens under FOIA,

10  the limited scope of FOIA's fee provisions, and the legal inability to retain or spend the fees

11  collected to replace agency resources diverted in order to fulfill Plaintiff's request.

12         Plaintiff's contention that the Service failed to make "reasonable efforts" to ensure

13  reproducibility by not anticipating Plaintiff's request many years earlier when setting up the

14  current process defies simple logic, the statute's text and legislative history, and the general

15  principle that FOIA imposes duties on agencies *once they receive a request*.  Plaintiff's

16  arguments about the utility of the information to studying the non-profit sector, and its

17  contention that setting up such a process would have improved accuracy in making redactions,

18  are not relevant considerations to the *burden* on the agency, which is the relevant question here.

19         Lastly, Plaintiff's affidavits and its attacks on the Service's affidavits fail to show that

20  Plaintiff is entitled to judgment as a matter of law, or that the Service has failed to demonstrate

21  that as a matter of law, the records at issue are not readily reproducible and cannot be made so

22  with reasonable efforts.  The thrust of Plaintiff's affidavits and much of its attacks rests on an

23  incorrect assumption that the only redaction ever involved would be the removal of a discrete

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to
Plaintiff's Cross-Motion for Summary Judgment
Case No.3:13-cv-02789-WHO          3

field from the XML file at issue, when in practice information often needs to be redacted

elsewhere, in myriad situations that do not always involve a discrete field.  Further, Plaintiff's

contention that the agency's affidavits must be excluded ignores E-FOIA's mandate that the

Court give these affidavits "substantial weight," multiple grounds for finding their opinions

reliable, and Plaintiff's own failure to challenge certain portions of the affidavits altogether.  The

agency's affidavits reasonably explain the burden on the agency, and thus demonstrate that as a

matter of law, it reasonably concluded that records at issue are not readily reproducible in MeF

format and cannot be made so with reasonable effort.

Should the Court nonetheless grant relief here, the Service contends that the 15-day

response period demanded by Plaintiff improperly deprives the Solicitor General of the

opportunity to carefully consider if it is in the public interest to appeal in this case raising matters

of first impression by mooting any appeal.  Thus, should the Court decline to rule for the Service,

it should allow the agency at least the 60 days that the law provides for determining whether or

not to appeal.

II.   ARGUMENT

A.   The Burden of Redaction Is a Highly Relevant Consideration

Plaintiff boldly asserts that cost "is not a permissible basis for withholding responsive

records" under FOIA.[2] (Br. at 10.)  The assertion that costs and other burdens on agencies are

*never* relevant in the FOIA context has been soundly rejected precisely in the context of

provisions that the qualify an agency's duties, including the E-FOIA provisions at issue here,

---

[2] While Plaintiff only refers to our assertions concerning cost, the dollar figures Defendant cited merely quantified the amount of agency resources that would be diverted to fulfill Plaintiff's request and thus are relevant to burden more generally.

which apply only to records that are "*readily* reproducible" or can be made so with "*reasonable*

effort." 5 U.S.C. § 552(a)(3)(B) (emphases added).  And contrary to Plaintiff's contention, the

relevant authorities indicate that the fact that the agency has copies of the records in the

requested format does not end the inquiry where, as here, redaction in that format would impose

drastically higher demands on agency resources.  Lastly, the limited fee provisions of FOIA do

not recover most costs, do not serve as a statutory authority for replacing the resources expended

by the agency, and have never been held to render burden irrelevant; further, Plaintiff's assertion

on fees is remarkable given that its request asserted an entitlement to a fee waiver.

> 1.    *Burdens Are Relevant in FOIA Jurisprudence and to E-FOIA in Particular*

Contrary to Plaintiff's bold assertion that the Service must provide records in MeF format

regardless of the resulting expenditure of agency resources, costs and other burdens are relevant

in the contexts of FOIA provisions, such as E-FOIA, which impose *qualified* duties on agencies.

Thus, although FOIA requires agencies to search for responsive records, courts have for decades

interpreted the statute's requirement that requests "reasonably describe" records to place a limit

on the burden expected of an agency search. *See, e.g., Marks v. United States (Dep't of Justice)*,

578 F.2d 261, 263 (9th Cir. 1978) (FOIA does not require "all-encompassing search of the

records of every field office" since request must allow for records to be located "with a

reasonable amount of *effort*") (citing H.Rep. No. 93.876 (1974)) (emphasis added).  *See, also*

*Trentadue v. FBI*, 572 F.3d 794, 798 (10th Cir. 2009) ("Although FOIA might be read to demand

that an agency provide every nonexempt requested document regardless of the cost of locating it

we doubt that Congress would have chosen to impose 'unreasonable' burdens on agencies in that

regard.") (citing *Zemansky v. U.S. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) and other cases).    It

is apparent that the D.C. Circuit cases quoted by Plaintiff to the contrary are distinguishable,

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to
Plaintiff's Cross-Motion for Summary Judgment
Case No.3:13-cv-02789-WHO          5

1   because in those contexts where FOIA imposed qualified duties, that Circuit *has* considered the

2   burden on the agency to be highly relevant. *See., e.g.*, *Nation Mag. v. U.S. Customs Serv.*, 71

3   F.3d 885, 891-92 (D.C. Cir. 1995) ("To be sure,  there are some limits on what an agency must

4   do to satisfy its FOIA obligations. . . . Here, appellants have asked Customs to search through 23

5   years of unindexed files . . . and we concur with the district court's determination that this search

6   would impose an unreasonable burden on the agency.") (citations omitted).

