THOMAS R. BURKE (CA State Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: thomasburke@dwt.com

RONALD G. LONDON (Pro Hac Vice)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
Telephone: (202) 973-4200
Email: ronnielondon@dwt.com

DAN LAIDMAN (CA State Bar No. 274482)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Telephone: (213) 633-6800
Email: danlaidman@dwt.com

DAVID HALPERIN (Pro Hac Vice)
1530 P Street NW
Washington, DC 20005
Telephone: (202) 905-3434
Email: davidhalperindc@gmail.com

Attorneys for Plaintiff Public.Resource.Org

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PUBLIC.RESOURCE.ORG., a California non-profit organization,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES INTERNAL REVENUE SERVICE,<br><br>Defendants. | Case No. **3:13-CV-2789**<br>Assigned to the Hon. William H. Orrick<br><br>**REPLY IN SUPPORT OF PLAINTIFF PUBLIC.RESOURCE.ORG'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: January 14, 2015<br>Time: 2:00 p.m.<br>Place: Courtroom 2, 17th Floor |

**TABLE OF CONTENTS**

Page

1. INTRODUCTION .................................................................................................................. 1
2. THE REQUESTED NINE FORM 990S ARE READILY REPRODUCIBLE IN MACHINE-READABLE FORMAT. ................................. 1
   A. The IRS' Own Customs And Practices Do Not Justify Withholding ............ 1
   B. The IRS Cannot Evade Its Obligations Under E-FOIA Based On Assertions About The Cost Of Responding To The Request. ....................... 4
   C. The IRS Fails To Counter Public.Resource's Showing About The Ease With Which Its Request For Nine Form 990s Can Be Processed ......... 8
3. PUBLIC.RESOURCE'S EVIDENCE IS ADMISSIBLE. .................................... 13
4. EVIDENTIARY OBJECTIONS. ........................................................................... 15
5. CONCLUSION .......................................................................................................... 15

DAVIS WRIGHT TREMAINE LLP

Case No. 3:13-CV-2789
REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

Page i

# TABLE OF AUTHORITIES

Page

**Cases**

*Army Times Pub. Co. v. Dep't of the Army*,
   684 F. Supp. 720 (D.D.C. 1988) ...................................................................................4

*Daubert v. Merrell Dow Pharmaceuticals*,
   43 F.3d 1311 (1995) .....................................................................................................14

*In Defense of Animals v. USDA*,
   587 F. Supp. 2d 178 (D.D.C. 2008) .............................................................................15

*Innovus Prime, LLC v. Panasonic Corp. et al.*,
   2013 U.S. Dist. LEXIS 93820 (N.D. Cal. July 2, 2013) ..............................................14

*Kamman v. IRS*,
   56 F.3d 46 (9th Cir. 1995) .............................................................................................9

*Kowack v. United States Forest Serv.*,
   766 F.3d 1130 (9th Cir. 2014) .....................................................................................11

*Marks v. United States DOJ*,
   578 F.2d 261 (9th Cir. 1978) .........................................................................................4

*Nation Magazine v. United States Customs Service*,
   71 F.3d 885 (D.C. Cir. 1995) ........................................................................................4

*Nken v. Holder*,
   556 U.S. 418 (2009) .....................................................................................................15

*Scudder v. CIA*,
   – F. Supp. 2d –, 2014 WL 954830 (D.D.C. 2014) ...............................................*passim*

*Sears v. Gottschalk*,
   502 F.2d 122 (4th Cir. 1974) .....................................................................................4, 5

*Soremekun v. Thrifty Payless, Inc.*,
   509 F.3d 978 (9th Cir. 2007) ....................................................................................9, 12

*Tax Analysts v. DOJ*,
   845 F.2d 1060 (D.C. Cir. 1988) ....................................................................................4

*TPS, Inc. v. DOD*,
   330 F.3d 1191 (9th Cir. 2003) ...........................................................................2, 3, 5, 7

*Trentadue v. FBI*,
    572 F.3d 794 (10th Cir. 2009) .......................................................................................... 4

*United States v. Scholl*,
    166 F.3d 964 (9th Cir. 1999) .......................................................................................... 14

**Statutes**

5 U.S.C. § 552(a)(3)(B) ................................................................................................ 1, 3, 10, 13

**Rules**

Federal Rules of Evidence
    402 ............................................................................................................................ 13, 15
    602, 701-703 ..................................................................................................................... 13
    802 ..................................................................................................................................... 14
    701, 702 ............................................................................................................................ 15

Northern District of California Local Rule
    7-5(b) ............................................................................................................................ 14, 15

**Other Authorities**

"Executive Order – Making Open and Machine Readable the New Default for
    Government Information" (May 9, 2013), *available at*
    http://www.whitehouse.gov/the-press-office/2013/05/09/executive-order-
    making-open-and-machine-readable-new-default-government .................................... 2

House Report (Gov't Reform & Oversight Cmte.), H.R. REP. 104-795 ............................... 3, 6, 7

