```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3  Before The Honorable William H. Orrick, Judge
 4
 5  PUBLIC RESOURCE.ORG,        )
                                )  No. C 13-02789-WHO
 6          Plaintiff,          )
                                )
 7  vs.                         )
                                )
 8  UNITED STATES INTERNAL      )
    REVENUE SERVICE,            )
 9                              )
            Defendant.          )
10  _____)
11                              San Francisco, California
                                Wednesday, June 18, 2014
12
     TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
13              RECORDING 1:58 - 2:18 = 20 MINUTES
14
    APPEARANCES:
15
    For Plaintiff:
16                              David, Wright, Tremaine, LLP
                                505 Montgomery Street
17                              Suite 800
                                San Francisco, California
18                                94111
                           BY:  THOMAS R. BURKE, ESQ.
19
    For Defendant:
20                              United States Department of
                                  Justice
21                              Tax Division
                                Post Office Box 227
22                              Washington, D.C.  20044
                           BY:  YONATHAN GELBLUM, ESQ.
23
24
25
```

*Echo Reporting, Inc.*

1  Transcribed by:                Echo Reporting, Inc.
2                                 Contracted Court Reporter/
                                  Transcriber
3                                 echoreporting@yahoo.com
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

3

Wednesday, June 18, 2014                                  1:58 p.m.

                    P-R-O-C-E-E-D-I-N-G-S

                            --oOo--

THE CLERK: Calling Civil Matter 13-2789, Public Resource.org versus United States Internal Revenue Service.

Counsel, please come forward and state your appearance.

MR. BURKE: Good afternoon, your Honor. Thomas Burke of David, Wright, Tremaine on behalf of Public Resource.org.

MR. GELBLUM: Your Honor, Yonathan Gelblum from the U.S. Department of Justice for the Internal Revenue Service. I apologize if my voice is soft. I'm trying to get over a cold.

THE COURT: Sorry for your cold, and I'm glad to have you here. So put your stuff down and then step up to the microphone.

We're here for the -- for the IRS's motion to dismiss, which I'm intending to deny. So let me tell you why, and then you can explain to me the error of my preliminary thinking.

Basically, FOIA uses very broad language, and all the cases say that it has very broad application. Section 6104 predates FOIA. I think adopting the argument that the IRS makes in its brief would make many older statutes not covered by FOIA, and I just don't think that's -- that was

4

1 the intent of Congress or the way that it's been -- FOIA has
2 been interpreted.
3     And I don't think that there's -- I think the Materials
4 Act case, the Richio vs. Klein (phonetic) case is a very
5 unique case based on President Nixon and owned documents.
6 And it has no -- there isn't similar clear language or clear
7 congressional intent in this case.  And the IRS regs
8 obviously don't supersede legislation, so FOIA would trump.
9     So that's my view on that.  And then my question, Mr.
10 Burke, for you is, if I end up sticking with that, do you
11 have an APA claim.  So that's what I want you to think about
12 when you respond.  Let's hear from Mr. Gelblum first.
13         MR. GELBLUM:  Your Honor, I'm actually going to
14 make things a little -- even harder on myself because when I
15 was preparing all this argument, I came across language in a
16 Supreme Court opinion that Plaintiff cites that I realize we
17 may have to bring to the Court's attention.
18     The case was DOJ v. Tax Analysts.  It was a Supreme
19 Court case from 1989.  I think the Plaintiff cited it for a
20 very minor point, something which is near the beginning of
21 the opinion.  Towards the end of the opinion, the court
22 rejected the defense -- the government, which is somewhat
23 similar to our defense, although we contend the case is
24 distinguishable.
25     And that was that the Government tells you that because

1 there were other laws that partially provided for the
2 disclosure of the records at issue, which were court
3 opinions, that they requested -- from DOJ.  And the
4 Government said, well, you can get them from the courts.
5 They have their own rules.  And the Supreme Court said no,
6 it doesn't take them outside the scope of the FOIA.
7      So I did want to bring that to the attention of the
8 Court before I start.
9           THE COURT:  I appreciate that.  I did read Tax
10 Analyst.  All right.  So with all of that, do you think
11 there is a way of overcoming the Plaintiff's position in
12 this case?
13           MR. GELBLUM:  Well, your Honor, we think that the
14 legislative history of FOIA shows that the concern was the
15 defects in Section 3 of the APA.  And Section 6104 was not
16 just the disclosure statement, but at the time that FOIA was
17 enacted, it was the only statute that required disclosure of
18 a whole series of documents relating to tax-exempt
19 organizations.
20      And in one of the cases we cited -- I believe it was
21 Brown v. GSA -- the Supreme Court said that when there is --
22 when Congress passes a statute, rightly or wrongly believing
23 that it's the only mechanism to do something, there is a
24 presumption that Congress intended that to be the exclusive
25 mechanism, even if it was simply a fact that it was

exclusive, although Congress felt it was the only available means, even if Congress didn't expressly state so.

