THOMAS R. BURKE (CA State Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:     (415) 276-6500
Facsimile:      (415) 276-6599
Email:            thomasburke@dwt.com

RONALD G. LONDON (Pro Hac Vice)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
Telephone: (202) 973-4200
Email: ronnielondon@dwt.com

DAN LAIDMAN (CA State Bar No. 274482)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA  90017-2566
Telephone:     (213) 633-6800
Email:            danlaidman@dwt.com

Attorneys for Plaintiff Public.Resource.Org

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PUBLIC.RESOURCE.ORG, a California non-profit organization,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES INTERNAL REVENUE SERVICE,<br><br>　　　　　　Defendant. | Case No. 13-cv-02789 WHO<br><br>**DECLARATION OF THOMAS R. BURKE IN SUPPORT OF PLAINTIFF PUBLIC.RESOURCE.ORG'S MOTION FOR ATTORNEY'S FEES AND COSTS** |

I, Thomas R. Burke, state:

1. I am an attorney admitted to practice before all the courts in the State of California and before this Court. I am a partner in the law firm of Davis Wright Tremaine LLP and am one of the attorneys representing Plaintiff Public.Resource.Org ("PR.Org") in this matter. The matters stated herein are true of my own personal knowledge and could competently testify them if called as a witness. I make this declaration in support of PR.Org's Motion for Attorney's' Fees and Costs.

2. On multiple occasions, I sought to informally resolve the issue of PR.Org's attorneys' fees and costs with the IRS, to no avail. On January 29, 2015, I wrote to Mr. Christopher Sanders, IRS' counsel, to request a brief extension of the deadline to file a fees request and I inquired when the agency would be in a position to discuss the payment of PR.Org's fees. Mr. Sanders agreed to this request. On March 20, 2015, I provided Mr. Sanders with a detailed spreadsheet detailing the fees that PR.Org had incurred in this litigation to that point. On April 9, 2015, in an email, Mr. Sanders informed me that "[w]e will not be able to agree to the full amount of the fees you requested, but I am still trying to get authorization regarding a number that we might agree to. One of the individuals involved is out of the office, but I believe will be back either Friday or Monday." On April 17, Mr. Sanders provided a further update: With respect to attorney's fees, I am still working on getting authority to negotiate a number. I'm sorry that I don't have anything for you yet." I never heard back from Mr. Sanders about the agency's position on PR.Org's fees request. Over the next several months, further extensions of time were stipulated to by Mr. Sanders and myself and approved by the Court and meantime, the IRS filed a protective appeal with the Ninth Circuit. On May 1, 2015, the IRS requested permission to delay by a week, the records that this Court had ordered to be disclosed because no final decision on whether to continue to pursue the appeal had then been made by the U.S. Solicitor General. In response, and with the hope that the IRS could be prompted into discussing the issue of fees, I wrote to Mr. Sanders that day and responded: "This is frustrating, particularly with absolutely no response either on fees. I will ask my client, but I can make no promises at this point." Ultimately, the IRS filed a motion to delay release of the records while awaiting the decision of

1
DECLARATION OF THOMAS R. BURKE ISO MOTION FOR ATTORNEY'S FEES AND COSTS
Case No. 13-cv-02789-WHO

the U.S. Solicitor General.  On June 4, 2015, the IRS announced that it would abandon its appeal in the Ninth Circuit.  On this occasion, I inquired with IRS' appellate counsel about the IRS' willingness to discuss PR.Org's fees demand and was told that "those inquiries should be directed to Mr. Sanders."  Still hearing nothing from the IRS, on June 16, 2015, I wrote the following email to Mr. Sanders:  "Chris:  Now that the IRS has decided not to pursue its appeal in this FOIA matter, we'd like to finish all work on this matter.  Yet, to date, we've heard nothing from the agency regarding PR.Org's outstanding fees and costs demand.  Despite making repeated requests for a response from the agency over the last several months, from our perspective, nothing has happened.  I appreciate that you are likely just the messenger, but given the Agency's consistent non-response, we plan to move things along.  Although the Court recently extended the deadline for filing this motion, please be aware that PR.Org now intends to file its motion for fees and costs by mid-July.  If the agency wishes to resolve this matter before this filing, please let me know.  Otherwise, we'll proceed as outlined. Thank you."  As of the date of this filing, I have heard nothing further from Mr. Sanders or anyone representing the IRS regarding PR.Org's fees request.

