1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7   PUBLIC.RESOURCE.ORG,                    Case No.  13-cv-02789-WHO

        Plaintiff,
8                                           **ORDER ON MOTION FOR**
            v.                              **ATTORNEY'S FEES**
9
                                            Re: Dkt. Nos. 91, 95
   UNITED STATES INTERNAL REVENUE
10  SERVICE,

        Defendant.
11

12                               **INTRODUCTION**

13          Having prevailed in this Freedom of Information Act ("FOIA") action seeking to compel

14  the United States Internal Revenue Service ("IRS") to disclose the Form 990s for nine tax exempt

15  charitable organizations in Modernized E-File ("MeF") format, plaintiff Public.Resource.org

16  ("PRO") moves for an award of attorney's fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E).

17  PRO seeks to recover a 1.5 multiplier on top of a lodestar of $244,322.50, plus $1,272.46 in costs.

18  PRO has established that it is eligible for and entitled to an award of attorney's fees in an amount

19  equal to nearly all of its lodestar, but it has not made the specific showing necessary to justify an

20  upward departure from that amount.  Accordingly, I will GRANT the motion for attorney's fees

21  but reduce the award to $238,125.62, plus $1,272.46 in costs.

22                               **BACKGROUND**

23          PRO is a nonprofit organization whose mission includes the facilitation of greater public

24  access to government records and information.  *See* Compl. ¶¶ 10, 13 (Dkt. No. 1).  On March 11,

25  2013, PRO submitted a FOIA request to the IRS seeking the disclosure in Modernized E-File

26  ("MeF") format of the Form 990s for nine tax exempt charitable organizations.  *Id.* ¶ 45.  The IRS

27  denied the request, stating that its "existing process for providing releasable copies of [a Form

28  990] is to convert the MeF data into a PDF format and withhold confidential return information

United States District Court
Northern District of California

1    from the resulting form.  The IRS does not have an existing process to convert the releasable

2    portion of [a] Form 990 back into MeF (or other machine readable) format." *Id.* ¶¶ 46-51, Ex. I.

3         PRO initiated this action on June 18, 2013 to compel disclosure of the nine Form 990s in

4    MeF format.  *See, e.g., id.* ¶ 2.  On January 29, 2015, I issued an order granting PRO's motion for

5    summary judgment, denying the IRS's cross motion for summary judgment, and ordering the IRS

6    to produce the requested Form 990s in MeF format within 60 days.  Dkt. No. 62 ("Summary

7    Judgment Order").  PRO filed this motion for attorney's fees on July 29, 2015.  Dkt. No. 91

8    ("Mot.").  Pursuant to Civil Local Rule 7-1(b), I determined that the motion was appropriate for

9    determination without oral argument and vacated the hearing.  Dkt. No. 96.

10                                      **LEGAL STANDARD**

11        FOIA requires federal agencies to release all non-exempt agency records responsive to a

12   request for production.  5 U.S.C. § 552(a)(3)(A).  An agency must "provide the record in any form

13   or format requested by the person if the record is readily reproducible by the agency in that form

14   or format."  5 U.S.C. § 552(a)(3)(B).  Federal agencies are also required to "make reasonable

15   efforts to maintain [their] records in forms or formats that are reproducible for purposes of this

16   section."  *Id.*  A court should accord "substantial weight" to "an affidavit of an agency concerning

17   the agency's determination as to . . . reproducibility."  5 U.S.C. § 552(a)(4)(B).  However, this

18   deference "does not amount to a blanket exemption from judicial review of the agency's

19   justification for declining to comply with a specific format request."  *Scudder v. Cent. Intelligence

20   Agency*, 25 F. Supp. 3d 19, 39 (D.D.C. 2014).  The Ninth Circuit has stated that "[w]hen an

21   agency already creates or converts documents in a certain format[,] . . . requiring that it provide

22   documents in that format to others does not impose an unnecessarily harsh burden, absent specific,

23   compelling evidence as to significant interference or burden."  *TPS, Inc. v. U.S. Dep't of Def.*, 330

24   F.3d 1191, 1195 (9th Cir. 2003).

25        FOIA authorizes courts to "assess against the United States reasonable attorney fees and

26   other litigation costs reasonably incurred in any case under this section in which the complainant

27   has substantially prevailed."  5 U.S.C. § 552(a)(4)(E).  This provision "has as its fundamental

28   purpose the facilitation of citizen access to the courts to vindicate the public's statutory rights," as

United States District Court
Northern District of California

the fees and costs of bringing suit could otherwise "present a virtually insurmountable barrier

which [would] ba[r] the average person from forcing governmental compliance with the law."

*Exner v. F.B.I.*, 443 F. Supp. 1349, 1352 (S.D. Cal. 1978).