7          In the context of E-FOIA in particular, not only the statute's language, but the cases

8   interpreting it as well as the legislative history clearly consider the burdens associated with

9   format-specific requests to be highly relevant.  The Ninth Circuit has already held that E-FOIA

10  was not intended to require agencies to respond to "unusual requests" that would "impose

11  unreasonable or additional burdens on an agency's data system, personnel, or resources." *TPS,*

12  *Inc. v. United States DOD*, 330 F.3d 1191, 1195 (9th Cir. 2008).  E-FOIA's text makes this clear,

13  by only requiring disclosure of records in formats that are "*readily* reproducible" by the agency,

14  and requiring agencies to make only "*reasonable* efforts" to make records reproducible. 5 U.S.C.

15  § 552(a)(3)(B) (emphases added).  As recently held by another court, requiring agencies to honor

16  format requests without regard to the resulting demands on agency resources, as Plaintiff urges,

17  would fail to give effect to this language. *Scudder v. CIA*, No. 12-807, 2014 U.S. Dist. LEXIS

18  31824 at *37-*38 (D.D.C. March 12, 2014).  *Scudder* further contrasted this language with other

19  parts of FOIA that refer to mere technical feasibility, which would presumably be the only

20  determinant of reproducibility if costs and other burdens were disregarded, *id*, as Plaintiff urges.

21  (*See* Pl's Br. at 10 ("[W]here there is no dispute as to the agency's *ability* to reproduce records

22  electronically . . . the agency must . . .  produce the records in electronic format when that format

23

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to
Plaintiff's Cross-Motion for Summary Judgment
Case No.3:13-cv-02789-WHO          6

1  is requested.") (emphasis in the original) (citation omitted).)  *Scudder* concluded that the

2  language requires analyzing the burden of compliance. *Id.* at *52.

3      Plaintiff's contentions also ignore repeated references in E-FOIA's legislative history

4  showing that Congress was cognizant of, and intended to account for, the burdens of honoring

5  format requests. H.R. Rep. 104-795 at 22 (1996) ("reasonable effort" is one that "would not

6  significantly interfere with the operations of the agency."), *id.* (requiring deference to agency's

7  affidavits due to agencies' familiarity "with the availability of their own technical resources and

8  noting that "reasonable efforts" to search for records in electronic format "should not result in

9  any greater expenditure of agency resources than would have occurred with a conventional

10  paper-based search."); S. Rep. 104-272 at 14 (1996) ("The bill's requirement . . . is subject to a

11  'reasonable efforts'' *qualification"*) (emphasis added), *id.* at 15 (E-FOIA does not require

12  "releasing the original form of partially exempt records in circumstances where agencies . . .

13  cannot *readily* disclose them, as redacted, in a previously existing form.") (emphasis added).

14      Plaintiff's reliance on language in *Sample v. U.S. Bureau of Prisons*, 466 F.3d 1086, 1088

15  (D.C. Cir. 2006), referencing an agency's technical ability to reproduce records is misplaced.  As

16  noted by the *Scudder* court, which must follow D.C. Circuit precedent if applicable, *Sample*

17  focused on whether the relevant consideration under E-FOIA is the *agency's* ability to reproduce

18  or the *requester's* ability to receive the records, not whether mere technical feasibility, regardless

19  of burdens on the agency, defines "readily reproducible." 2014 U.S. Dist. LEXIS 31824 at *36-

20  *37.  *Sample* thus did not address the relevance of burdens in determining whether an agency

21  must honor format requests. *Id.*  Plaintiff's insistence otherwise thus lacks support in the text,

22  legislative history, and the relevant case law.

23

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to
Plaintiff's Cross-Motion for Summary Judgment
Case No.3:13-cv-02789-WHO          7

2.   *The Burden of Redacting Documents in a Preexisting Format Is Relevant*

Plaintiff also contends that since the Service receives the requested records in MeF

format, they are by definition "readily reproducible," regardless of any higher burdens associated

with redacting them in MeF format to exclude protected information.  In support, Plaintiff cites

cases holding that *generally*, "[w]hen an agency already creates or converts documents in a

certain format . .. requiring that it provide documents in that format to others does not impose an

unnecessarily harsh burden," TSP, 330 F.3d at 1195.  But it disregards qualifying language to the

effect that this principle only applies "*absent specific compelling evidence as to significant*

*interference or burden*." *Id.*  Plaintiff does not explain why significantly higher costs of redaction

in one format do not implicate this exception to the general rule.  In fact, the legislative history

demonstrates that E-FOIA does not require release of "of partially exempt records in

circumstances where agencies need to handle the records in a certain form for purposes of

redaction and, therefore, cannot readily disclose them, *as redacted, in a previously existing*

*form*." S. Rep. 104-272 at 15 (emphasis added).  *Cf.* 5 U.S.C. § 552(b) (release of nonexempt

portions of records only required if such portions are "reasonably segregable.").