Internal Revenue Manual § 3.20.12.2.1 ("Commonly Requested Documents"),
    *available at* http://www.irs.gov/irm/part3/irm_03-020-012r.html ............................ 2

Robert Ratish, *Democracy's Backlog: The Electronic Freedom of Information Act
    Ten Years Later*, 34 Rutgers Computer & Tech. L.J. 211, 220, 228 (2007) .............. 4

Senate Committee on the Judiciary Report, S.R. No. 104–272, S. REP. 104-272,
    1996 WL 262861 ......................................................................................................... 3, 6

U.S. Dep't of Justice FOIA Update, Vol. XVII, No. 4 (1996), *available at*
    http://www.justice.gov/oip/blog/foia-update-congress-enacts-foia-amendments ...... 6

U.S. Dep't of Justice FOIA Update, Vol. XIX, No. 1 (1998), *available at*
    www.justice.gov/oip/foia_updates/Vol_XIX_1/xixpage4.htm ..................................... 6

## 1.  INTRODUCTION

The IRS continues to overlook the actual scope of this litigation, which involves Public.Resource.Org's ("Public.Resource") narrow request for *nine* specific Form 990 tax returns in a machine-readable Modernized e-File ("MeF") format.  The agency does not deny that it received these nine records in MeF format, and concedes that it is capable of producing them this way.[1]  As these key facts are undisputed, the records must be disclosed as requested under 5 U.S.C. § 552(a)(3)(B) ("E-FOIA").

To try to evade its disclosure obligations, the IRS seeks to expand a narrow exception for truly unusual requests into a massive loophole that would effectively gut E-FOIA.  The IRS claims that producing Form 990s in MeF format is so onerous that it should *never* have to do it, even where, as here, a request is limited to only a few files.  Never mind that E-FOIA expressly requires agencies to make reasonable efforts to accommodate such requests; or that the President has declared machine-readable data the "new default" for government information; or that the IRS has presented absolutely *no* evidence showing that producing these nine specific records in MeF format would be unduly burdensome.  If the IRS could avoid summary judgment on this record, then agencies could circumvent their duties merely by pointing to the commonplace budget limitations that are a perpetual reality at all levels of government, with no specific showing of the sort of truly exceptional burden required by the statute.  This would defeat the central purpose of E-FOIA and enable agencies to remain locked into outmoded technology that frustrates public access.  This Court should reject the IRS' backward-looking arguments and enter summary judgment in favor of Public.Resource.

## 2.  THE REQUESTED NINE FORM 990S ARE READILY REPRODUCIBLE IN MACHINE-READABLE FORMAT.

### A.  The IRS' Own Customs And Practices Do Not Justify Withholding.

The IRS acknowledges that the only impediment to producing these nine records in the requested MeF format is its own outdated production process by which even e-filed Form 990s

---

[1] *E.g.*, IRS' Reply To Opposition To Defendant's Motion For Summary Judgment And Opposition To Cross-Motion For Summary Judgment ("Opp.") at 14.

Case No. 3:13-CV-2789
REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT                           Page 1

DAVIS WRIGHT TREMAINE LLP

are converted to non-machine readable image files. *E.g.*, Opp. at 1. The agency admits that "it adopted the current process nearly a decade before e-filing started," and that it has never revisited the process, even though nearly half of all Form 990s are now filed electronically. *Id.* at 11. It claims that it should not be faulted for "not clairvoyantly setting up a process to redact files in MeF format years before it ever received any request for disclosure in that format." Opp. at 13. But this misleading caricature of Public.Resource's argument falls flat for several reasons.

*First*, Public.Resource's FOIA request is hardly unusual or unexpected. It has requested Form 990 tax returns, which the IRS itself describes as "commonly requested documents that are open for public inspection,"[2] in the *same format in which they are received by the agency*. It does not take "clairvoyance" to accommodate such an obvious request, especially given that President Obama issued an Executive Order on May 9, 2013 directing that "the default state of new and modernized Government information resources shall be open and machine readable."[3]

*Second*, the IRS offers no response to the controlling authority holding that an agency's own past procedures for responding to FOIA requests cannot support a refusal to produce records in an electronic format. *See* Cross-Motion at 7-8. In *TPS, Inc. v. DOD*, 330 F.3d 1191, 1194 (9th Cir. 2003), the Ninth Circuit rejected this same argument, holding that an agency cannot withhold records based on its "'business as usual' in the context of satisfying FOIA requests." If the agency "already creates or converts documents in a certain format" for its normal business apart from FOIA – as the IRS indisputably does here with Form 990s it receives in MeF format – the records must be produced in the requested format, regardless of how the agency responded to similar FOIA requests in the past. *Id.* The IRS ignores this aspect of the *TPS* decision.

*Third*, the IRS' emphasis on the number of past FOIA requests for Form 990s in MeF format is both beside the point and misleading. *E.g.*, Opp. at 11-13. As a threshold matter, this

---

[2] *See* Internal Revenue Manual § 3.20.12.2.1 ("Commonly Requested Documents"), *available at* http://www.irs.gov/irm/part3/irm_03-020-012r.html.