And so FOIA would have essentially been overruling that part of Section 6104.  It would also have been making parts of Section 6104 redundant because there was a whole series of portions of 6104 that say the IRS shall establish various procedures that govern the disclosure of the tax-exempt organization documents.

And in the <u>Beneasan</u> case from the Ninth Circuit that we cited, the Ninth Circuit said when -- before finding that a subsequent statute essentially does that, we want very clear intent that that's what Congress had in mind.  And in FOIA, if one looks at the legislative history, the intent was to deal with -- there was an intent to overrule the prior statute.  But that was Section 3 of the APA at the time, which was essentially a nondisclosure statute, the statute that provided all the reasons why the Government doesn't need to provide procedures to disclose documents.  And so we would argue there wasn't that clear intent.

We would also argue that even if FOIA were to apply to these courts, these records wouldn't be disclosable under FOIA in the absence of Section 6104 because Section 6103 would prohibit their disclosure.  Section 6104, it actually isn't phrased as an exception to 6103.  It simply requires the disclosure.

1     And so the only proof into the realm of what one can
2 get under FOIA, once the IRS has disclosed them, we would
3 argue in accordance with its procedures under 6104.  And
4 what it has disclosed is the -- is not the records in the
5 format that the Plaintiff requested.
6         MR. BURKE:  I'm not going to disagree with the
7 court's analysis, obviously.  I think the source of the
8 confusion for the Government is that in a typical FOIA case,
9 there is an exemption asserted, and oftentimes, it's some
10 other area of law through Exemption 3.
11     That's not what is happening in this case.  In this
12 case, the Government says a statute which came before FOIA
13 was enacted trumps FOIA.  And it's not as though you can't
14 use other areas of the law, including IRS rules and IRS
15 regulations, to the extent that they would assert an
16 exemption.
17     And here -- even here, if there was an argument about
18 needing to protect donor's I.D.s, we respect that.  That's
19 not the issue here.  The records at issue here are already
20 fully disclosable.  The question is simply whether or not we
21 can get it in machine-readable form which will provide
22 greater transparency, and the Government says no.
23     So I -- you know, I would stand on that.  And I think
24 that is the source of the confusion with it.  It's not --
25 it's not using the exemption -- it's not using Exemption 3.

1  It's using it as a categorical, you don't have access to
2  this, which -- if that's what FOIA meant, you would know
3  that.
4          THE COURT:  So what about the APA?  You got a
5  remedy through FOIA.  Doesn't that mean that your APA claim
6  goes away?
7          MR. BURKE:  Can I politely point out that we don't
8  have to elect our remedies at this point, and that the
9  Government's motion isn't to eliminate the ADA -- or that
10 particular claim?
11      The concern I have is that I think if -- I think we
12 have -- we have a FOIA argument.  And we were surprised to
13 have this motion because, you know, we think that the real
14 issue is whether or not it's readily producible.  And we
15 think in these nine, it is readily producible.  And that's a
16 FOIA requirement.
17      But I fear that if we say, oh, sure, that's fine, some
18 other argument is going to come up akin to this motion to
19 dismiss, which I hadn't seen, that will foreclose the
20 remedies available to my client.  And I would not want that.
21      They are certainly capable of making that argument.  We
22 might even reach a resolution with respect to that in cross-
23 motions for summary judgment.  But I would not like to --
24 and respectfully don't think I need to choose that remedy at
25 this point.

1      THE COURT: Do you have any final comments on the
2 motion? Because then I want to go into the case management
3 part of this.
4      MR. GELBLUM: Nothing further. May I just briefly
5 make a query?
6      THE COURT: Yes, please.
7      MR. GELBLUM: I think the relevant section is
8 Section 704 of Title 5. And that's what creates the APA
9 cause of action. It states that that cause of action is
10 where there's no other adequate remedy. And so courts have
11 said -- courts have said that the APA does not apply usually
12 when FOIA provides a cause of action.
13    Obviously, you can see we did not raise that in our
14 motion. It's I think more a matter of efficiency whether
15 the Court just wants to dispose of it now or not. We didn't
16 raise it because we didn't want FOIA not to apply.
17      THE COURT: Right. And so I -- I understand the
18 law to be exactly as you say. And the question is really
19 one of when does the plaintiff have to choose. And I'm of
20 course sensitive to parties wanting to hold out to see how
21 the case develops a little bit. So I'll think about -- I'll
22 think about that.
23    But at the end of the day, when it comes time for the
24 cross-motions, it's going to be one or the other.
25      MR. BURKE: Your Honor, we appreciate that.