3. As background, since graduation from law school, my practice has focused on media law and First Amendment litigation matters.  I majored in journalism at Arizona State University, where I graduated *magna cum laude* in 1984.  During law school I was an extern clerk for the Honorable Marilyn Hall Patel of the U.S. District Court for the Northern District of California.  I graduated *magna cum laude* in 1989 from the University of San Francisco School of Law and have been in private practice in the Bay Area ever since.  I began my law practice as an associate with the law firm of Crosby, Heafey, Roach & May in Oakland, California where I was the primary "outside" newsroom counsel for several daily newspapers including Bob Maynard's *Oakland Tribune*.  I joined Davis Wright Tremaine LLP in December of 1996, and became a partner of the firm in 1999.  In 2002, I became a Lecturer in Media Law at the Graduate School of Journalism at the University of California, Berkeley; I am now a Continuing Lecturer with the University.  Since 1990, I have served as a legal advisor to the First Amendment Coalition, a non-profit organization dedicated to ensuring, among other things, the public's right of access to public

records and government meetings.  I am also outside legal counsel to the Center for Investigative Reporting in Berkeley.  Among other publications, I co-edited *The Right to Know:  A Guide to Public Access and Media Law* (2007 CNPA) as well as earlier editions of CNPA's *Reporter's Handbook on Media Law*, publications routinely used by journalists in California.  In 2013, I authored *Anti-SLAPP Litigation* for The Rutter Group's Civil Litigation Series (which is supplemented annually) and I am a Contributing Editor to Weil & Brown, *Cal. Practice Guide: Civil Procedure Before Trial* (The Rutter Group 2014-present) (Anti-SLAPP Motions).  For well over the past decade, my media and First Amendment practice has been acknowledged through annual listings in *Chambers*, *Best Lawyers in America* and *Super Lawyers*, among others.  My complete bio is available online at http://www.dwt.com/people/thomasrburke/.

4. Since graduating from law school, I have regularly counseled clients and represented journalists, citizens, media companies and other clients in public records act litigation matters in the state and federal courts.  I co-authored Proposition G, an initiative enacted by the voters of San Francisco in 1999 to reform the City's landmark Sunshine Ordinance, which provides for greater rights of access to public records and government meetings within the City and County of San Francisco.  My representative public records litigation experience includes: *Williams v. Superior Court* (1993) 5 Cal. 4th 337 (1993) (CPRA lawsuit involving access to disciplinary records of law enforcement officers involved in the botched execution of a search warrant); *Bakersfield City School District v. Superior Court* (2004) 118 Cal. App. 4th 1041 (establishing CPRA right of access to complaints of misconduct by public employees); *Gordon v. FBI*, 388 F. Supp. 2d 1028 (N.D. Cal. 2004); 390 F. Supp. 2d 897 (N.D. Cal. 2005) (FOIA lawsuit that compelled the FBI and TSA to publicly release previously secret documents about the federal government's expanded use of the "no fly" and "selectee" lists to screen airline passengers after September 11th); *Berman v. CIA*, 501 F.3d 1136 (9th Cir. 2007) (representation of Vietnam war historian in FOIA litigation involving access to historic President Daily Intelligence briefings); *International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Alameda County* (2007) 42 Cal. 4th 319 (amici brief on behalf of the Coalition of University Employees in support of the public's right of access to the salaries paid to California's public

employees); *Lawyer's Committee of the San Francisco Bay Area v. U.S. Treasury*, 534 F. Supp.2d 1126 (N.D. Cal. 2008) (FOIA lawsuit that disclosed documents showing that individuals were falsely listed on the federal government's public terrorist watch list); *In re Adams County Historical Society v. Kinyoun* (2009) 277 Neb. 749 (unanimous opinion by the Nebraska Supreme Court establishing that the names of 1,600 former residents buried anonymously between 1890 and 1959 at the Hastings Regional Center, the state's largest mental health cemetery, are public under Nebraska's Public Records Act); *The Press Democrat v. Sonoma County Employees' Retirement Association* (2011) 198 Cal. App. 4th 986 (CPRA lawsuit to secure public access to the names and pensions paid to Sonoma County government retirees); *Sacramento County Employees' Retirement System v. Superior Court* (2011) 195 Cal. App. 4th (amici brief in support of the public's right of access to the names and pensions paid to Sacramento County government retirees); *Marken v. Santa Monica-Malibu Unified School District* (2012) 202 Cal. App. 4th 1250 (applying *Bakersfield City School District* and upholding the public's right of access to records of a high school teacher disciplined for misconduct); *The Los Angeles Times v. The Regents of the University of California* (CPRA lawsuit to compel public disclosure of the names of all UC Davis police officers involved in the pepper spraying of students protesting tuition increases at UC Davis); *Martins v. USCIS,* 962 F. Supp.2d (N.D. Cal. 2013) (obtaining preliminary injunction in FOIA action that led to a nationwide settlement in which the federal government agreed to no longer categorically withhold asylum officer interview notes from individuals seeking asylum in the U.S. and associated training); *Los Angeles Times Communications LLC and The McClatchy Company DBA The Sacramento Bee v. University of California Board of Regents, (*Alameda County Superior Court Case No. RG12-632350) (successful CPRA lawsuit to compel the disclosure of the names of all UC Davis police officers involved in the pepper spraying of protesters on the UC Davis campus in November of 2011); *ProPublica v. FEMA* (FOIA lawsuit filed in the S.D.N.Y. that compelled FEMA to disclose documentation of its distribution of billions of dollars of federal relief funds after Hurricane Sandy) and *First Amendment Coalition v. DOJ* (currently on appeal in the Ninth Circuit) (FOIA lawsuit to compel the U.S. Justice