A court may grant an award of attorney's fees under 5 U.S.C. § 552(a)(4)(E) where the

plaintiff establishes that it is both eligible for and entitled to an award.  *See Church of Scientology

of California v. U.S. Postal Serv.*, 700 F.2d 486, 489 (9th Cir. 1983); *Rosenfeld v. U.S. Dep't of

Justice*, 903 F. Supp. 2d 859, 865 (N.D. Cal. 2012).  To be eligible for an award, the plaintiff must

show that "(1) the filing of the action could reasonably have been regarded as *necessary* to obtain

the information; and (2) the filing of the action had a *substantial causative* effect on the delivery

of the information." *Church of Scientology*, 700 F.2d at 489 (emphasis in original).

If the court determines that the plaintiff is *eligible* for attorney's fees, the court may then,

"in the exercise of its discretion, determine that [it] is *entitled*  to an award of attorney's fees." *Id.*

at 492 (emphasis in original).  In making this determination, courts consider "(1) the benefit to the

public, if any, deriving from the case; (2) the commercial benefit to the complainant; (3) the nature

of the complainant's interest in the records sought; and (4) whether the government's withholding

of the records sought had a reasonable basis in law." *Id.*; *accord Long v. U.S. I.R.S.*, 932 F.2d

1309, 1313 (9th Cir. 1991).  "These four criteria are not exhaustive, however, and the court may

take into consideration whatever factors it deems relevant in determining whether an award of

attorney's fees is appropriate." *Long*, 932 F.2d at 1313 (internal quotation marks omitted).  Once

eligibility is established, "[t]he decision to award attorney's fees is left to the sound discretion of

the trial court." *Church of Scientology*, 700 F.2d at 492.

## DISCUSSION

## I.     ELIGIBILITY FOR AND ENTITLEMENT TO ATTORNEY'S FEES

### A.     Eligibility

The IRS concedes in its opposition brief that PRO is eligible for attorney's fees under 5

U.S.C. § 552(a)(4)(E).  *See* Opp. at 2 n.2 (Dkt. No. 92).  I agree with the parties that the filing of

this action could have been reasonably regarded as necessary to obtain the requested Form 990s in

MeF format, and that the action had a substantial causative effect on the ultimate delivery of those

3

records.  The eligibility requirement is satisfied.  *See Church of Scientology*, 700 F.2d at 489.

> **B.**     **Entitlement**

As stated above, factors relevant to whether a prevailing plaintiff is entitled to attorney's fees include "(1) the benefit to the public, if any, deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records sought had a reasonable basis in law." *Church of Scientology*, 700 F.2d at 489.  Here, the public benefit, commercial benefit, and complainant's interest factors all strongly favor PRO, the reasonable basis in law factor is neutral at best, and there are no other relevant factors that cut against an award.  PRO is entitled to attorney's fees.

> **1.**     **Public Benefit**

In considering the public benefit factor, courts consider "the degree of dissemination and the likely public impact that might result from disclosure."  *Church of Scientology*, 700 F.2d at 493.  The factor generally weighs in favor of an award where the information is broadly disseminated to the public.  *See, e.g., Electronic Frontier Foundation v. Office of Dir. of Nat. Intelligence*, No. 07-cv-05278-SI, 2008 WL 2331959, at *3 (N.D. Cal. June 4, 2008) (finding that the public benefit factor was satisfied where the plaintiff "immediately posted the requested information on its website" and "created press releases for public access").  Even where the degree of dissemination is limited, or where the level of public interest in the requested information itself is minimal, the public benefit factor may still favor an award "as long as there is a public benefit from the fact of . . . disclosure."  *O'Neill, Lysaght & Sun v. D.E.A.*, 951 F. Supp. 1413, 1423 (C.D. Cal. 1996).  Courts in this circuit have found a public benefit favoring an award, despite an absence of broad dissemination or a significant level of public interest in the requested information, where (1) the case "establishe[d] that the government may not withhold certain information pursuant to a particular FOIA exemption," *Church of Scientology*, 700 F.2d at 493; (2) the plaintiffs were environmental nonprofits whose purpose was "to oversee and enforce compliance with the [Clean Air Act]" and the requested information was "being used to inform [the plaintiffs'] ongoing oversight and enforcement efforts," *The Sierra Club v. United States*

*Envtl. Prot. Agency*, 75 F. Supp. 3d 1125, 1143-44 (N.D. Cal. 2014); and (3) the requested documents revealed a "long history of abuse" by a paid DEA informant and "expos[ed] the implications of the government dealing with untrustworthy paid informants," *O'Neill*, 951 F. Supp. at 1423-24.