The Service contends that such circumstances are present here due to the significant cost

difference of redacting records in MeF format as opposed to image format, for which there is a

regular, preexisting process.  Many FOIA requests first prompt an agency to search for

responsive records and then make the necessary redactions.  But Plaintiff's request is different

because it seeks records that the agency has already processed for disclosure to fulfill its

statutory mandate under 26 U.S.C. § 6104(b), with redactions as required under 26 U.S.C. §

6103.  Thus, rather than having to do redactions ad-hoc on the records released in image format,

it already has a process in place to process and redact these records at an average cost of only

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to
Plaintiff's Cross-Motion for Summary Judgment
Case No.3:13-cv-02789-WHO          8

$1.63 per return.  So while the typical FOIA request might require ad-hoc redaction for either format, with setup and operational costs comparable across formats, here, the estimated average cost of processing these returns in MeF format is 422 times as much as the cost of processing them in image format.  And as noted in the Service's affidavits, the non-recurring nature of this process also presents an inherently greater risk of erroneous disclosure.  These circumstances were not present in *TPS*, where the agency did not even contend that the records at issue were subject to redaction.  In contrast, redaction in MeF format is a major burden here due to the ad-hoc nature of the process compared to redaction in image format, and thus there is "compelling evidence" that the records are not "readily reproducible" in this preexisting format.

### 3.   *FOIA's Limited Fee Provisions Do Not Make Burden Irrelevant*

Plaintiff, whose request listed three alternate grounds for why the Service may *not* charge it fees for redaction, (Compl. Ex. F at 2-4,) now argues that the burdens on the Service is irrelevant because FOIA's fee provisions allow it to "send Public.Resource a bill" for the $6,200 in diverted agency resources needed to respond to the request.  Preliminarily, this argument overlooks cases interpreting comparable provisions of FOIA to which burden is relevant, where the ability to levy fees has not affected the burden analysis. *See, e.g., American Fed'n of Gov't Employees, Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990) (holding that an "agency need not honor a request that requires 'an unreasonably burdensome search'" *and* that the appellant waived its entitlement to a fee waiver).[3]

Further, this argument rests on multiple flawed assumptions, some of them highlighted by

---

[3] As we noted in part II.A.1, *supra*, the language Plaintiff quotes from earlier D.C. Circuit cases did not address contentions related to provisions of FOIA held to implicate a burden analysis.

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment
Case No.3:13-cv-02789-WHO          9

Plaintiff's own request, about what fees can be levied and how the monies collected can be spent. In fact, the Service cannot use fees to replace the resources expended in honoring Plaintiff's format request, and will thus have to divert limited resources from its regular activities to do so.

First, the fee provisions are very limited, and in fact, fees collected only equal 1% of agencies' FOIA processing costs.[4]  As shown by Plaintiff's request, agencies are only authorized to levy fees to certain requesters in certain circumstances.  Fees associated with redaction are "review fees," 5 U.S.C. § 552(a)(4)(A)(iv), which may be levied only if records are sought for "commercial use," *id.* § 552(a)(4)(A)(ii)(I).  Even then, agencies may only charge "direct costs" of review that exclude "resolving issues of law or policy," *id.* § 552(a)(4)(A)(iv); it is thus unclear if many costs here, relating to training and development of protocols, can be assessed.

In addition, the fees generally do *not* go back to the agency for use in replacing the resources it expends in responding to requests.  Since FOIA has no provision allowing agencies to retain fees, they must be paid into the Treasury's general fund. 31 U.S.C. § 3302(b). *See also In re Office of Fed. Housing Enterprise Oversight*, No. B-302825, 2004 U.S. Comp. Gen. LEXIS 267 at *5-*6 (Dec. 22, 2004).  Unless Congress were to authorize an appropriation back to the agency, these funds may not be spent to replace the resources it expends in processing FOIA requests. *Id. Cf.* U.S. Const. Art. I, § 9, Cl. 7 (Appropriations Clause).[5]  And Plaintiff has not challenged the evidence showing that in recent years Congress has repeatedly *decreased* the

---

[4] U.S. Department of Justice, Office of Information Policy, *Summary of Annual FOIA Reports for Fiscal Year 2013* at 21 (2014), *available at* www.justice.gov/sites/default/files/oip/legacy/2014/07/23/fy2013-annual-report-summary.pdf.

[5] In fact, the legislative history shows that in enacting E-FOIA, Congress not only sought to limit agencies' obligation to honor burdensome format requests, but specifically "recognized that FOIA fees do not cover the cost of compliance." S. Rep. 104-272 at 16.

Service's budget, which has impacted IT and other resources available for its core mission of tax administration.  Since the fees charged would not provide for additional resources to respond to Plaintiff's request, the Service's response will directly decrease the severely limited resources available for this mission.  As explained above, this consideration is highly relevant to whether the requested records are "readily reproducible" or can be made so with "reasonable efforts."