[3] *See* "Executive Order – Making Open and Machine Readable the New Default for Government Information" (May 9, 2013), *available at* http://www.whitehouse.gov/the-press-office/2013/05/09/executive-order-making-open-and-machine-readable-new-default-government.

DAVIS WRIGHT TREMAINE LLP

1 entire line of argument about "existing demand" being a relevant consideration appears to be
2 based on a misreading of the legislative history. The Senate Report that the IRS quotes only
3 mentions public demand as a factor when agencies consider "whether to disclose requested
4 records or information in a *new* requested form." Senate Committee on the Judiciary Report,
5 S.R. No. 104–272, S. REP. 104-272, 1996 WL 262861, at *14 (emphasis added). It does not say
6 anything about applying such a standard to requests, such as the one at issue here, for records in
7 "*existing* electronic formats." *Id.* (emphasis added).
8 But even if this were a proper consideration, the volume of past FOIA requests for Form
9 990s in MeF format is not probative of the public demand for such records, and certainly does
10 not show a "preference by requesters for disclosure in image format." Opp. at 13. The agency's
11 stubborn insistence on only producing e-filed Form 990s in a converted image format has sent a
12 clear message to members of the public that they should not bother requesting machine-readable
13 records, unless they are willing to commit to lengthy and costly litigation. That is a classic self-
14 fulfilling prophecy, and does not give the IRS permanent license to withhold these records.
15 *Fourth*, apparently realizing how damaging *Scudder v. CIA*, – F. Supp. 2d –, 2014 WL
16 954830 (D.D.C. 2014), is to its position, the IRS now contends that much of this decision "is
17 not persuasive and should not be followed by this Court," Opp. at 13 – notwithstanding that the
18 IRS cited *Scudder* in its own Motion for Summary Judgment. MSJ at 13. The well-reasoned
19 decision of the District of Columbia district court is fully consistent with the Ninth Circuit's
20 controlling opinion in *TPS*, which the D.C. court discusses and expressly follows. *Scudder*,
21 2014 WL 954830, at *8-9. The IRS objects to the notion that E-FOIA obligates agencies "to be
22 proactive in satisfying format requests," *id.* at *11, but this language is from the statute, which
23 requires that "[e]ach agency shall make reasonable efforts to maintain its records in forms or
24 formats that are reproducible for purposes of this section." 5 U.S.C. § 552(a)(3)(B). The legis-
25 lative history confirms that Congress wanted agencies to accommodate requests even where they
26 do not necessarily maintain records in the precise format requested. *See* House Report (Gov't
27 Reform & Oversight Cmte.), H.R. REP. 104-795, 1996 WL 532690, at *18 ("Requestors may
28

DAVIS WRIGHT TREMAINE LLP

request records in any form or format in which the agency maintains those records. Agencies must make a 'reasonable effort' to comply with requests to furnish records in other formats.").[4]

Because Public.Resource has asked for "commonly requested documents," in the same format in which they are received by the agency – the format which the President has directed should be the "new default for government information" – E-FOIA requires the IRS to make the information available in this format, regardless of its past practices and customs.

### B. The IRS Cannot Evade Its Obligations Under E-FOIA Based On Assertions About The Cost Of Responding To The Request.

The IRS fails to counter Public.Resource's showing that the purported costs and burdens of production are not a proper basis for withholding the requested nine Form 990s in MeF format. Its expansive interpretation of what constitutes an unduly burdensome request is without precedent, and amounts to a virtual roadmap for agencies to ignore their disclosure obligations.

*First*, administrative burden does not justify withholding records that an agency is able to locate. *See* Cross-Motion at 9-10 (citing *Sears v. Gottschalk*, 502 F.2d 122, 126 (4th Cir. 1974); *Tax Analysts v. DOJ*, 845 F.2d 1060, 1067 (D.C. Cir. 1988); *Army Times Pub. Co. v. Dep't of the Army*, 684 F. Supp. 720, 723 (D.D.C. 1988)). The IRS brushes these authorities aside, but does not try to distinguish them on the law or the facts. Opp. at 5. Instead, it relies entirely on cases addressing the separate issue of an agency's *search* obligations under FOIA. Opp. at 5-6.

In all of the authorities the IRS cites, the issue was "how hard an agency must look to find requested records." *Trentadue v. FBI*, 572 F.3d 794, 797 (10th Cir. 2009). These decisions involved vague, sweeping requests that required great effort to *locate* records in the first place.[5]

---

[4] As explained by one commentator who surveyed E-FOIA's legislative history, Congress wanted to encourage agencies to "think of information in terms of its utility to the public *before* the public requested it," and the law reflects the principle that "as technology makes it easier to convey larger amounts of information in more manageable formats, the government must adapt accordingly." Robert Ratish, *Democracy's Backlog: The Electronic Freedom of Information Act Ten Years Later*, 34 Rutgers Computer & Tech. L.J. 211, 220, 228 (2007) (emphasis added).