1        THE COURT: Yeah. And for sure -- well, it's hard
2   to imagine why it wouldn't be the FOIA. But the -- so I'm
3   going to think a little bit more about that.
4        But let's go on to the CMC. Assuming that I stick with
5   my tentative, which I think I will, how much discovery is
6   going to be necessary before the cross-motions?
7        MR. GELBLUM: The Government takes the position
8   that it's the Ninth Circuit that stated on several occasions
9   discovery is not ordinarily appropriate in FOIA. At least
10  not prior to summary judgment. Usually I think the times
11  when it's been allowed has either been when summary judgment
12  was denied or if the -- if the plaintiff met the
13  requirements of -- I guess it used to be Rule 56(f), and now
14  it's 56(e) of demonstrating a need, once the Government has
15  put forward its documents on summary judgment.
16       THE COURT: So I had understood -- Mr. Burke,
17  what's your perspective on that?
18       MR. BURKE: Ordinarily, I think the rule that is
19  recited -- I will confess, I've done FOIA work for over two
20  decades, and I've never -- despite trying, I've never been
21  able to get discovery. However, there's a case called
22  <u>Skutter vs. CIA</u> (phonetic). It came out in March of this
23  year. It involves exactly this issue. And I have a copy
24  for the Court.
25       This is the case that I forwarded earlier, where after

summary judgment -- summary judgment was denied against the CIA, and discovery was ordered to decide whether or not electronic records could be produced instead of paper records, exactly our issue.  And so discovery was allowed in that case.  In fact, it was ordered.

I appreciate very much the idea that perhaps procedurally it ought to come after you do summary judgment. But I think in an instance where you've got a request for nine documents that are probably a total of -- or nine 990s that are probably a total of 50 pages, if that, I think the idea that you have to spend more than five minutes on each document redacting whatever might need to be redacted is probably the state of the factual record --

THE COURT:  Okay.

MR. BURKE:  -- or will be.

But this case certainly stands for the proposition that -- I would prefer that we not, if we could avoid it and if it was agreeable, not have to do summary judgment and then do discovery and then do summary judgment again. Because in terms of efficiency, just as I won't try and make an APA claim when I don't need to, I don't want to get -- I don't want to waste time or the Court's time.

THE COURT:  So here -- first of all, I'm going to follow the statute.  If I don't have -- if summary judgment comes first before anything else, then that's what'll

happen.  The issue in this case, though, since it's not the documents themselves that people are talking about, but the way in which they're produced, and the Government's position is, I guess, that it is -- it would be burdensome to produce them in that way, I would think that it would be useful to know what the burden is and have to test it in some way prior to summary judgment.  That's what I would have thought.

But if that's not the way that it's supposed to work, then we'll do it -- we'll do it the other way.

MR. GELBLUM:  May I say a few words, your Honor?

THE COURT:  Yes.

MR. GELBLUM:  It's not actually FOIA itself.  It's just the way that it says develop.  I think -- I just have one Ninth Circuit opinion.  It's <u>Lane v. DOI</u>.  It's a 2008 opinion that says courts routinely delay discovery until after summary judgment in FOIA and Privacy Act cases.

We're actually prepared to move for summary judgment relatively quickly.  And in a way, I think a summary judgment would be somewhat analogous -- in the context to what our initial disclosures would be in the discovery context.

I think the reason courts usually have -- the way the -- when the argument is over production, it sort of seems overkill to require production about the production.

13

1  This is -- although this is a different type of FOIA
2  dispute, it's almost analogous to an e-discovery dispute.
3  And I would think the same reason would apply to find this a
4  discovery dispute.  One doesn't initially start by doing
5  discovery about the e-discovery.
6          THE COURT:  So you may be -- what is the cite for
7  <u>Lane</u>?
8          MR. BURKE:  I have a copy, if the Court would
9  like.
10         THE COURT:  <u>Lane</u> as well as <u>Skutter</u>?
11         MR. BURKE:  Yes.  No, not of <u>Lane</u>.
12         THE COURT:  Which one is --
13         MR. GELBLUM:  <u>Lane v. DOI</u>.  It's 523 Federal 3rd
14 1128.  Oh, one other thing about the <u>Skutter</u> opinion.  Mr.
15 Burke is correct that the discovery was ordered after the
16 court denied summary judgment.  That was a case from the
17 District Court in D.C., which actually has a -- rule that
18 has codified this -- that says no discovery in FOIA actions.
19         THE COURT:  A lot of them.
20     So let's -- how quickly do you think you would be
21 getting your motion for summary judgment on file?
22         MR. GELBLUM:  Your Honor, I think we can do it
23 by -- they told me July 21 or 23, so perhaps I should say 22
24 to be safe.
25         THE COURT:  File one.