1  Department to disclosure its legal memoranda concerning the legality of the lethal targeting of

2  U.S. citizens overseas who are believed to be terrorists).

3       5.     PR.Org not only prevailed in this litigation and secured the release of nine

4  previously withheld Form 990s – in Machine Readable format – this FOIA litigation also

5  produced two valuable published opinions from this Court (50 F.Supp.3d 1212 (N.D. Cal. 2014)

6  (denying IRS' motion to dismiss); ___ F. Supp.3d ___, 2015 WL 393736, (N.D. Cal. 2015)

7  (granting PR.Org's summary judgment motion)) addressing the novel issue of the public's right of

8  access through FOIA to documents retained by the federal government in various formats.  On

9  June 30, 2015, the IRS issued a press release in which it acknowledged the significance of this

10 Court's summary judgment ruling and the agency's plans to make the Forms 990 in a Machine

11 Readable format:

**IRS works towards making e-filed Forms 990 available in machine-readable format.**

The IRS has been actively considering the district court's ruling in the Public.Resource.Org case, where the district court ordered the IRS to produce electronic versions of the publicly available portions of nine exempt organization returns (Forms 990) in MEF, Metadata Exchange Format (or machine-readable format).  Machine-readable is not a format that the IRS has historically used to make Forms 990 available. The IRS did produce the Forms 990, but those forms were manually processed in order to comply with the court's ruling.

The IRS has been actively considering how to incorporate new technology into its exempt organization return processing capabilities in order to better support the exempt organizations and those who use the Forms 990 data.  The IRS has made substantial progress in developing a technology solution that, when perfected, will allow the IRS to provide electronically-filed Forms 990 in a machine-readable format. This solution will ensure that sensitive or personally identifiable information continues to be protected from public distribution.  The IRS expects that this technology solution should be in place in early 2016.

Currently, when the IRS distributes Forms 990 series information under section 6104 or the FOIA, it includes all information and documents (other than information that must be restricted under section 6103 or is PII) submitted by the exempt organization. When the IRS begins to provide the e-filed Form 990 data in machine-readable format, as described above, it will stop including extraneous information provided by exempt organizations when they file their Forms 990 series. Extraneous information includes information that is not required by the Forms 990 series and related schedules.

###

Matt Leas
IRS National Media Relations
202-317-4000

6. To prepare this declaration, I personally reviewed each of the time entries that were contemporaneously recorded by DWT lawyers, paralegals and librarians working with me on this litigation. Attached as Exhibit A is a true and correct copy of the time entries billed by DWT in this litigation for which PR.Org now seeks reimbursement. Of the 458 total hours billed by DWT timekeepers in this litigation, 407.4 hours were billed by three DWT attorneys: Thomas R. Burke, Ronald L. London, Daniel A. Laidman. Mr. London is Of Counsel in DWT's Washington, D.C. office. Mr. London is a 1995 graduate of Georgetown University Law Center and has extensive experience in FOIA litigation. Mr. London's complete biography is available at www.dwt.com/people/ronaldglondon/. Mr. Laidman is an associate in the firm's Los Angeles office. Mr. Laidman is a 2010 graduate of UCLA School of Law and is regularly involved in public records litigation in California. Mr. Laidman's biography is available at www.dwt.com/people/danlaidman/. Others at the firm who also assisted with discrete issues in this litigation include: Kathleen Cullinan (a 2012 Yale Law School graduate; Alexis Liistro (a 2009 New England School of Law graduate); and Jason Callan and Bret Masterson (librarians with the firm). In the exercise of judgment, I removed any billing entries that were even potentially duplicative or unnecessary to achieve the favorable results for PR.Org. During this process, I eliminated or reduced the time associated with various tasks. Several of the entries that that I excluded included time associated with reviewing and revising drafts of briefing, time associated with the scheduling (and rescheduling) of hearings in this matter, conferences between counsel, reviewing new appellate decisions and updating colleagues about their use in this litigation and preparation time for the court hearings in this case. Messrs. London and Laidman and I worked very efficiently together, carrying out specific roles so as to avoid any duplication of effort. The contemporaneous time entries for us reflect this division of labor. PR.Org's fees request also does not include the hundreds of hours of time incurred by Carl Malamud, the Executive Director of PR.Org, who, among other things, closely worked with me to locate witnesses and to draft and finalize the extensive declarations that PR.Org submitted in support of its successful motion for summary judgment. Finally, PR.Org is also not seeking reimbursement for the services of my highly skilled legal secretary Natasha Majorko, who has over 29 years of

DAVIS WRIGHT TREMAINE LLP

6
DECLARATION OF THOMAS R. BURKE ISO MOTION FOR ATTORNEY'S FEES AND COSTS
Case No. 13-cv-02789-WHO

1 experience in organizing and filing litigation pleadings in California's trial and appellate courts
2 who personally spent dozens of hours assisting me as a paralegal on this case.