The public interest factor weighs strongly in favor of an award here.  PRO is a nonprofit organization whose mission includes the facilitation of greater public access to government records and information.  *See* Compl. ¶¶ 10, 13.  Following the judgment in this case, the IRS announced in a press release that it is "developing a technology solution that, when perfected, will allow the IRS to provide electronically-filed Forms 990 in a machine-readable format."  Burke Decl. ¶ 5 (Dkt. No. 91-1).  The IRS expects that the technology solution will be in place by early 2016.  *Id.*  Disclosure of Form 990s in machine-readable format will make it easier for PRO and other entities to access and analyze the information within those documents.  *See, e.g.,* Malumud Decl. ¶ 33 (Dkt. No. 48) (discussing benefits of MeF format, including that "[i]f information were available in MeF format, much more useful search capabilities would be possible"); Noveck Decl. ¶ 9 (Dkt. No. 49) (noting that disclosure of Form 990s in MeF format "could enable researchers and law enforcement to recognize fraud early, anticipate abuses, and target enforcement more efficiently and effectively").  Enhanced access to and analysis of that information is clearly beneficial to the public.

The IRS responds by focusing on the "limited nature" of the disclosed records (i.e., only nine Form 990s) and the availability of the tax returns in other electronic formats.  *See* Opp. at 6-8. According to the IRS, "[t]he public benefit from production of [the nine Form 990s] in MeF format is . . . marginal because much of the information could have already been made public through alternative means."  *Id.* at 7.  This argument unduly minimizes the demonstrated benefits of MeF over the electronic formats previously employed by the IRS, as well as the agency's current plan to begin disclosing Form 990s in machine-readable format as a rule.

Each of the cases cited by the IRS is distinguishable.  In both *Cotton v. Heyman*, 63 F.3d 1115 (D.C. Cir. 1995), and *Dorsen v. United States Sec. & Exch. Comm'n*, 15 F. Supp. 3d 112 (D.D.C. 2014), the requestors sought the disclosed information for the purpose of furthering their

United States District Court
Northern District of California

5

own private interests in separate lawsuits they were either prosecuting or defending against. *See Cotton*, 63 F.3d at 1120 (reversing grant of attorney's fees where the plaintiff sought the released documents "for the sole purpose of facilitating her employment discrimination suit"); *Dorsen*, 15 F. Supp. 3d at 121-22 (characterizing the public benefit factor as neutral where the disclosed information was "not a matter of significant . . . public concern" and was "primarily relevant to [the requestor's] attempt to vacate the civil judgment against him"); *see also Bangor Hydro-Elec. Co. v. U.S. Dep't of Interior*, 903 F. Supp. 169, 172 (D. Me. 1995) (denying motion for attorney's fees where "both the benefit deriving from this action as well as the nature of plaintiff's interest in this action are primarily commercial and will largely accrue to plaintiff"). That is not the situation here.

*Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092 (D.C. Cir. 1992), involved a legal magazine publisher seeking disclosure of publicly available district court opinions for the purpose of more quickly including them in its "Tax Notes" and "Tax Notes Today" publications, which the publisher provided to its paying subscribers. *See id.* at 1093-94; *see also Tax Analysts v. U.S. Dep't of Justice*, 643 F. Supp. 740, 741 (D.D.C. 1986). PRO, on the other hand, has identified significant benefits to the disclosure of Form 990s in MeF format beyond simply obtaining information sooner, and, moreover, PRO does not charge for the information it makes available.

Finally, in contrast with *Chesapeake Bay Found., Inc. v. Dep't of Agric.*, 108 F.3d 375 (D.C. Cir. 1997), this is not a case where there is only an insubstantial difference between the government's pre-litigation position and the ultimate outcome of the proceedings. *See id.* at 377-78 (finding "no public benefit to the litigation" where "[t]he only difference between [the government's] pre-litigation offer and the district court's solution was that [the plaintiff] did not have to pay for postage under the latter – which is hardly a significant public benefit.").

The public interest factor strongly favors an award.

### 2. Commercial Benefit and Complainant's Interest

The second and third factors are "the commercial benefit to the complainant" and "the nature of the complainant's interest in the records sought." *Church of Scientology*, 700 F.2d at 492. Courts regularly consider these factors together. *See, e.g., id.* at 494; *Am. Small Bus. League*

*v. U.S. Small Bus. Admin.*, No. 08-cv-00829-MHP, 2009 WL 1011632, at *3 (N.D. Cal. Apr. 15, 2009); *Electronic Frontier Foundation*, 2008 WL 2331959, at *3.

As a general matter, if a "commercial benefit will inure to the plaintiff from the information," or if the plaintiff "intends to protect a private interest" through the FOIA litigation, then "an award of attorney's fees is not recoverable." *Church of Scientology*, 700 F.2d at 494. On the other hand, where the plaintiff "is indigent or a nonprofit public interest group, an award of attorney's fees furthers the FOIA policy of expanding access to government information." *Id.* The Ninth Circuit has instructed that, pursuant to the second and third factors, a court "should generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-oriented," but should not do so "if his interest was of a frivolous or purely commercial nature." *Long*, 932 F.2d at 1316.