B.   The Service Was Not Required To Make The Forms 990 Readily Reproducible in MeF Format in Anticipation of Plaintiff's Request

Plaintiff also claims that the Service improperly created the cost deferential by not adopting a process, at the time it first accepted e-filed Forms 990, for redacting them in MeF format, contending that the Service failed to make "reasonable efforts to maintain" these records in a form that is "readily reproducible."  It does not dispute the Service's evidence showing that it  adopted the current process nearly a decade before e-filing started and that even now, more than half of 990's continue to be filed on paper, so that using an image-based procedure to process both types of returns avoids unnecessary duplication.  Nor does it dispute that its request was the first FOIA request received by the Service for Form 990 returns in MeF format, that the Service has subsequently received only two other such requests (one from Plaintiff's president), and that in contrast, the Service receives thousands of requests *each year* for Form 990 returns in image format.  Plaintiff nonetheless faults the Service's "Own Customs and Practices" for creating the significant cost differentials, claiming that years before it ever received a FOIA request for Forms 990 in MeF format, the Service should have spent untold sums on the

1   possibility that someday it should have to respond to such a request.[6]  It also contends that this

2   information would increase public understanding, primarily of the non-profit sector, and that

3   investing in an automated process to redact Forms 990 in MeF format reduces the risk of error.

4            These contentions do not establish that the Service improperly failed to set up a process

5   for redacting returns in MeF format when it began receiving them, years before it ever received

6   any FOIA request for these records.  As we noted in our opening brief, E-FOIA requires agencies

7   to make "reasonable efforts" to maintain records in a format that is "reproducible *for purposes of*

8   *this section.*" 5 U.S.C. § 552(a)(3)(B).  And the section requires agencies to provide records in

9   any "readily reproducible" format when "making any record available to a person under [5

10  U.S.C. § 552(a)(3)]," which is in turn implicated "upon any request for records" to the agency.

11  *Id.* § 552(a)(3)(A).  The Service thus contended that any duty to make "reasonable efforts" to

12  make records "readily reproducible" for purposes of section 552(a)(3) cannot logically attach

13  prior to the receipt of a request for such records.  This interpretation is also consistent with

14  general FOIA jurisprudence, which only attaches duties on agencies under 5 U.S.C. § 552(a)(3)

15  upon receipt of a request. *See, e.g.*, *United States DOJ v. Tax Analysts,* 492 U.S. 136, 145

16  (1989); *Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 155 n. 9 (1980).[7]  It

17  is presumed that Congress does not intend to depart from such prior interpretations of a statute

18  when making amendments. *Cf. Bd. of County Comm'rs v. United States EEOC*, 405 F.3d 840,

19

20  [6] As described in Part II.C, *infra*, we contend the undisputed facts show that an investment of
    over $ 2 million would be required to implement such a process.

21  [7] FOIA does impose some affirmative disclosure requirements in subsections (a)(1) and (a)(2),
    including a requirement added by E-FOIA to make some records available online. 5 U.S.C.

22  § 552(a)(2).  But the provisions at issue here are in subsection (a)(3), which applies once an
    agency receives a request for records.

23

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to
Plaintiff's Cross-Motion for Summary Judgment
Case No.3:13-cv-02789-WHO          12

1    845 (9th Cir. 2005) ("We assume that Congress knows the law and legislates in light of federal

2    court precedent") (citations omitted).  And the legislative history indicates that consideration of

3    existing demand, rather than potential future requests, is the relevant standard. *See, e.g.* S. Rep.

4    104-272 at 15 (in addressing requests for records in new formats "agencies should consider . . .

5    identified public demands for the information.").

6           Plaintiff nonetheless faults the Service for not clairvoyantly setting up a process to redact

7    files in MeF format years before it ever received any request for disclosure in that format.  For

8    support, it cites to *Scudder*, which stated that E-FOIA "imposes an over-arching obligation on

9    federal agencies to be proactive in satisfying format requests." 2014 U.S. Dist. LEXIS 31824 at *

10   42.  To the extent *Scudder* can be read to require an agency to clairvoyantly invest in processes

11   to make records available in any reproducible format that might be requested at some unknown

12   point in the future, the Service respectfully asserts that its holding is not persuasive and should

13   not be followed by this Court.  As described above, it defies logic – as well the statute's structure

14   and legislative history – to require agencies to continuously invest resources to make records

15   available in any format on the off chance that a request for such records will come in someday,

16   without regard to the agency's actual track record in receiving such requests.  Here, this track

17   record shows a preference by requesters for disclosure in image format.

18          As for the affidavits that Plaintiff cites to argue that MeF format information would be

19   more useful for understanding the nonprofit sector, the requests received by the Service again

20   fail to show that this asserted utility has translated into "identified public demands for the

21   information."  And the utility of the information sought for purposes of studying the *nonprofit*

22   *sector* is an especially questionable basis for interpreting the provisions of FOIA, whose chief

23   purpose is to inform the citizenry of the operations of the *federal government*. *See U.S. DOJ v.*

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to
Plaintiff's Cross-Motion for Summary Judgment
Case No.3:13-cv-02789-WHO          13

1    *Reporters Comm. For Freedom of Press*, 489 U.S. 749, 795 (1989) (holding that interpretations

2    of a FOIA exemption should turn on "the basic purpose of the Freedom of Information Act 'to

3    open agency action to the light of public scrutiny,' rather than on the particular purpose for

4    which the document is being requested.") (citations omitted).