[5] *E.g.*, *Trentadue*, 572 F.3d at 807 (FBI not required to conduct search of manual files that would take "thousands of hours"); *Marks v. United States DOJ*, 578 F.2d 261, 263 (9th Cir. 1978) (FBI fulfilled its search obligations by looking through central files in DC and field office records in San Francisco and offering to search other specific field offices on request; further "open-ended search throughout all its field offices" not required); *Nation Magazine v. United States Customs Service*, 71 F.3d 885, 892 (D.C. Cir. 1995) (while requiring a generalized search

DAVIS WRIGHT TREMAINE LLP

By contrast, the IRS admits here that it has access to the requested Form 990s in MeF form, and never claimed it would have any difficulty locating them. Its argument about the cost of making the records public therefore should be rejected. *See Sears*, 502 F.2d at 126 ("[i]f otherwise locatable … equitable considerations of the costs, in time and money, of making records available for examination do not supply an excuse for non-production").

*Second*, while E-FOIA allows courts to consider the burden required to produce records in a particular format in certain limited situations, the IRS seeks to expand this narrow exception for truly unusual requests into a massive loophole. Opp. at 6-9. As the Ninth Circuit has held, "[w]hen an agency already creates or converts documents in a certain format … requiring that it provide documents in that format to others does not impose an unnecessarily harsh burden, absent specific, compelling evidence as to significant interference or burden." *TPS*, 330 F.3d at 1195. Elaborating on this principle, the court in *Scudder* explained that "when an agency maintains a record in a particular format, it will be a *highly unusual case* or *only limited exception* when the record cannot be readily reproduced by the agency in that format." *Scudder*, 2014 WL 954830, at *13 (quotations omitted; emphasis added).

The IRS' insistence that it can completely avoid its disclosure obligations by invoking the purported "burdens" of production resembles the CIA's argument in *Scudder* that, by using the phrase "readily" reproducible, "Congress only intended agencies to comply with this subsection when doing so could be accomplished 'without much difficulty' or 'easily.'" *Scudder*, 2014 WL 954830, at *11. The court rejected this position, explaining that the "readily reproducible" requirement "is informed by the second sentence of the subsection, directing the agency to engage in 'reasonable efforts' to comply." *Id.* In other words, E-FOIA assumes that responding to format-specific requests will involve some extra time and cost, yet still requires agencies to make "reasonable efforts" to respond. The legislative history also shows that Congress intended that agencies must produce records in the requested format even where doing so involves some additional expense or even instituting new technological procedures. *Id.* at *14 n.10 ("We recog-

---

of "23 years of unindexed files" was too burdensome, reversing summary judgment for government and ordering agency to search for record that was specifically identified).

nize that this requirement ... holds some potential for compelled software creation.") (quoting Senate Committee on the Judiciary Report, S.R. No. 104–272, at *28 (1996)). *See also* H.R. REP. 104-795, 1996 WL 532690 at *31 (recognizing that E-FOIA's requirement "that agencies provide information in the form requested, if the information is readily reproducible in that form … *might increase agencies' costs*") (emphasis added).[6]

The court in *Scudder* also drew on the Department of Justice's own interpretations of E-FOIA, which similarly recognize that added costs do not justify withholding except in extremely limited circumstances. *Scudder*, 2014 WL 954830, at *12 ("DOJ's answer to the question: 'If an agency maintains a record in more than one form or format, can a FOIA requester now choose the one in which it will be disclosed?' is clear, stating 'Yes, with only *limited exception*.' … The guidance goes on to state that '*[i]n almost all cases*, an agency will be able to readily reproduce any existing form or format of a record for which a requester expresses a preference.") (emphasis added; quoting U.S. Dep't of Justice, FOIA Update, Vol. XVIII, No. 1 (1997)). The DOJ has likewise determined that it would be a "*highly unusual case* in which some existing record form could not be 'readily reproduced,'"[7] and that E-FOIA requires "agencies to honor a requester's specified choice among existing forms of a requested record (assuming no *exceptional difficulty* in reproducing an existing record form)."[8] The court in *Scudder* concluded that, as the "DOJ opined, [and] as common sense dictates, … when the requested format is an existing format for responsive records within the agency, it would be a 'highly unusual' case where the records would not thereby be 'readily reproducible.'" *Scudder*, 2014 WL 954830, at *14.

The IRS is now attempting to dramatically lower the bar for what constitutes a "highly unusual" case. This litigation involves Public.Resource's request for *nine* specific records, in

---

[6] Indeed the IRS acknowledges that "E-FOIA requires agencies to adopt new processes … to make records 'readily reproducible' in formats requested under FOIA." Opp. at 14.

[7] U.S. Dep't of Justice, FOIA Update, Vol. XIX, No. 1 (1998), *available at* www.justice.gov/oip/foia_updates/Vol_XIX_1/xixpage4.htm (emphasis added).

[8] U.S. Dep't of Justice, FOIA Update, Vol. XVII, No. 4 (1996), *available at* http://www.justice.gov/oip/blog/foia-update-congress-enacts-foia-amendments (emphasis added).