1          MR. GELBLUM:  Yes.
2          THE COURT:  Filing of about a month.  Okay.  So
3 maybe the thing to do is -- I'll take a look at these cases,
4 but assuming -- let's just assume that you should file.  And
5 then under the summary judgment rules, if -- Mr. Burke, do
6 you want to make an argument that you need discovery for
7 some reason and you think these cases support that, we can
8 deal with it at that time.  We can -- you could respond that
9 way.
10     And if that's what you're going to do, why don't you
11 send me a joint five-page letter within, you know, a couple
12 of weeks of receiving -- I guess within a week of receiving
13 the motion.
14          MR. BURKE:  Would that be in lieu of any motion?
15          THE COURT:  In lieu of a motion, yes.  So just
16 send me a letter and say, we want -- we think we ought to
17 have discovery because this is how this case is shaking out,
18 and these things -- we need to know before we respond.  And
19 then I can take a look at that at that time, and it will be
20 more fully joined.
21          MR. BURKE:  Your Honor, I am thrilled to know that
22 the Government is ready to file a motion for summary
23 judgment.  And I had anticipated that we might talk about a
24 briefing schedule on that.  And if the operative first date
25 is -- because ideally, I think for efficiency and for the

15

1 Court's benefit, they ought to be cross-motions --
2 oppositions and cross-motions.  But if the Government wants
3 to file first on the 22nd, I would suggest that for
4 efficiencies, we build in any period of time with respect to
5 opposition, the potential need for discovery.
6      Because I don't -- I would have wanted to at least try
7 and address the discovery issue before the filing.  I mean,
8 I don't know that we need it, but I don't know what their
9 arguments are any more than I had anticipated a motion to
10 dismiss.
11          THE COURT:  Well, so if the Government files
12 around July 22nd, are you ready to file on July 22nd or do
13 you want --
14          MR. BURKE:  I am not in a position -- I will not
15 be in a position to file on the 22nd.  However, we could
16 certainly most likely be in a position to file a cross-
17 motion in opposition at a later date sometime in August.
18          THE COURT:  Why don't we give --
19          MR. BURKE:  If we could agree to a briefing
20 schedule and come back to the court.
21          THE COURT:  Do you want to do that?
22          MR. BURKE:  That might save you time.
23          THE COURT:  That would be fine by me.  Give
24 yourself enough time to have the discovery issue considered,
25 if that's a real issue.  But it may just be -- you may be

16

1  right about the initial disclosures, Mr. Gelblum.  You might
2  end up having enough to just proceed and decide it that way.
3      So give yourself enough time to consider that.  And why
4  don't you give me a proposed schedule in the next 10 days.
5          MR. BURKE:  That's fine.  Your Honor, is there a
6  vacation schedule that the Court has in August or dates that
7  we should be aware of?
8          THE COURT:  There is one.  It's in July.  So I
9  will be anxiously awaiting your -- the conclusion of your
10 briefing, whatever you decide to --
11         MR. BURKE:  Reading, your Honor.
12         THE COURT:  -- finish it.  Okay.
13     Is there anything else that we ought to talk about
14 today?  Okay.  Thanks very much for coming.
15         MR. BURKE:  Your Honor, may I leave this with you?
16     (Proceedings adjourned at 2:18 p.m.)

*Echo Reporting, Inc.*

17

1          CERTIFICATE OF TRANSCRIBER

2

3     I certify that the foregoing is a true and correct
4 transcript, to the best of my ability, of the above pages of
5 the official electronic sound recording provided to me by
6 the U.S. District Court, Northern District of California, of
7 the proceedings taken on the date and time previously stated
8 in the above matter.
9     I further certify that I am neither counsel for,
10 related to, nor employed by any of the parties to the action
11 in which this hearing was taken; and, further, that I am not
12 financially nor otherwise interested in the outcome of the
13 action.

14          *[signature]*

15

16          Echo Reporting, Inc., Transcriber

17          Thursday, April 2, 2015