3     7.    The rates requested by PR.Org in this motion are charged at various rates for the
4 value of the professional services provided by DWT personnel during this three year litigation.
5 Based on my experience and familiarity with the hourly rates charged by experienced Public
6 Records Act practitioners in the Bay Area, and consistent with the concurrently filed declaration
7 of Karl Olson, the hourly rates charged are considerably less than the prevailing market rates for
8 lawyers with similar experience in the San Francisco Bay Area.  Moreover, the billing rates of
9 $585, $620 and $645 (for the years 2013-2015 respectively) for me, and $515, $540 and $565 for
10 my colleague Mr. London and $330, $355 and $395 for my colleague Mr. Laidman are also
11 comfortably within the market rates for these experienced public records litigation lawyers, if not
12 below the market rate during this relevant period.  The other hourly rates charged for the other
13 DWT personnel who assisted with discrete tasks during the course of this litigation reflect the
14 standard hourly rates that the firm regularly charges for the value of these individuals' professional
15 services.  I am the Co-Chair of my law firm's national media law practice and in this management
16 capacity I am very familiar with the hourly billing rates charged by attorneys of varying degrees of
17 experience in the San Francisco Bay Area and California, particularly the rates charged by
18 attorneys who specialize in public records litigation.  For example, earlier this year, in *Los Angeles*
19 *Times Communications LLC and The McClatchy Company DBA The Sacramento Bee v.*
20 *University of California Board of Regents,* in 2015, my firm was awarded $233,225 in attorneys'
21 fees including (nearly $80,000 in "fees on fees") after successfully prevailing in that CPRA
22 litigation.  The hourly billing rates charged by DWT in that litigation (including my own hourly
23 rates) mirror the hourly rates sought in this fees motion.  In *Martins v. INS*, a Freedom of
24 Information Act lawsuit that I personally handled along with co-counsel with the Lawyers
25 Committee for Civil Rights of the San Francisco Bay Area, the federal government paid $250,000
26 to settle this matter in late 2013 using the same hourly billing rates for me.  In Brown Act and
27 Public Records litigation on behalf of *The Los Angeles Times*, our client was paid over $344,000
28 for the value of our professional services in a 2013 settlement.  In *The Press Democrat v. Sonoma*

DAVIS WRIGHT TREMAINE LLP

7
DECLARATION OF THOMAS R. BURKE ISO MOTION FOR ATTORNEY'S FEES AND COSTS
Case No. 13-cv-02789-WHO

*County Employees' Retirement Association* (2011) 198 Cal. App. 4th 986, my firm was paid $93,516.50 in a settlement with the Sonoma County Employees' Retirement Association in connection with the victory that *The Press Democrat* achieved in Public Records Act litigation that made public, pension information for all retired public employees in Sonoma County. That CPRA litigation was particularly streamlined involving only one substantive hearing in the trial court and, by stipulation of the parties, only one set of appellate briefs and there was no appellate argument. During litigation in 2003-2005 that I also personally handled, in *Gordon v. FBI*, my firm was paid $250,000 for the value of legal services (as lead counsel with the ACLU-NC) to settle FOIA litigation that was also limited to activity in the trial court regarding withheld documents involving the federal government's use of the "no fly" and "selectee" lists to screen airline passengers after 9/11. With these examples in mind along with the others noted by Mr. Olson, PR.Org's request for $219,535 for fees incurred to achieve this success for PR.Org and the greater public is entirely reasonable.

8.   In connection with this litigation, PR.Org also reasonably incurred costs of $1,272.46. An accounting of these costs (which consisted of filing fees, duplication, legal research (billed at cost) and delivery fees incurred in this litigation is attached as Exhibit B.

9.   To prepare this declaration, the declaration of Karl Olson, the accompanying memorandum of points and authorities, I anticipate that PR.Org will incur between $15,000 and $25,000 in additional "fees on fees" attorney's fees. I will provide a supplemental declaration in support of these fees as well as the fees incurred to prepare PR.Org's Reply when that pleading is filed.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed this 19th day of July, 2015, in Albany, California.

                                              /s/ Thomas R. Burke
                                              THOMAS R. BURKE

DAVIS WRIGHT TREMAINE LLP