In line with these principles, PRO's status as a public-oriented nonprofit organization, and the lack of evidence of any private or commercial interest underlying its litigation of this case, strongly favor an award here. The IRS argues that the second and third factors "do not necessarily" favor an award, because PRO "has a powerful private motive to seek the production of MeF-formatted returns because they are operationally more convenient for it to process." Opp. at 8. But the cases the IRS cites for this argument are again distinguishable, as each involved a requestor that either charged its subscribers for the information obtained through the litigation or was otherwise clearly motivated by a commercial purpose in pursuing the litigation. *See, e.g., Klamath Water Users Protective Ass'n v. U.S. Dep't of the Interior*, 18 F. Appx. 473, 475 (9th Cir. 2001) (denying request for attorney's fees by a nonprofit association whose members were mostly nonprofit public entities, where the members "competed . . . for limited water resources," and the fact that that the members were not-for-profit "[did] not make the [association's] interest in advancing their claims to water to be sold to their customers less commercial for purposes of the FOIA); *Nat'l Sec. Archive v. U.S. Dep't of Def.*, 530 F. Supp. 2d 198, 203 (D.D.C. 2008) (denying motion for attorney's fees where the nonprofit plaintiff "had a powerful commercial and private motive to win the lawsuit," i.e., "to defeat the government's attempt to charge search fees in order to make [the plaintiff's] retrieval of FOIA documents as cheap as possible").

United States District Court
Northern District of California

1    Moreover, the government's apparent position – i.e., that a nonprofit organization's

2  interest in enhancing its ability to analyze government information constitutes a commercial

3  purpose that weighs against attorney's fees – would have the ironic effect of discouraging awards

4  in cases where the plaintiff is motivated by FOIA's "central purpose" of "ensur[ing] that the

5  government's activities [are] opened to the sharp eye of public scrutiny." *Favish v. Office of*

6  *Indep. Counsel*, 217 F.3d 1168, 1171 (9th Cir. 2000) (internal quotation marks omitted).  I am not

7  convinced that this would be an appropriate application of the test for entitlement to attorney's

8  fees under 5 U.S.C. § 552(a)(4)(E).  The second and third factors strongly favor PRO.

9      **3.**  **Reasonable Basis in Law**

10    The fourth factor looks to "whether the government's withholding had a reasonable basis

11  in law;" in other words, whether the government's actions appeared to have "a colorable basis in

12  law" or instead appeared to be carried out "merely to avoid embarrassment or to frustrate the

13  requester." *Church of Scientology*, 700 F.2d at 492, 492 n.6; *see also Rosenfeld*, 903 F. Supp. 2d

14  at 870; *Am. Small Bus. League*, 2009 WL 1011632, at *4.  This factor "is not dispositive" and can

15  be outweighed where the other relevant factors favor an award.  *Rosenfeld*, 903 F. Supp. 2d at 870

16  (internal quotation marks omitted); *see also O'Neill*, 951 F. Supp. at 1425 (noting that the

17  reasonable basis in law factor "in particular should not be considered dispositive").  The burden is

18  on the government to demonstrate that its withholding was reasonable.  *Sierra Club*, 75 F. Supp.

19  3d at 1145.

20    The IRS argues that this factors weighs against an award because there is no evidence that

21  it was "recalcitrant or obdurate," and because its position that the Form 990s were not readily

22  producible in MeF format was not "entirely without legal support."  Opp. at 4-6.  It emphasizes

23  that "[r]elatively few cases discuss the application of the . . . 'readily reproducible' requirement,"

24  *Scudder*, 25 F. Supp. 3d at 31, and that a court should accord "substantial weight" to "an affidavit

25  of an agency concerning the agency's determination as to . . . reproducibility," 5 U.S.C. §

26  552(a)(4)(B).

27    PRO responds that the relatively limited body of case law regarding the "readily

28  producible" requirement cannot in and of itself establish a colorable basis in law, as in some

8

instances an absence of case law merely indicates that "the position is so devoid of any merit [that] there is no need for the case law to have developed a precedent in [the] area." *Playboy Enterprises, Inc. v. U.S. Customs Serv.*, 959 F. Supp. 11, 17 (D.D.C. 1997) (granting request for attorney's fees despite government's argument that "there was no case law that . . . contradict[ed] [its] position"). PRO also points out that, at summary judgment, the IRS produced "no evidence that the general business of the IRS or even the business of the IRS employees tasked with responding to FOIA requests [would] be *significantly* burdened" by producing the requested Form 990s in MeF format. Summary Judgment Order at 6 (emphasis in original).