5            Lastly, Plaintiff's contention that the agency might reduce error in redactions if it had

6    adopted an automated process, even if correct,[8] is not a legitimate basis for requiring it to adopt

7    such a process.  The only reason for which E-FOIA requires agencies to adopt new processes is

8    to make records "readily reproducible" in formats requested under FOIA. 5 U.S.C.

9    § 552(a)(3)(B).  Nowhere does E-FOIA state that agencies must adopt such processes that might

10   improve the reliability of redaction.  The cases Plaintiff cites are distinguishable because they

11   addressed assertions by agencies that an alternative process would be more prone to error; in

12   contrast, we have not argued that a reliable regular process for redaction cannot be adopted, only

13   that it would require a significant amount of agency resources to adopt such a reliable process.

14           C.   The Record Here Demonstrates, As a Matter of Law, that the Records Need Not Be
                  Produced in MeF Format

15           Plaintiff attaches several declarations in support of its contention that it would not take

16   significant time to manually make the necessary redactions on the returns at issue in MeF format,

17   or to write a program that could reliably do so.  The declarants, two of whom do not assert

18   general familiarity with the contents of Form 990's that are actually submitted to the Service by

19

20

21   _____

22   [8] As explained in part II.C, *infra*, we contend that the testimony at issue is inadmissible and
     irrelevant because, *inter alia,* it rests on several flawed assumptions.

23

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to
Plaintiff's Cross-Motion for Summary Judgment
Case No.3:13-cv-02789-WHO          14

taxpayers[9] – all proceed from the assumption that any redactable information is contained in one or more discrete "elements" representing Schedule B or other complete schedules.  *See, e.g.,* Malamud Decl. ¶ 28 (estimating time to remove one element representing a schedule);   Bray Decl. ¶ 16 (same); Johnson Decl. ¶ 19 ("This visual comparison quickly yields a list of which *schedules* must be removed.) (emphasis added).

Largely based on this assumption, Plaintiff attacks portions of our own estimates that to set up an ad-hoc process to reliably redact section 6103 and other PII from XML files in order to respond to Plaintiff's request would cost $6,200, and to set up an automated process to retrieve, redact, and save these files would cost approximately $ 2 million plus a share of overhead costs.[10]  Plaintiff also attacks these declarations on the grounds that they were not made by computer specialists, but instead by officials with responsibility for making cost estimates.

Plaintiff also challenges our assertion that E-FOIA's provision according "substantial weight" to the agency's declarations on reproducibility, and its associated legislative history, requires a degree of deference to an agency's reasonable conclusion that records are not readily reproducible or cannot be made so with "reasonable efforts."  It relies on a single line in the legislative history indicating that this provision "does not affect the extent of judicial deference

---

[9] As we explain below, the third declarant, Plaintiff's president, claims familiarity with Forms 990, including the fact – not addressed in his opinion testimony – that redactable information might be mixed with non-redactable information within schedules or attachments.

[10] Contrary to Plaintiff's assertion, we did not assert that the process would cost $19 million, and had specifically broken out the component associated with processing the Forms 990 in machine-readable format at $ 2 million plus a portion of shared overhead costs (Motion at 17) (citing Ross Decl. ¶ 17(a)-(c)).  As clarified in the second declaration of Dwayne Ross, this $ 2 million figure is limited to getting the redacted returns onto a repository that *could* be made available online, but does not include an additional $1.3 million in network and portal design costs necessary to allow the public to access the information online.  (2d Ross Decl. ¶¶ 16-18.)

that a court may or may not extend to an agency on any other matter." H.R. Rep. 104-795 at 22, and contends that the Service improperly asserts that its action is not subject to judicial review.

These contentions fail to demonstrate that the Service is not entitled to summary judgment. Plaintiff's own estimates – and many of its criticisms of the Service's estimates – rest on a flawed assumption that all redactable information is contained in a single, discrete field in the XML file, and are thus neither relevant nor reliable. And they fail to lodge any reasoned attack on a number of the cost components in the estimates altogether, which still result in a substantial expenditure of resources on their own. Plaintiff's attack on the qualifications of the agency officials to testify about resources expended fails to show inadmissibility, both because their opinions are based on accepted methodologies for cost estimation used by the Service and other parts of government outside of litigation, and because Congress already made the reliability determination in enacting the "substantial weight" provision. And contrary to Plaintiff's contention, this provision – while not precluding judicial review – does imply a degree of deference, which is proper where, as here, the record shows that the agency reasonably reached its conclusions.