DAVIS WRIGHT TREMAINE LLP

the same MeF format in which they were received, and which the IRS indisputably has in its possession. Even assuming for the sake of argument that redacting protected information from these nine records could somehow actually cost $6,200, as the IRS claims,[9] that simply cannot as a matter of law constitute the sort of "highly unusual," "exceptional" situation that is so onerous it justifies invoking the "limited exception" that *entirely relieves* the agency of its disclosure obligations under E-FOIA. *Scudder*, 2014 WL 954830, at *13.

All federal agencies (and indeed all branches of government) must perennially cope with tight budgets and limited resources. This was no less true when the E-FOIA Amendments were passed in 1996, and Congress was expressly aware of this when it enacted the statute. *See* H.R. REP. 104-795, 1996 WL 532690 at *29 ("Much comment is made of the adequacy of agency resources to comply with the statutory requirements of the FOIA."). As shown above, E-FOIA's disclosure mandate *assumes* that agencies will have to bear some increased costs in terms of the time and effort required to comply. If the costs of redacting information from nine records that an agency indisputably maintains and processes as part of its normal business could be considered "unusual" and "exceptional," as the IRS argues, it would open an enormous loophole in the law by enabling agencies to completely sidestep disclosure obligations whenever production involves some additional costs. That runs contrary to the plain text and legislative history of the statute, and also to the mandate that E-FOIA be broadly construed "in favor of public access," and that courts must apply a "presumption in requiring disclosure in the requested format so as to 'enhance public access to agency records.'" *TPS*, 330 F.3d at 1196.[10]

---

[9] Public.Resource maintains that the IRS' cost estimates are grossly inflated. *See* § 2.C, *infra*; Cross-Motion at 11-14.

[10] In *Scudder*, the court denied the government's motion for summary judgment for the reasons described above, but also denied the plaintiff's motion, finding factual disputes existed regarding "whether the defendant is technologically capable of providing the requested records in the requested format," and "whether it is unduly burdensome." *Scudder*, 2014 WL 954830, at *23. This aspect of *Scudder* is distinguishable, because here there is no dispute that the IRS is technologically capable of producing the requested Form 990s in MeF form. *Compare* Opp. at 14 (IRS acknowledges it is not arguing production is not technologically possible), *with Scudder*, 2014 WL 954830, at *17 ("The defendant states it is not technically possible for the defendant to produce the requested documents in the requested electronic format due to the classified nature of the system on which the files in question resided."). In terms of burden, the request in *Scudder* was for 419 records – narrowed through negotiations with the agency from an initial request of

DAVIS WRIGHT TREMAINE LLP

### C. The IRS Fails To Counter Public.Resource's Showing About The Ease With Which Its Request For Nine Form 990s Can Be Processed.

The IRS' evidentiary presentation continues to ignore the actual, limited scope of Public.Resource's request. *See* Cross-Motion at 10-14. Virtually all of the IRS' evidence still goes to the larger, irrelevant question of the IRS' overall production process for Form 990s, and remains devoid of any evidence to counter Public.Resource's conclusive showing that the nine Form 990s at issue are readily reproducible in MeF format as a matter of law.

The IRS offers only one response to Public.Resource's showing that redacting the Form 990s requested in MeF format is a straightforward process that, as a matter of law, does not present the sort of extreme burden that can relieve the IRS of its disclosure obligations. *See* Cross-Motion at 10-14; Bray Decl. ¶¶ 19-20; Malamud Decl. ¶¶ 28-34; Johnson Decl. ¶¶ 12-22. The agency's declarant, Lisa Rosenmerkel, acknowledges "it would be relatively simple to remove the portion of XML that is tagged as the official IRS Form 990 Schedule B," but also states that "other personally identifiable information may be present elsewhere on the return and would require redaction." Second Rosenmerkel Decl. ¶ 18. This generalized claim about what "may be present" on some other, unidentified forms appears to be the basis for the IRS' entire Opposition, as this is the sole reason why the agency contends that production in MeF format would be more burdensome than the current system. Opp. at 16-18.

But there is a major flaw in the IRS' argument. It has not presented *any* evidence that any of the *nine specific Form 990s at issue* in this litigation – consisting of 277 pages – contains personally identifiable information on other portions of the return besides the Schedule B, or that these nine particular records present any other issue that would make redacting them in MeF format unusually difficult or time-consuming. All the IRS offers are the vague assertions that "*some filers* include nondisclosable information" on other parts of the Form 990 besides the Schedule B, and that, generally speaking, "other redactable information *may* be located elsewhere." Opp. at 17 (emphasis added). Ms. Rosenmerkel's Second Declaration likewise only

---

nearly 2,000 – and the agency claimed that processing "the *large volume of records requested* … would be prohibitively time consuming and costly." *Id.* at 19 (emphasis added). There is no similar issue in this case involving a request for only *nine* records consisting of 277 pages.

DAVIS WRIGHT TREMAINE LLP

addresses what she characterizes as "common *deviations* by some filers," and does not say anything about the nine specific Form 990s that Public.Resource has actually requested, or that she has even reviewed these documents. Second Rosenmerkel Decl. ¶ 12 (emphasis added). *See also id.* ¶¶ 24-26 (providing general examples of practices by unidentified past filers).