I agree with PRO that the IRS's position in this case was not as strong as the IRS contends. The IRS is correct that the readily reproducible requirement has not been heavily litigated, and that an agency's determination of reproducibility must be accorded "substantial weight" under 5 U.S.C. § 552(a)(4)(B). But neither of these circumstances "amount[s] to a blanket exemption from judicial review of [an] agency's justification for declining to comply with a specific format request." *Scudder*, 25 F. Supp. 3d at 39. Nor do they allow an agency to arbitrarily refuse to comply with a specific format request not to its liking. Here, despite the fact that Form 990s are electronically-filed and maintained by the IRS in MeF format, the IRS has continued to rely on the same method of disclosing Form 990s that has been in place for nearly 20 years. *See* Summary Judgment Order at 2. When it came time for the IRS to present evidence in support of its position, the evidence it offered fell far short of establishing the "significant interference or burden" necessary to justify its refusal to comply with PRO's request. *See id.* at 6; *TPS*, 330 F.3d at 1195. At best, the reasonable basis in law factor is neutral.

### 4.    Other Relevant Factors

In addition to the above four factors, a court may "take into consideration whatever factors it deems relevant in determining whether an award of attorney's fees is appropriate." *Long*, 932 F.2d at 1313 (internal quotation marks omitted). The IRS argues that equity weighs against an award in this case because it "was faced with the dual burden of reproducing the requested Form 990s in MeF format and abiding by the [Internal Revenue] Code's nondisclosure provisions," and because its "argument in this matter of first impression was that the required redactions could not

be performed to produce the MeF-formatted returns under existing processes without undue burden." Opp. at 8-9. According to the IRS, "[g]iven the colorable basis of [its] position, awarding fees to [PRO] would be punitive and would not serve the interests of justice." *Id.*

This argument is simply a reiteration of the IRS's argument that it had a reasonable basis in law for its refusal to produce the requested Form 990s in MeF format. Again, that factor is neutral at best, and in light of the other three factors, an award of attorney's fees is appropriate here. PRO is eligible for and entitled to attorney's fees.

## III.   REASONABLENESS OF THE AMOUNT REQUESTED

"[O]nce the court has determined that the plaintiff is both eligible for and entitled to recover fees, the award must be given and the only room for discretion concerns the reasonableness of the amount requested." *Long*, 932 F.2d at 1314. In making this determination, the court must scrutinize the reasonableness of (1) the hourly rates and (2) the number of hours claimed. *Id.* at 1313-14. "If these two figures are reasonable, then there is a strong presumption that their product, the lodestar figure, represents a reasonable award." *Id.* at 1314 (internal quotation marks omitted). Nevertheless, a court "may authorize an upward or downward adjustment from the lodestar figure if certain factors relating to the nature and difficulty of the case overcome this strong presumption and indicate that such an adjustment is necessary." *Id.*

The following tables summarize the hourly rates and number of hours claimed by PRO up until the instant motion:

United States District Court
Northern District of California

| 2013 | | | |
|---|---|---|---|
| **Timekeeper** | **Rate** | **Hours** | **Fees** |
| Thomas Burke | 585 | 75.6 | $44,226.00 |
| Jason J. Callan | 210 | 1.1 | $231.00 |
| Kathleen Cullinan | 290 | 12.3 | $3,567.00 |
| Dan Laidman | 330 | 28.9 | $9,537.00 |
| Alexis Liistro | 355 | 32.1 | $11,395.50 |
| Ronald G. London | 515 | 29.8 | $15,347.00 |
| Bret Masterson | 205 | 4.7 | $963.50 |
| | | | |
| 2013 TOTAL | | 184.5 | $85,267.00 |

| 2014 | | | |
|---|---|---|---|
| **Timekeeper** | **Rate** | **Hours** | **Fees** |
| Thomas Burke | 620 | 91.1 | $56,482.00 |
| Dan Laidman | 355 | 116.2 | $41,251.00 |
| Ronald G. London | 540 | 23.3 | $12,582.00 |
| | | | |
| 2014 TOTAL: | | 230.6 | $110,315.00 |

| 2015 | | | |
|---|---|---|---|
| **Timekeeper** | **Rate** | **Hours** | **Fees** |
| Thomas Burke | 645 | 26.1 | $16,834.50 |
| Dan Laidman | 395 | 12.3 | $4,858.50 |
| Ronald G. London | 565 | 4 | $2,260.00 |
| | | | |
| 2015 TOTAL : | | 42.4 | $23,953.00 |

| **GRAND TOTAL:** | | **457.5** | **$219,535.00** |
|---|---|---|---|

Mot. at 10.