### 1. *Plaintiff's Declarations Do Not Demonstrate that the Records Are Readily Reproducible*

Plaintiff submits declarations from its president and two others that assert that it would be an easy task to remove the field corresponding to the nondisclosable Schedule B from a Form 990, either by doing so manually in a text editor or by writing a simple program to do so. Two of the declarants do not claim to be familiar with the contents of Forms 990 that are actually filed, and all three declarants state that they based their estimates on samples of MeF returns. But as demonstrated by the declaration and referenced correspondence by Plaintiff's President – the only declarant who claims to have reviewed a large number of Forms 990 that have actually

1   been filed – the assumption of all three declarants that removing a single field is all that it takes

2   bears no relation to the contents of Forms 990 that are actually filed.  Consequently, none of the

3   opinions these declarants render on the efforts required to reliably remove all redactable

4   information are admissible because they do not properly "fit" the data at issue and are thus

5   unreliable. *Cf. United States v. Scholl*, 166 F.3d 964, 970 n. 1 (9th Cir. 1999) (citing *Daubert v.*

6   *Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995)).   Further, the specific

7   estimates given in these declarations only conflict with a small portion of the estimate for

8   processing Plaintiff's request and thus fail to demonstrate that it is unreasonable.

9            While removing the field corresponding to the official Schedule B is one step in the

10   redaction process, other redactable information may be located elsewhere in the file, including

11   within discrete portions of fields representing forms or schedules that would require editing

12   within the field, rather than the simple removal of a field. (2d. Rosenmerkel Decl. ¶¶ 13, 16, 27;).

13   Further, some redactions are conditioned on certain boxes being checked or other criteria being

14   met. (2d. Rosenmerkel Decl. ¶ 29; *see also, e.g.,* Ex. 103 at 22 § 3.20.12.2.4(3) (contributor

15   information on certain forms redacted only if particular box is checked).  Additionally, some

16   filers include nondisclosable information, like donor information that should be included in the

17   Schedule B field, in attachments or on other schedules that would not be removed by the deletion

18   of the Schedule B field.  (2d. Rosenmerkel Decl. ¶ 24. *See also, e.g.* Ex. 103 at 20 (contributor

19   information on both the Schedule B form and attachments must be redacted)  The necessarily

20   detailed criteria for redaction – which involves more than mere removal of the official Schedule

21   B, as asserted in Plaintiff's affidavits – are described at length in I.R.M. 3.20.12, previously filed

22   as Exhibit 103.  Additional redactable information specifically applicable to XML files was also

23   identified in the notes on Ex. 107. (*See also* 2d. Rosenmerkel Decl. ¶ 20-22.)  Plaintiff's

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to
Plaintiff's Cross-Motion for Summary Judgment
Case No.3:13-cv-02789-WHO            17

estimates of the burden, which assume that mere deletion of the Schedule B field is sufficient, fail to account for these detailed and variable requirements.[11]  The large variety of circumstances is critical because it means that even an IT expert – which is the employee whom the Plaintiff's declarant assume would be making the redactions  – would need extensive training or research to know all the circumstances that must be accounted for, which would actually take more time than training a non-IT specialist familiar with the criteria for redaction in making the necessary changes to the XML file.  (2d. Rosenmerkel Decl. ¶ 12-16.)  Thus, the contentions by Plaintiff's experts that a computer programmer who has identified an element that needs redaction can remove that element in about a minute are irrelevant because they ignore the time it would take the programmer to learn what to look for in the file and actually identify all items that must be remove.

Further, Plaintiff's declarations fail to identify any fault with most of the $6,200 estimate for processing Plaintiff's request.  They critique the estimates for time spent editing and saving the files, but apart from a conclusory assertion that the total estimates are not "credible," (Johnson Decl. ¶ 20,) do not address other expenses such as the development of protocols for reliable redaction and multiple layers of review.  The specific estimates they critique only

---

[11] In fact, Plaintiff is clearly aware of this shortcoming in its own declarations because its President's declaration and the correspondence it references discuss redactable information that is not contained in just the discrete field corresponding to the official Schedule B.  The declaration references a 2014 letter to which he had attached a Form 990 that allegedly was released with personally identifiable information, not on a Schedule B attachment, but in portions of the Form 990 itself and an attached page. (Malamud Decl. ¶ 19; Carl Malamud, Letter to the Commissioner Dated April 22, 2014, at 5-6, *available at* https://bulk.resource.org/irs.gov/eo/doc/irs.gov.20140422.pdf).  The allegedly "simple" removal of the Schedule B field on which Plaintiff's declarations base their estimates would not address this information. (*See* Ex. 104 at 26 ("Redact all SSNs" on "[a]ll disclosable forms and attachments.")).

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment
Case No.3:13-cv-02789-WHO          18

account for $389.48 of the $6,200 total. (Ex. 107 at 2-3.)  Even without this amount, the

remaining costs in excess of $5,800 are still greater than the costs of manual redaction by a factor

of several hundred and show that the requested records are not readily reproducible in Plaintiff's

requested format.

      2.    *The Service's Declarations Establish a Reasonable Basis for Its Reproducibility Determination*

Plaintiff contends that the Service's declarations should be excluded as unreliable, citing,

*inter alia*, F.R.E. 702.  It contends that it is inappropriate for agency officials who are not

themselves computer specialists, but instead have a background in business administration or

project management, to estimate the costs of a process that involves computer work.  As a

preliminary matter, the testimony is reliable under the Federal Rules of Evidence for two

independent grounds.  First, it uses estimation methodologies that are routinely used by the

Service and other governmental and private bodies to estimate the costs of processes, which were

not developed for this litigation.  (Rosenmerkel Decl. ¶ 9; 2d Rosenmerkel Decl. ¶ 3; Ross Decl.