In short, the IRS has only identified one reason why redacting Form 990s in MeF format might potentially be burdensome because, generally speaking, some filers include protected information on different parts of their returns. It has not presented *any* evidence showing that this concern applies to any of the nine records at issue. This omission is especially glaring considering that the IRS does not dispute that it has these records in its possession – thus, if these nine Form 990s did present any such issues making redaction in MeF form particularly burdensome, the IRS would clearly know about it and be able to present such information here. Its evidence of the purported burden of producing the nine requested records in the requested format amounts to nothing more than speculation based entirely on other hypothetical FOIA requests that are not before this Court. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.").[11]

Despite focusing entirely on redaction challenges posed by filers including protected information on different parts of their returns, the IRS fails to counter or address Public.Resource's showing that this is *already* a serious problem for the agency, and not one that is at all unique to production in MeF format. As described in the Cross-Motion, under the current system, in which the IRS produces redacted Form 990s in a non-machine readable image format, the IRS routinely fails to redact protected information in different portions of the returns, resulting in egregious privacy breaches. *See* Cross-Motion at 14-15; Malamud Decl. ¶¶ 13-20. Since Mr. Malamud began conducting privacy audits on the IRS Exempt Organizations database in 2008, he has repeatedly found confidential taxpayer information in Form 990s that the agency has publicly

---

[11] As the government cannot justify withholding under FOIA with "conclusory and generalized allegations," *Kamman v. IRS*, 56 F.3d 46, 49 (9th Cir. 1995), the IRS' insistence that its declarations are "entitled to deference" is flawed. Opp. At 20. *See also* Cross-Motion at 4-5.

disclosed. Malamud Decl. ¶ 13. Mr. Malamud estimates that there are close to 600,000 social security numbers in the public Exempt Organizations data that the IRS has provided his organization. *Id.* This unrefuted evidence belies the IRS' suggestion that filers including protected information on Form 990s outside of Schedule B presents a redaction challenge unique to production in MeF format that justifies withholding the requested records.

To the contrary, Mr. Malamud has explained that production in the current non-machine readable image format actually stymies efforts to protect taxpayer privacy. When he finds a social security number in a Form 990, Mr. Malamud redacts the information, replaces the files that Public.Resource makes publicly available, and systematically notifies the IRS, GuideStar, the Foundation Center, and others known to have copies of the exempt organizations database. Malamud Decl. ¶ 13. He has provided the IRS with detailed recommendations on steps that it could take to mitigate this problem. *Id.* ¶ 19. Mr. Malamud's efforts have led to members of Congress requesting an explanation for the privacy breaches, and the IRS stating that it has changed some procedures. *Id.* ¶¶ 15-16.

However, these efforts are being hindered by the IRS' current production format, which forces Mr. Malamud to use optical character recognition to process the non-machine readable image files, which is both time consuming and error prone. *Id.* ¶¶ 21-22. Producing Form 990s in a machine-readable format would protect privacy interests by making the processing of these returns faster and more reliable, as Public.Resource's evidence shows, and which the IRS does not deny. *Compare* Opp. at 14 *with* Cross-Motion at 14-15; Malamud Decl. ¶¶ 13-22, 34; Berger Decl. ¶ 7; Skomoroch Decl. ¶ 11. Instead, the IRS argues that making the data more reliable, reducing errors, and protecting privacy are simply *irrelevant*. Opp. at 14.

That is not the case. As described in § 2.B, *supra*, E-FOIA requires agencies to make "reasonable efforts" to maintain records in a manner that allows them to be produced in response to requests for disclosure in a certain format. *See* 5 U.S.C. § 552(a)(3)(B). This "reasonable effort" standard informs whether a record is "readily reproducible" in the requested format. *Scudder*, 2014 WL 954830, at *11. Surely, then, whether production in a particular format will

Case No. 3:13-CV-2789
REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT                                    Page 10

be more reliable, reduce errors, and protect taxpayer privacy as required by law is a relevant consideration in determining whether it is "reasonable" for an agency to take steps to produce records in a certain format. Because production of Form 990s in MeF format would help to alleviate the very problem the IRS raises as its basis for withholding, it is reasonable for the IRS to make efforts to produce the records in this manner – and for this Court to order that it do so.[12]

The IRS' claims about the personnel and training required to produce the records in MeF format also ring hollow. Once again, it fails to link these contentions to the nine specific Form 990s that Public.Resource seeks, as it presents no evidence that these particular records contain protected information in unusual locations or otherwise present unique redaction challenges that would necessitate unduly burdensome new training or staffing. And, presumably, this cost is already captured as to the nine Form 990s at issue in the $6,200 price tag the IRS has affixed to their production.