In addition to the above, PRO seeks $24,787.50 in fees (for 58.7 hours) incurred in litigating this motion, making its total lodestar $244,322.50. Burke Supp. Decl. ¶¶ 3, 5, Ex. C (Dkt. Nos. 94-1, 94-2). It also asks for a multiplier of 1.5 times the lodestar figure "[b]ecause of the extent of its success and the importance of this action to the public." Mot. at 12. This brings the total request to $366,483.75 in attorney's fees, plus $1,272.46 in costs. *See, e.g.,* Reply at 13.

11

United States District Court
Northern District of California

1

**A.      Hourly Rates**

2      The IRS contends that PRO's requested hourly rates are excessive, and that I should

3   instead apply the hourly rates set forth in the *Laffey* matrix, a grid that "provides hourly rates for

4   attorneys of varying experience levels and paralegals/clerks in the Washington, D.C. metropolitan

5   area."  Opp. at 12; *see also Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir.

6   2010) ("[T]he *Laffey* matrix is an inflation adjusted grid of hourly rates for lawyers of varying

7   levels of experience in Washington, D.C.").

8      This argument is not convincing.  Hourly rates are reasonable where they are "in line with

9   those prevailing in the community for similar services by lawyers of reasonably comparable skill,

10   experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  "The relevant

11   community for purposes of determining the prevailing market rate is the forum in which the

12   district court sits."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (internal

13   quotation marks omitted).  In line with this general rule, the Ninth Circuit has questioned the

14   usefulness of the *Laffey* matrix for determining the reasonableness of hourly rates in the Northern

15   District of California, observing that "just because the *Laffey* matrix has been accepted in the

16   District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let

17   alone in a legal market 3,000 miles away."  *Prison Legal News*, 608 F.3d at 454; *see also*

18   *Rosenfeld*, 904 F. Supp. 2d at 1002-03 (declining to apply the *Laffey* matrix in a FOIA case

19   litigated in this district).  Absent some showing that the rates stated in the matrix are in line with

20   those prevailing in this community – a showing the IRS has not even attempted to make – I agree

21   with PRO that the matrix is not persuasive evidence of the reasonableness of its requested rates.

22      Apart from its reliance on the *Laffey* matrix, the IRS offers no argument or evidence

23   regarding the reasonableness of the rates sought by PRO.  Meanwhile, PRO presents considerable

24   evidence and case law indicating that the rates it requests are well within the range of those

25   charged by reasonably comparable attorneys doing reasonably comparable work within this

26   district.  *See* Burke Decl. ¶ 7; Olsen Decl. ¶ 5 (Dkt. No. 91-4); *see also Sierra Club*, 75 F. Supp.

27   3d at 1152-53 (approving hourly rates of $350 to $650 in FOIA action); *Rosenfeld*, 904 F. Supp.

28   2d at 1001, 1004 (approving hourly rates of $460, $550, and $700 in FOIA action); *Hajro v. U.S.*

1   *Citizenship & Immigration Servs.*, 900 F. Supp. 2d 1034, 1054 (N.D. Cal. 2012) (approving hourly

2   rates of $450 to $625 in FOIA action) *vacated and remanded on other grounds*, 2015 WL

3   6405473 (9th Cir. Oct. 23, 2015).  I am satisfied that its hourly rates are reasonable.

       **B.**       **Hours Expended**

5         The burden is on the party requesting fees to submit "detailed time records justifying the

6   hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210

7   (9th Cir. 1986).  "Hours that are not properly billed to one's client also are not properly billed to

8   one's adversary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (internal quotation marks

9   omitted).  Accordingly, a court should exclude from its lodestar calculation hours that are not

10   adequately documented or that were not reasonably expended because they were "excessive,

11   redundant, or otherwise unnecessary." *Id.* at 433-34.

12         The IRS objects to PRO's billing records on two grounds.  First, the IRS argues that "all

13   hours billed before May 1, 2013" should be excluded because "entries prior to this date do not

14   always appear to distinguish between work rendered at the administrative level, which is not

15   compensable under FOIA, and work performed in preparation for litigation, which is

16   compensable." Opp. at 10-11.  May 1, 2013 is the date on which the IRS denied PRO's  request

17   that the IRS reconsider its refusal to produce the Form 990s in MeF format.  *See* Compl. ¶¶ 47-49,

18   Ex. 1.  The IRS states that a total of 22.7 hours were billed before this date, totaling $9,616 in

19   attorney's fees.  Opp. at 10.