¶¶ 2-3; 2d. Ross Decl. ¶¶ 3-4, 21.)  In fact, the estimate for establishing an automated process for

regular redaction in MeF format was carried out for the Administration's budget proposal to

Congress. (Ross Decl. § 4.)  The use of methodologies not developed for the litigation itself

provides independent indicia of reliability.  *See Daubert*, 43 F.3d 1311 at 1317-18 (noting that

"experts whose findings flow from existing research are less likely to have been biased" and that

research conducted "in the usual course of business . . . must normally satisfy a variety of

standards to attract funding and institutional support.").  Second, the declarants not only followed

the same generally accepted procedures for cost estimation used in the government, but in

accordance with these procedures, also properly consulted with subject matter experts in areas

like information technology to ensure that they properly accounted for the technological factors

affecting the final estimate. (2d Rosenmerkel Decl. ¶ 34-35; 2d. Ross Decl. ¶ 12, Ex. 105 at 7.)

This consultation is a permissible basis for forming an opinion. F.R.E. 703; *Dura Automotive*

*Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 609-613 (7th Cir. 2002) ("[I]t is common in

technical fields for an expert to base an opinion in part on what a different expert believes on the

basis of expert knowledge not possessed by the first expert."); *Monsanto Co. v. David*, 516 F.3d

1009, 1015 (Fed. Cir. 2008) ("Numerous courts have held that reliance on scientific test results

prepared by others may constitute the type of evidence that is reasonably relied upon by experts

for purposes of Rule of Evidence 703.").

In addition, it is not clear that Rule 702 should apply to exclude agency affidavits on

"reasonable burden," because in enacting E-FOIA, Congress arguably made the determination

itself that agency officials are competent to testify as to the potential burdens on the agency.

Specifically, it required courts to "accord substantial weight to an affidavit of an agency

concerning the agency's determination as to . . . .reproducibility under paragraph (3)(B)." 5

U.S.C. § 552(a)(4)(B).  Congress explained that such "deference is warranted because agencies

are the most familiar with the availability of their own technical resources to process, redact, and

reproduce records." H. Rep. 104-795 at 22.  Excluding these declarations as unreliable would

improperly conflict with this mandate and its underlying rationale. *Cf.* F.R.E. 1101(e) ("A federal

statute . . . may provide for admitting or excluding evidence independently from these rules.).

### 3.    The Service's Declarations Are Entitled to Deference

In our opening brief, we explained that the language referring to "substantial weight" to

be given to agency affidavits must necessarily refer to a degree of deference and not mere

evidentiary weight, since FOIA suits are ordinarily resolved on summary judgment, where the

Court does not weigh the evidence, and affidavits are similarly used on motion rather than at

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to
Plaintiff's Cross-Motion for Summary Judgment
Case No.3:13-cv-02789-WHO          20

1    trial.  We noted that this view is consistent with the legislative history, which refers to the

2    standard of judicial review as one of "deference," H. Rep. 104-795 at 22.  *See also* S. Rep. 104-

3    272 ("As a general rule, the decision whether to disclose requested records or information in a

4    new requested form, whether electronic or other form, is a matter of administrative discretion.  In

5    exercising that discretion, agencies should consider administrative efficiency and the existence of

6    identified public demands for the information.").  We therefore contended that the Court should

7    uphold the agency's determination that the requested records were not "readily reproducible" or

8    could not be made so with "reasonable effort" if its affidavits demonstrate that it had a

9    reasonable basis to do so.

10        Apart from incorrectly accusing the Service of arguing that its actions are not

11   reviewable,[12] Plaintiff claims that such deference is not warranted, due to language in the

12   legislative history noting that "[t]his section does not affect the extent of judicial deference that

13   a court may or may not extend to an agency on any other matter." H. Rep. 104-795 at 22.  But

14   we are not arguing for deference on "any other matter" other than the agency's "own technical

15   resources to process, redact, and reproduce records," *id.*, the very issue on which Congress

16   intended agencies to benefit from a degree of judicial deference.  And while Plaintiff cites to

17   cases involving disputed facts, here, the underlying facts are not in dispute; rather, there is a

18   difference of opinions between the agency and Plaintiff's declarants as to what conclusion

19   should be drawn from these facts.  Because the agency's declarations reasonably explain how it

20

21   _____

22   [12] E-FOIA's language makes the action judicially reviewable, even on a deferential review, by
     establishing relevant criteria.  As noted above, the legislative history also elaborates the criteria
     that agencies must consider in deciding whether to disclose records in a newly-requested format.

23

     Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to
     Plaintiff's Cross-Motion for Summary Judgment
     Case No.3:13-cv-02789-WHO          21

1    arrived at its cost estimate based on its understanding of its own resources, they are entitled to

2    deference.  Accordingly, the Service should be granted summary judgment.