This argument also is unpersuasive even as it applies to all Form 990s, and not just the nine at issue. As described above, staffers who redact Form 990s for production already must deal with privacy challenges under the current system, including the one specific issue identified by the IRS as an obstacle here (that some filers include protected information on portions of the return outside of the Schedule B). *See*, *e.g.*, Second Rosenmerkel Decl. ¶¶ 24-26. According to Ms. Rosenmerkel's original declaration, these employees who redact non-machine-readable

---

[12] The IRS does not just erroneously claim that the utility of the information is irrelevant, it also misrepresents Public.Resource's argument about the public interest served by disclosure of Form 990s in MeF format. The agency scoffs at the efficacy of "studying the *nonprofit sector*" (Opp. at 13; original emphasis), but Public.Resource made clear that providing access to the data in machine-readable format "would enable journalists, watchdog groups, and even the Government itself to better understand and monitor *the granting and administration of tax-exempt status to non-profits*." Cross-Motion at 15 (emphasis added). Public.Resource's unrefuted evidence shows the data would assist in monitoring how the IRS carries out this vital function on behalf of the federal government. *Id.* at 15-17. It would also provide key insight into the operations and finances of other governmental agencies. *See, e.g.*, Noveck Decl. ¶ 10 (explaining how accessing Form 990s in MeF format would allow researchers to cross-reference the information with databases "on government spending, to better understand the relationship between public and private dollars in providing social services"); Taggart Decl. ¶¶ 3-4 (Form 990s used for news reporting about government regulatory practices). This "would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to," which are classic public interests recognized by FOIA. *Kowack v. United States Forest Serv.*, 766 F.3d 1130, 1133 (9th Cir. 2014) (quotations and alterations omitted).

1 image files under the current system "receive extremely detailed documentation on the process
2 and attend formal and informal training." Rosenmerkel Decl. ¶ 5. She cites to Section 3.20.12
3 of the Internal Revenue Manual, explaining that it "describ[e]s at length" most of the "situations
4 where redaction requires more than merely removing the portion tagged as being the official IRS
5 Form 990 Schedule B on an electronically filed return." Second Rosenmerkel Decl. ¶¶ 16-17.

6 Consequently, the IRS' evidence shows that employees who redact Form 990s for public
7 disclosure *already* receive extensive training and guidance specifically aimed at addressing the
8 problem of protected information appearing on different parts of the return. The IRS fails to
9 clarify how redaction in MeF format would require any *more* extensive or costly training or staff-
10 ing to deal with this same issue. The agency says only that XML files have some elements that
11 are automatically excluded by conversion to an image file that "may" include some additional
12 information that should be redacted. Second Rosenmerkel Decl. ¶ 21. But such speculation is
13 insufficient to defeat summary judgment. *See Soremekun*, 509 F.3d at 984. And in any event,
14 the IRS does not claim these elements could not be quickly and easily removed through an
15 automated process – indeed, it suggests that this *is possible*, as it notes these elements are
16 currently "automatically excluded" when the files are converted to image format. Second
17 Rosenmerkel Decl. ¶ 19; *cf.* Cross-Motion at 11-12 (describing how a simple program could be
18 written to quickly and easily redact Schedule B-type information from a large number of files).
19 The IRS' *own* evidence simply bolsters the conclusion that, as a matter of law, it is not unduly
20 burdensome for the agency to produce the nine requested Form 990s in MeF format.[13]

21 Finally, not only does the IRS' evidence improperly look beyond the nine records that are
22 actually at issue, it still presents grossly inflated cost estimates that sweep in unrelated expenses.

---

[13] The IRS also mischaracterizes Public.Resource's argument with respect to the staffers who process these records. Public.Resource does not assume that it would require "an IT expert" to make redactions in MeF format, and does not say this anywhere in its Cross-Motion. Opp. at 18. Public.Resource's evidence shows that an experienced computer programmer could easily create a program to automate part of the MeF redaction process to make it more efficient. *E.g.*, Cross-Motion at 14. The staff members who are already given "extremely detailed" documentation and training to guide their efforts to redact image files (Rosenmerkel Decl. ¶ 5) could then carry out these same tasks for production in machine-readable format.

The Second Declaration of Dwayne Ross, which purports to describe the agency's methodology in arriving at an estimate of $2 million for the cost of processing Form 990s in machine-readable format, admits this figure covers much more than preparing the records for disclosure to FOIA requesters. Specifically, much of the cost estimate appears to reflect efforts to create a "repository" for the information "that could be made publically accessible." Second Ross Decl. ¶¶ 6, 17. While the IRS insists that it is excluding other costs for actually getting this new Internet venture up and running, it admits that the $2 million figure includes creating the infrastructure for a public website and user interface. *Id.*; Opp. at 15 n.10.[14]

Because the IRS' Opposition fails to counter Public.Resource's conclusive showing that producing the nine requested Form 990s in MeF format would not be unusually burdensome, summary judgment should be granted in favor of Public.Resource.