20         PRO counters that these hours "were [a] necessary part of this action because they all

21   relate to investigation and research that was required to file this action, and to build the record

22   necessary to litigate it."  Reply at 9.  PRO points out that the only offending time entries that the

23   IRS specifically identifies in its opposition brief account for time spent preparing the letter

24   requesting reconsideration that the IRS denied on May 1, 2013.  *Id.*; *see also* Burke Decl. Ex. A

25   (Dkt. No. 91-2) (time entries for 04/11/13 and 04/12/13); Compl. Ex. H (demand letter dated

26   04/12/13).  PRO highlights that the letter "discussed a potential lawsuit for failing to comply with

27   FOIA."  Reply at 9.

28         I agree with PRO that the 22.7 hours billed before May 1, 2013 are not per se

United States District Court
Northern District of California

United States District Court
Northern District of California

1   unrecoverable.  As a general matter, attorney's fees may be awarded for work that is "useful and

2   of a type ordinarily necessary to secure the final result obtained from the litigation." *Pennsylvania*

3   *v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986); *accord Nadarajah*

4   *v. Holder*, 569 F.3d 906, 923 (9th Cir. 2009); *Sierra Club v. U.S. E.P.A.*, 625 F. Supp. 2d 863, 869

5   (N.D. Cal. 2007).  As the IRS itself states in its opposition brief, this standard allows a plaintiff to

6   recover fees for "work performed in preparation for litigation."  Opp. at 10-11.  Accordingly, to

7   the extent that the IRS argues that the 22.7 hours billed before May 1, 2013 should be excluded

8   merely because they were billed before that date, the argument fails.  *See Rosenfeld*, 904 F. Supp.

9   2d at 1005 ("[G]eneralized allegations of unjustified billing not supported by specific citations to

10  evidence in the record are insufficient to warrant a reduction in the lodestar figure."); *Lucas v.*

11  *White*, 63 F. Supp. 2d 1046, 1057-58 (N.D. Cal. 1999) ("Conclusory and unsubstantiated

12  objections are not sufficient to warrant a reduction in fees.").[1, 2]

13          This leaves the entries from April 11 and 12, 2013 for time spent preparing the letter

14  requesting consideration.  However, given the clear overlap in subject matter between the letter

15  and this litigation, the letter's explicit contemplation of a lawsuit, and the proximity in time

16  between the letter and the filing of PRO's complaint on June 18, 2013, I am satisfied that time

17  spent preparing the letter fits within the scope of recoverable hours.  *Cf. Nw. Coal. for Alternatives*

18  *to Pesticides v. Browner*, 965 F. Supp. 59, 65 (D.D.C. 1997) (denying recovery for hours

19  expended "at least two years prior to the filing of the complaint" on the ground that "FOIA does

20  not authorize fees for work performed at the administrative stage").[3]

21          The IRS also objects to the 58.7 hours expended and the $24,787.50 in fees that PRO

22  _____

23  [1] Moreover, the bulk of the entries from before May 1, 2013 describe legal research and other
    work clearly connected to the litigation of this action.  *See* Burke Decl. Ex. A.

24  [2] The IRS's half-hearted argument that the lodestar figure should be reduced because PRO's time

25  entries "do not appear to always distinguish between its FOIA and APA claims," Opp. at 11, fails
    for the same reason.  The IRS does not identify a single time entry that exhibits this alleged

26  problem; nor does it otherwise develop the argument beyond a "[c]onclusory and unsubstantiated
    objectio[n]."  *Lucas*, 63 F. Supp. 2d at 1057-58.

27  [3] Because I find that the hours spent preparing the letter are properly attributed to this litigation, I
    do not address the parties' dispute over whether time spent on administrative proceedings are

28  recoverable under 5 U.S.C. § 552(a)(4)(E).

United States District Court
Northern District of California

requests for litigating the instant motion. *See* Surreply at 1-4 (Dkt. No. 95-2).[4] "An inflated request for a 'fees-on-fees' award may be reduced to an amount deemed reasonable by the awarding court." *Rosenfeld*, 904 F. Supp. 2d at 1008. I agree with the IRS that 58.7 hours is an excessive amount of time to spend on this motion given counsel's familiarity with attorney's fees litigation in this area, the absence of any particularly complex or novel issues at play, and the number of hours that counsel attributes to either editing its fees/costs spreadsheets or to preparing declarations consisting largely of standard, non-case-specific language. In light of these factors, I will reduce the requested fees-on-fees by 25 percent, or $6,196.88, to $18,590.63.

## C.    Multiplier

While there is a "strong presumption" in the reasonableness of an appropriately calculated lodestar figure, a court may "authorize an upward or downward adjustment from [that] figure if certain factors relating to the nature and difficulty of the case overcome this strong presumption and indicate that such an adjustment is necessary." *Long*, 932 F.2d at 1314. Factors relevant to whether an adjustment is necessary include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* at 1314 n.4 (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

A court may adjust an award based on these factors only to the extent that they are not already "subsumed in the initial calculation of the lodestar." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) ("[W]e have noted that the lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation.") (internal quotation marks

---

[4] The IRS's motion for leave to file a surreply, Dkt. No. 95, is GRANTED.

and citations omitted).  In accordance with the strong presumption that the lodestar figure represents a reasonable award, the party seeking an adjustment has the burden of identifying those factors "that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified." *Perdue*, 559 U.S. at 546.  "[A] multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases supported by both specific evidence on the record and detailed findings by the [court] that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen*, 214 F.3d at 1045 (internal quotation marks omitted).