3            D.   Plaintiff's Requested Compliance Period Is Improperly Short

4            Should the Court nonetheless grant Plaintiff's motion for summary judgment, the Service

5    respectfully contends that the 15 day period requested for compliance is too short.  Not only is it

6    expected that an ad-hoc process to redact the returns might take months to fully develop,

7    (Rosenmerkel Decl. ¶ 10,) but ordering immediate production impairs the Solicitor General's

8    decision on whether to appeal in this case raising questions of first impression, because it would

9    moot the case prior to the filing of an appeal. *Cf.  People for the Am. Way Found. v. U.S. Dep't

10   of Education*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007) ("in the FOIA context. . . the release of

11   documents would moot a defendant's right to appeal.").  The government's decision on appeal is

12   different from that of a private litigant, and requires sufficient time.  Only the Solicitor General

13   may authorize appeal, 28 C.F.R. § 0.20(b), and thus substantial consultation is required.  In

14   addition, courts recognize that careful consideration by the Solicitor General of whether to

15   appeal furthers important policies concerning the conservation of limited judicial resources. *See

16   United States v. Mendoza*, 464 U.S. 154, 161 (1984).  In recognition of these realities, the rules

17   give the government additional time to appeal. Fed. R. App. P. 4(a)(1)(B). They thus recognize

18   that the "'government's institutional decisionmaking practices require more time to decide

19   whether to appeal.'" *U.S. ex rel. Eisenstein v. City of New York*, 540 F.3d 94, 99 (2d Cir. 2008),

20   *aff'd*, 556 U.S. 928 (2009) (citation omitted).  Therefore, in this case, which raises several

21   important questions of first impression, public policy would support allowing 60 days to respond

22   in the case of an adverse ruling so that the Solicitor General can fully consider whether to appeal.

23

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to
Plaintiff's Cross-Motion for Summary Judgment
Case No.3:13-cv-02789-WHO          22

E.   Evidentiary Objections

In accordance with N.D. Cal. L.R. 7.5(a) & -(c), the Service makes the following objections:

**Relevance [F.R.E. 401-403]**

As explained in Part II.B., *supra*, material concerning the alleged superiority of automated redaction or the utility of MeF files to users is not relevant to the agency's reproducibility determination.  Further, as explained in Part II.C.1, *supra*, opinions based on the burden associated with redacting a single XML element are irrelevant because they do not fit the facts in the record here.  The Service specifically objects to Malamud Decl. ¶¶ 1-34 with exhibit; Noveck Decl. ¶¶ 1-15 with exhibit; Klein Decl. ¶¶ 1-8; Berger Decl. ¶¶ 1-9; Taggart Decl. ¶¶ 1-12; Skomoroch Decl. ¶¶ 1-12 with Exhibit; Johnson Decl. ¶¶ 1-25; and Bray Decl. ¶¶ 20.

**Lack of personal knowledge, improper opinion, and speculation [F.R.E. 602, 701-703]**

As explained in Part II.C.1., *supra*, opinions concerning the burden on the Service not based on the actual legal and other constraints on the Service, which assume only the need to remove entire schedules consistently identified across all e-filed returns, do not fit the facts of this case and are therefore speculative and unreliable.  The Service specifically objects to Malamud Decl. ¶¶ 23-31 with exhibit; Johnson Decl. ¶¶ 8-23; and Bray Decl. ¶¶ 10-20.

**Hearsay [F.R.E. 802]**

The Service objects to hearsay statements referenced in Noveck Decl. ¶¶ 12-13 and attached Exhibit.

**Conclusions and Argument [N.D. Cal. L.R. 7-5(b)]**

The Service objects to the statements that appear conclusory and argumentative in Noveck Decl. ¶¶ 6-9, 12-15 and Exhibit, Berger Decl. ¶¶ 8-9; Taggart Decl. ¶ 10; Skomoroch

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to
Plaintiff's Cross-Motion for Summary Judgment
Case No.3:13-cv-02789-WHO          23

1    Decl. ¶ 12; Johnson Decl. ¶ 20.

2    III.    CONCLUSION

3           For the foregoing reasons, the Court should grant the Service's motion for summary

4    judgment and deny Plaintiff's cross-motion for summary judgment.

5    DATED: October 29, 2014

6                                              Respectfully Submitted,

7                                              TAMARA W. ASHFORD
8                                              ACTING ASSISTANT ATTORNEY GENERAL

9                                              /s/ Yonatan Gelblum
                                               YONATAN GELBLUM
10                                             CHRISTOPHER W. SANDERS
                                               U.S. DEPARTMENT OF JUSTICE, TAX DIVISION
11                                             P.O. Box 227
                                               Washington, DC 20044
12                                             (202) 305-3136 (phone)
                                               (202) 514-6866 (facsimile)
13                                             Yonatan.gelblum@usdoj.gov

14

15

16                                   CERTIFICATE OF SERVICE

17          I certify that I served a true and correct copy of the foregoing motion, with attachments,

18   on Plaintiff's counsel via the Court's Electronic Case Filing system this 29th day of October,

19   2014.

20                                             /s/ Yonatan Gelblum
                                               Yonatan Gelblum
21

22

23

Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to
Plaintiff's Cross-Motion for Summary Judgment
Case No.3:13-cv-02789-WHO              24