## 3. PUBLIC.RESOURCE'S EVIDENCE IS ADMISSIBLE.

**Relevance [FRE 402].** The IRS objects to much of Public.Resource's evidence based on the mistaken belief that the public interest in accessing information in a particular format "is not relevant to the agency's reproducibility determination." Opp. at 23. However, as described above in §§ 2.B-C, *supra*, E-FOIA's requirement that agencies make "reasonable efforts" to maintain records in a manner that allows them to be produced in requested formats informs the "readily reproducible" determination. *See Scudder*, 2014 WL 954830, at *11. Public.Resource's evidence showing that production in MeF format will lead to more reliable data, reduction of errors, and greater protection for taxpayer privacy as required by law, is therefore relevant to determining whether it is reasonable for the IRS to take steps to produce the records in this format, and thus if they are "readily reproducible" under Section 552(a)(3)(B).

**Relevance [FRE 402] / Lack of personal knowledge/improper opinion/speculation [FRE 602, 701-703].** While the IRS invokes various evidentiary rules in trying to exclude the bulk of Public.Resource's evidence, all of these objections share the same rationale: the IRS

---

[14] Mr. Ross also states that the $2 million estimate is based largely on the cost of another "comparable" project from 2011, but offers very few details of this other project and no explanation of why it is comparable. Second Ross Decl. ¶¶ 14-15.

DAVIS WRIGHT TREMAINE LLP

claims Public.Resource's declarants focus on the ease with which Schedule B-type information can be redacted in a machine-readable format but other elements may have to be redacted as well, and therefore it asserts this evidence is somehow unreliable. Opp. at 17, 23. But the IRS misreads its sole authority on this point, *United States v. Scholl*, 166 F.3d 964 (9th Cir. 1999), in which the Ninth Circuit merely characterized the "fit" requirement for expert testimony as seeking to ensure that "the proposed expert testimony is 'relevant to the task at hand,' … i.e., that it logically advances a material aspect of the proposing party's case." *Id.* at 970 n.1 (quoting *Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1315 (1995)).

Here, there can be no serious question that the testimony from Carl Malamud, Tim Bray, and Clay Johnson about the ease of redacting Schedule B-type information "logically advances a material aspect of" Public.Resource's case. *Id.* The IRS does not deny that removing Schedule B information is the most important part of the Form 990 redaction process, and its declarant even agrees with Public.Resource's experts that "it would be relatively simple to remove" such information; she merely says other unidentified elements may *also* have to be redacted. Second Rosenmerkel Decl. ¶ 18. Notably, nowhere does the IRS claim that these other elements could not be easily removed through an automated process similar to that described by Mr. Malamud and Mr. Bray for removing Schedule B-type information. Therefore, the IRS has not come close to showing that this testimony does not "logically advance[] a material aspect" of the case, and these baseless objections should be rejected.

**Hearsay [FRE 802]**. Paragraphs 12 and 13 of the Noveck Declaration are not hearsay because they are offered to show the declarant's qualifications on the subject of her testimony, and to show the public interest in the broad topic of disclosure of Form 990s in machine-readable format, and not to prove the truth of the matter stated.

**Conclusions and Argument [N.D. Cal. L.R. 7-5(b)]**. Under Local Rule 7-5(b), an "affidavit is conclusory if the facts contained are speculative or in the form of legal conclusions, but not if they are based on the affiant's recollection of the events." *Innovus Prime, LLC v. Panasonic Corp. et al.*, 2013 U.S. Dist. LEXIS 93820, at *6 (N.D. Cal. July 2, 2013). The state-

DAVIS WRIGHT TREMAINE LLP

ments that the IRS claims "appear conclusory and argumentative" (Opp. at 23-24) are neither conclusions of law nor improper speculation; they reflect the declarants' opinions about the public interest served by release of Form 990s in MeF format that are based on their expertise and personal knowledge, as established in the rest of their declarations. *See* FRE §§ 701, 702.

## 4. EVIDENTIARY OBJECTIONS.

Based on the FRE and Local Rule 7-5(b), Public.Resource submits the following evidentiary objections:

**Relevance [FRE 402].** The IRS' supplemental declarations do not address production of the nine particular records Public.Resource has requested, and thus are not relevant to any issue in this litigation. *See* Cross-Motion at 17; *In Defense of Animals v. USDA*, 587 F. Supp. 2d 178, 183 (D.D.C. 2008). Therefore, Public.Resource objects to the following as irrelevant under FRE 402: Second Ross Decl. ¶¶ 3-21; Second Rosenmerkel Decl. ¶¶ 10-37.

## 5. CONCLUSION.

Public.Resource respectfully requests that the Court grant its Cross-Motion for Summary Judgment, deny the IRS' Motion for Summary Judgment, and direct the IRS to make available to Public.Resource machine-readable, MeF-formatted Form 990s for the nine tax-exempt organizations that Public.Resource requested through its FOIA request, within 15 days of the Court's decision in this matter. The IRS' request for an extended compliance period is meritless. Opp. at 22. If this Court grants Public.Resource's Cross-Motion, the IRS can seek a stay pending appeal if it can make the requisite showing. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) ("A stay is not a matter of right, even if irreparable injury might otherwise result.") (quotation omitted).

DATED: This 5th day of December, 2014     DAVIS WRIGHT TREMAINE LLP

By:    */s/ Thomas R. Burke*
      THOMAS R. BURKE
      Attorneys for Plaintiff Public.Resource.Org