PRO has not overcome the strong presumption that the lodestar figure represents a reasonable award in this case.  It contends that it is entitled to a 1.5 multiplier because (1) it was represented "on a pro bono basis;" (2) it "achieved impressive results;" and (3) "this action greatly advanced the public interest."  Mot. at 12-13; Reply at 11-12.  But it offers only cursory arguments in support of each of these factors and fails to specifically demonstrate how they are not already "subsumed in the initial calculation of the lodestar." *Van Gerwen*, 214 F.3d at 1045.

PRO's pro bono basis argument relies on *Powell v. U.S. Dep't of Justice*, 569 F. Supp. 1192 (N.D. Cal. 1983), where the court granted a 1.5 multiplier upon observing that the plaintiff's counsel had provided representation "on a pro bono basis" and that, "[c]onsequently, his potential for receiving fees is contingent not only on whether plaintiff substantially prevails in this lawsuit but also on this court's willingness to award fees in its discretion." *Id.* at 1204.  But the court also specifically found that the plaintiff's counsel's "excellent work" in the case had been "at a higher level of competence than that of attorneys with similar experience," and that this high level of quality was "not adequately reflected in the $75.00 per hour rate awarded." *Id.*  While PRO's counsel's performance in this case has certainly been laudable, PRO offers no evidence (or even argument) that the quality of its counsel's representation is not already adequately reflected in the requested hourly rates.

PRO's principal ground for characterizing the results in this case as impressive is that the litigation "produced two valuable published opinions from this Court."  Opp. at 12 (citing the Summary Judgment Order, *Public.Resource.org v. United States Internal Revenue Serv.*, 78 F.

United States District Court
Northern District of California

1   Supp. 3d 1262 (N.D. Cal. 2015), and the June 20, 2014 Order Denying Defendant's Motion to

2   Dismiss, *Public.Resource.Org v. United States Internal Revenue Serv.*, 50 F. Supp. 3d 1212 (N.D.

3   Cal. 2014)).  However, PRO cites no authority for granting a multiplier on this ground, and the

4   cases it does cite involved considerably different situations.  *See Trulsson v. Cty. of San Joaquin*

5   *Dist. Attorney's Office*, No. 11-cv-02986, 2014 WL 5472787, at *7-9 (E.D. Cal. Oct. 28, 2014)

6   (following an approximately $2 million jury verdict in an employment discrimination and

7   retaliation action, awarding a 1.5 multiplier under California law where the plaintiff submitted

8   declarations indicating that the recovery was "exceptional," and where the plaintiff's counsel had

9   been working on the case for three years, "a significant amount of time for a solo practitioner to go

10  unpaid"); *White v. City of Richmond*, 559 F. Supp. 127, 133-34 (N.D. Cal. 1982) (following entry

11  of consent decrees in civil rights actions alleging that the City's police officers were "routinely

12  beating and harassing black Richmond residents and then filing groundless charges," awarding a

13  1.5 multiplier where the consent decrees required "significant changes in [police department]

14  procedures," the chances of obtaining injunctive relief of the sort contained in the consent decrees

15  "must have appeared . . . remote" when the cases were filed, and declarations in the record stated

16  that "it is difficult to find counsel willing to undertake large scale police abuse cases such as

17  these").

18          Finally, PRO's public interest argument focuses on the IRS press release, discussed above,

19  which states that by early 2016 the IRS expects to have a technology solution in place that will

20  allow it to provide electronically-filed Form 990s in a machine-readable format.  *See* Mot. at 12;

21  Reply at 11; *see also* Burke Decl. ¶ 5.  PRO cites no case awarding a multiplier based on a similar

22  outcome, and, again, the cases PRO does cite (*Powell*, *Trulsson*, and *White*) are plainly

23  distinguishable.  I am persuaded that the outcome of this case is likely to enhance the public's

24  ability to analyze and understand information in Form 990s, and that this represents a meaningful

25  advancement of the public interest.  But without a more substantial showing of the specific

26  benefits of the litigation, I cannot say that this alone justifies a multiplier.

27                                          **CONCLUSION**

28          For the foregoing reasons, the motion for attorney's fees is GRANTED.  PRO is awarded

1  $238,125.62 in attorney's fees and $1,272.46 in costs.

2      **IT IS SO ORDERED**.

3  Dated: November 20, 2015

4  _____

5  WILLIAM H. ORRICK
   United States District Judge